## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRIAN L. FRECHETTE, )<br><br>Plaintiff, )<br><br>v. )<br><br>AMERIQUEST MORTGAGE COMPANY )<br>and DEUTSCHE BANK NATIONAL )<br>TRUST COMPANY, as TRUSTEE of )<br>AMERIQUEST MORTGAGE )<br>SECURITIES, INC. ASSET BACKED )<br>PASS-THROUGH CERTIFICATES, )<br>SERIES 2003-11 UNDER THE POOLING )<br>AND SERVICING AGREEMENT DATED )<br>AS OF NOVEMBER 1, 2003, WITHOUT )<br>RECOURSE )<br><br>Defendants. ) | **05  11398 RWZ**<br><br>RECEIPT # ___65.358___<br>AMOUNT $___250.00___<br>SUMMONS ISSUED_N/A___<br>LOCAL RULE 4.1___<br>WAIVER FORM ___<br>MCF ISSUED___<br>BY DPTY. CLK.___M.L.___<br>CIVIL ACTION NO. ___7/1/2005___ |

MAGISTRATE JUDGE

### NOTICE OF REMOVAL

Defendants Ameriquest Mortgage Company ("Ameriquest") and Deutsche Bank National

Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass-Through

Certificates, Series 2003-11 Under the Pooling and Servicing Agreement Dated as of November

1, 2003, Without Recourse ("Deutsche Bank National Trust Company, as Trustee") (collectively

"defendants") hereby provide notice that they are removing this action from the Superior Court,

Middlesex County, Massachusetts, in which court the case is currently pending, to the United

States District Court for the District of Massachusetts.  In support thereof, defendants state as

follows:

1.      Defendants exercise their rights under the provisions of 28 U.S.C. §§ 1441, et

seq., to remove this case from the Superior Court, Middlesex, Massachusetts.  The case is now

pending under the name and style of Brian L. Frechette v. Ameriquest Mortgage Company and

Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc.

Asset Backed Pass-Through Certificates, Series 2003-11 Under the Pooling and Servicing

Agreement Dated as of November 1, 2003, Without Recourse, Civil Action No. 05-1963.

2.      U.S.C. Section 1441(a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action
brought in a State Court of which the District Courts of the United States have
original jurisdiction, may be removed by the defendant or defendants, to a District
Court of the United States for the District and Division embracing the place where
such action is pending.

3.      This is a civil action that was instituted in the Superior Court, Middlesex County,

Massachusetts and has not been tried. Plaintiff filed his Complaint on or about June 3, 2005. A

true and correct copy of the Complaint is attached hereto as Exhibit A. Defendants first received

a copy of the Complaint, the initial pleading setting forth the claims for relief upon which this

action is based, on or about June 6, 2005. Neither Ameriquest nor Deutsche Bank National Trust

Company, as Trustee have been properly served with a summons or Complaint as of the date

hereof. Thus, to date, defendants have not been served with process.

4.      The District Court of the United States has original jurisdiction over this action

pursuant to 28 U.S.C. § 1332 in that the matter in controversy as set forth in the Complaint

exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens

of different states.

## Diversity Jurisdiction

5.      In determining whether complete diversity exists, the Court considers the

citizenship of all properly joined parties. 28 U.S.C. § 1441(b). The Complaint identifies the

named plaintiff as a resident of the Commonwealth of Massachusetts. See Complaint at ¶ 2. For

purposes of diversity of citizenship under 28 U.S.C. § 1332, plaintiff is a citizen of the

Commonwealth of Massachusetts.

- 2 -

6. Ameriquest is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California. A "corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." See 28 U.S.C. § 1332(c)(1). For purposes of diversity of citizenship under 28 U.S.C. § 1332, Ameriquest is a citizen of a state other than the Commonwealth of Massachusetts.

7. Deutsche Bank National Trust Company, as Trustee is a national banking association. In a situation such as the present one, national banking associations are deemed "citizens of the States in which they are respectively located." See 28 U.S.C. § 1348. A national banking association is a citizen of the state in which it maintains its principal place of business, see Evergreen Forest Products of Georgia, LLC v. Bank of America, 262 F.Supp.2d 1297, 1307 (M.D. Ala. 2003), or, at most, of states in which it maintains branch offices see Connecticut National Bank v. Iacono, 785 F. Supp. 30, 24 (D. R.I. 1992). Deutsche Bank National Trust Company, as Trustee maintains its principal place of business in the State of California and does not have any branch offices in Massachusetts. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Deutsche Bank National Trust Company, as Trustee is a citizen of a state other than the Commonwealth of Massachusetts.

8. Hence, there is complete diversity of citizenship for purposes of federal jurisdiction under 28 U.S.C. § 1332.

9. The amount in controversy requirement of 28 U.S.C. § 1332 is satisfied in that the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

10. The Complaint alleges that plaintiff entered into a mortgage loan agreement with Ameriquest fully secured by equity in his residence. In connection with this mortgage loan,

plaintiff alleges that Ameriquest purportedly failed to disclose the correct finance charges in violation of the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D, § 10 ("CCCDA"). Plaintiff alleges that this alleged failure to disclose entitles plaintiff to rescind his mortgage loan.

11.     Plaintiff entered into a thirty-year adjustable rate mortgage with Ameriquest with a principal amount owed by plaintiff of $543,750.00. Plaintiff's loan note has an initial interest rate of 11.500%, which is also the minimum rate. Plaintiff's loan note calls for monthly payments of $5,384.71 beginning December 1, 2003. Over the scheduled life of the loan, plaintiff would make 359 payments of $5,384.71 and a final payment of $5,383.67. The total finance charge payable on the note if all payments were made as scheduled (in additional to the principal amount) is $1,938,494.56.

12.     Following the closing, Ameriquest assigned plaintiff's note and mortgage to Deutsche Bank National Trust Company, as Trustee.

13.     On January 28, 2005, Deutsche Bank National Trust Company, as Trustee filed a Complaint for authority to foreclose plaintiff's mortgage with the Land Court, Commonwealth of Massachusetts, Case No. 305627. The sale of the property has yet to occur.

14.     On April 21, 2005, plaintiff notified Deutsche Bank National Trust Company, as Trustee that he was purportedly rescinding his mortgage transaction. See Complaint at ¶ 22 citing to plaintiff's Notice of Rescission attached as Exhibit 5 to the Complaint.

15.     Plaintiff thereafter brought the instant suit seeking a declaratory judgment under Mass. Gen. Laws ch. 231A to enforce plaintiff's rescission of the note and mortgage (Count I). Plaintiff's Complaint also includes counts for violation of the CCCDA (Count II) and Mass. Gen. Laws ch. 93A (Count III). Plaintiff specifically seeks injunctive relief against defendants barring

- 4 -

enforcement of the mortgage contract. See Complaint, Prayer for Relief, at ¶¶ 1, 3, 4. In particular, plaintiff seeks a declaration of the right to rescind his loan, and he requests that (1) the Court declare "that the Plaintiff has properly and validly rescinded the Note and Mortgage" provided by Ameriquest on October 1, 2003, and (2) order "Ameriquest and Deutsche Bank to comply with all requirements of the CCCDA, including, in particular, the requirement that they repay [plaintiff] all monies paid under the Note and discharge the Mortgage on his property." See Complaint, Prayer for Relief, ¶ 4.

16.     The jurisdictional amount in controversy requirement is satisfied in at least two ways. First, plaintiff seeks a declaration of the right to rescind his loan. See Complaint, Count I. Second, plaintiff seeks an injunction to prevent foreclosure. See Complaint, Prayer for Relief ¶ 3.

17.     First, the jurisdictional amount in controversy requirement is satisfied by plaintiff's attempt to rescind and obtain a declaration of right to rescind his loan. "Courts have repeatedly held that the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover but by the judgment's pecuniary consequences to those involved in the litigation." Richard C. Young & Co., LTD. v. Leventhal, D.D.S., M.S., 389 F.3d 1, 3 (1st Cir. 2004); Hunt v. Washington State Apple Advt'g Comm'n, 432 U.S. 333, 347-48, 97 S.Ct. 2434, 2443 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy [for purposes of diversity jurisdiction] is measured by the value of the object of the litigation"). A plaintiff puts the entire value of the mortgage loan at issue where the plaintiff seeks declaratory and injunctive relief against the enforcement of the mortgage contract. See Ericsson GE Mobile Communications v. Motorola Communications & Electronics, Inc., 120 F.3d 216, 220 (11th Cir. 1997) ("plaintiff's claim for monetary damages need not, by

- 5 -

itself, exceed the requisite statutory amount because the immediate financial consequences of the litigation to the plaintiff—in that case, the financial benefit of not having to pay the interest contracted to be charged may also be considered in calculating the amount in controversy"); see also Rosen v. Chrysler Corp., 205 F.3d 918, 921 (6th Cir. 2000) ("in cases where a plaintiff seeks to rescind a contract, the contract's entire value, without offset, is the amount in controversy") (citing numerous cases); Fitzgerald Railcar Services of Omaha, Inc. v. Chief Industries, Inc., 2005 WL 1154293, *1 (8th Cir. May 17, 2005) ("the value of the object of litigation is not measured simply by the amount in alleged default,…but also by the value of the lease agreement if terminated"). Because, with respect to the plaintiff, the principal and the finance charges payable, whether considered independently or in the aggregate, exceed the jurisdictional amount in controversy minimum of $75,000.00, the amount in controversy requirement is satisfied.

18.    The jurisdictional amount in controversy requirement is also satisfied by plaintiff's petition to enjoin foreclosure. Plaintiff seeks, among other things, injunctive relief to prevent foreclosure. See Complaint, Prayer for Relief ¶ 3. In addition, plaintiff filed a motion for a temporary restraining order and/or preliminary injunction asking the Middlesex Superior Court to prevent Ameriquest from foreclosing on his home. In that motion, plaintiff asserts that rescission of their mortgage loans is a complete defense to foreclosure. A true and correct copy of plaintiff's Emergency Motion for Preliminary Injunction is attached hereto as Exhibit B and Plaintiff's Memorandum of Law in Support of Application for Equitable Relief is attached hereto as Exhibit C).[1]

---

[1] While the case was in state court, and prior to a scheduled hearing on plaintiff's motion for preliminary injunction, the parties stipulated that pending further order of the court, the foreclosure sale of plaintiff's residence would be stayed.

19.     A plaintiff puts the entire value of the property at issue where he or she seeks to enjoin foreclosure on properties, as here, with a mortgage loan in excess of $75,000. <u>See</u> <u>Garfinkle v. Wells Fargo Bank</u>, 483 F.2d 1074, 1076 (9th Cir. 1973) (finding jurisdiction where fair market value of property subject to California foreclosure procedure exceeded jurisdictional amount in controversy requirement); <u>Gatter v. Cleland</u>, 87 F.R.D. 66, 68-69 (E.D. Pa. 1980) (finding that fair market value of plaintiffs' homes exceeded jurisdictional minimum in action where plaintiff sought to enjoin lenders from foreclosing their mortgages, where "the property right sought to be protected is the right to peaceful possession and enjoyment of the homes, not merely the right to the equity owned therein"); <u>Bailey v. First Federal Savings & Loan Ass'n of</u> <u>Ottawa</u>, 467 F. Supp. 1139, 1141 (C.D. Ill. 1979) (finding federal jurisdiction where the value of the promissory notes substantially exceeds the amount in controversy minimum, and plaintiff sought injunction against foreclosure). As set forth above, the value of the promissory note secured by the mortgage substantially exceeds the jurisdictional amount in controversy minimum of $75,000.00.

20.     Because there is complete diversity of citizenship and the amount in controversy requirement is satisfied, this case is properly removed under 28 U.S.C. § 1332.

**Procedural Compliance**

21.     In accordance with the requirements of 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty (30) days after the receipt by defendants, of a copy of the initial pleadings setting forth the claim for relief on which this removal is based. As noted above, however, defendants have not been served with a summons or complaint as of the date hereof. Thus, defendants remove this matter without waiving any objections or defenses that they may

have including without limitation, objections to sufficiency of process or sufficiency of service thereof.

22.    Pursuant to 28 U.S.C. § 1441, *et. seq.*, the right exists to remove this case from the Superior Court, Middlesex County, Massachusetts, which embraces the place where the action is pending, to the United States District Court for the District of Massachusetts.

23.    Pursuant to the provisions of 28 U.S.C. § 1446(a), attached hereto are copies of the Complaint bearing case number C.A. No. 05-1963, filed in the Superior Court, Middlesex, Massachusetts (attached hereto as Exhibit A), Plaintiff's Application for a Temporary Restraining Order and/or for a Preliminary Injunction (attached hereto as Exhibit B), and Plaintiff's Memorandum of Law in Support of Application for Equitable Relief (attached hereto as Exhibit C).

24.    Written notice of the filing of this Notice of Removal will be served upon counsel for plaintiff as required by law.

25.    A true and correct copy of this Notice of Removal will be filed with the clerk of the Superior Court, Middlesex County, Massachusetts, as required by law, and served upon counsel for plaintiff.

**WHEREFORE**, defendants Ameriquest Mortgage Company and Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass-Through Certificates, Series 2003-11 Under the Pooling and Servicing Agreement Dated as of November 1, 2003, Without Recourse hereby remove this case from the Superior Court, Middlesex County, Massachusetts where it is now pending to this Court, that this Court accept jurisdiction of this action, and henceforth that this action be placed upon the docket of this Court for further proceedings, same as though this case had originally been instituted in this Court.

AMERIQUEST MORTGAGE COMPANY, INC.,
and DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE OF AMERIQUEST
MORTGAGE SECURITIES, INC. ASSET
BACKED PASS-THROUGH CERTIFICATE,
SERIES 2003-11 UNDER THE POOLING AND
SERVICING AGREEMENT DATED AS OF
NOVEMBER 1, 2003, WITHOUT RECOURSE,

By their attorneys,

R. Bruce Allensworth (BBO #015820)
     ballensworth@klng.com
Phoebe S. Winder (BBO #567103)
     pwinder@klng.com
Ryan M. Tosi (BBO #661080)
     rtosi@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA 02109
617-261-3100
617-261-3175 (fax)

Dated: July 1, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2005, I served a true copy of the foregoing document by first-class United States mail, postage prepaid, upon the following:

John T. Landry, III
Glynn, Landry, Harrington & Rice, LLP
10 Forbes Road
Braintree, MA 02184-2605

Michael J. Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090

Ryan M. Tosi

- 10 -

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                          SUPERIOR COURT
                                       CIVIL ACTION NO.

BRIAN L. FRECHETTE,                     )
        Plaintiff                       )
                                        )
V.                                      )
                                        )
AMERIQUEST MORTGAGE COMPANY )
and DEUTSCHE BANK NATIONAL          )
TRUST COMPANY, as TRUSTEE of        )
AMERIQUEST MORTGAGE                 )
SECURITIES INC., ASSET BACKED       )
PASS-THROUGH CERTIFICATES,          )
SERIES 2003-11 UNDER THE            )
POOLING AND SERVICING               )
AGREEMENT DATED AS OF               )
NOVEMBER 1, 2003, WITHOUT           )
RECOURSE,                           )
        Defendants                      )

## PLAINTIFF'S COMPLAINT

## I. INTRODUCTORY STATEMENT

1.     The Plaintiff, Brian Frechette (hereinafter "Frechette"), the maker of a promissory

       note and mortgage on 74 Washington Street, Sherborn, Middlesex County,

       Massachusetts, brings this action for declaratory relief and seeks to determine the

       validity of his rescission, in accordance with the provisions of M.G.L. c. 140D,

       §10, of a mortgage loan transaction he entered on October 1, 2003. Frechette also

       seeks damages for violations of the Massachusetts Consumer Credit Cost

       Disclosure Act (hereinafter referred to as "CCCDA"), M.G.L. c. 140D, §1 *et seq.*,

       and for violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A.

       Finally, Frechette seeks to enjoin a foreclosure proceeding brought against him by

       the current holder of his mortgage loan, Deutsche Bank National Trust Company,

as Trustee of Ameriquest Mortgage Securities, Inc., Asset Backed Pass-Through
Certificates, Series 2003-11 under the Pooling and Servicing Agreement dated as
of November 1, 2003 (hereinafter, collectively, "Deutsche Bank"), based on the
wrongful conduct of the originator, Ameriquest Mortgage Company (hereinafter
"Ameriquest"). Frechette contends that Ameriquest acted unlawfully in
connection with the origination of the mortgage loan made to him on October 1,
2003, by failing to properly disclose the correct finance charges assessed to
Frechette, in violation of the CCCDA. Frechette seeks to maintain the *status quo*
between the parties, pending the resolution of his claim for rescission, and asks
this Court to enjoin Deutsche Bank and Ameriquest from proceeding with the
foreclosure of his property, which foreclosure is presently scheduled for June 7,
2005, at 1:00 P.M.

## II. PARTIES

2.    The Plaintiff, Brian L. Frechette, is a resident of Sherborn, Middlesex County,
      Massachusetts.

3.    The Defendant, Ameriquest Mortgage Company, is a foreign corporation
      organized under the laws of the State of Delaware, maintaining its principal place
      of business at 1100 Town and Country Road, Orange, California. Ameriquest has
      transacted business and has caused tortious injury in Massachusetts by and
      through the acts of its agents and employees.

4.    The Defendant, Deutsche Bank National Trust Company, is a foreign corporation
      organized, upon information and belief, under the laws of the State of Delaware,
      maintaining its principal place of business at 1761 East Street, Andrews Place,

Santa Ana, California. Deutsche Bank is also a Trustee of Ameriquest Mortgage Securities, Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing Agreement dated as of November 1, 2003, Without Recourse, and is the present holder of a promissory note and mortgage executed by Frechette. Deutsche Bank has transacted business and has caused tortious injury in Massachusetts by and through the acts of its agents and employees.

## III. JURISDICTION AND VENUE

5.    Jurisdiction is proper pursuant to M.G.L. c. 223A, §§2 and 3, and M.G.L. c. 231A, §1.

6.    Venue is proper pursuant to M.G.L. c. 223, §1.

## IV. FACTS

7.    Frechette is presently 57 years old, divorced, and has two sons in college. Frechette resides at 74 Washington Street in Sherborn, Massachusetts.

8.    In the fall of 2003, Frechette contacted Ameriquest concerning the possible refinancing of his residence, and subsequently applied for financing with Ameriquest.

9.    At all times material hereto, Ameriquest acted as the originator of Frechette's mortgage loan.

10.   On October 1, 2003, a loan closing was conducted at Ameriquest's office in Natick, Massachusetts s by Ameriquest's closing attorney, who acted as settlement agent in connection with said transaction.

11.   At the time of the closing, Frechette executed and delivered to Ameriquest a Promissory Note (hereinafter "the Note") in the original amount of $543,750.00.

The Note provided, *inter alia*, for an initial interest rate of 11.500% and for monthly payments of principal and interest in the amount of $5,384.71 for the first two years of the loan term, and a prepayment penalty that remained in effect until the third anniversary of the Note. A true copy of the Note is attached hereto as Exhibit "1", and is incorporated herein by reference.

12.  Said Note was secured by a Mortgage (hereinafter "the Mortgage") executed by Frechette and delivered to Ameriquest on or about October 1, 2003 on real estate located at 74 Washington Street, Sherborn, Massachusetts. The Mortgage is recorded with the Middlesex County (Southern District) Registry of Deeds in Book 41251, Page 76. A true copy of the Mortgage is attached hereto as Exhibit "2", and is incorporated herein by reference.

13.  At the time the loan closed, Frechette signed a HUD-1 Settlement Statement, dated October 1, 2003, which listed the various loan related expenses. A true copy of the HUD-1 Settlement Statement is attached hereto as Exhibit "3", and is incorporated herein by reference.

14.  In addition, at the time of the closing, Ameriquest provided Frechette with its Truth In Lending Disclosure Statement. Said Disclosure Statement is attached hereto as Exhibit "4", and is incorporated herein by reference.

15.  Among the various fees charged in connection with the mortgage loan transaction were fees of (1) "Title Insurance" in the amount of $1,450.00; (2) "City/county Tax Stamps" of $25.00; (3) a "Settlement or Closing Fee" of $300.00; (4) a "Settlement/disbursement Fee" of $750.00; and (5) an "Escrow Fee" of $295.00.

16.   At the time of the closing of the mortgage loan transaction on October 1, 2003,

Ameriquest, in violation of the CCCDA, Massachusetts General Laws, Chapter

140D, §1 *et seq.*, failed to disclose to Frechette the correct finance charges he was

incurring in connection with said transaction.  Said finance charges include, but

are not necessarily limited to, the following:

a.   Ameriquest charged Frechette the sum of $1,450.00 for lender's title

insurance in the amount of $543,750.00, while the premium actually paid was

only $1,360.00, resulting in a $90.00 undisclosed finance charge to Frechette;

b.   Ameriquest failed to provide Frechette a title insurance premium discount to

which he was entitled, resulting in an overcharge to Frechette in the amount of

$547.00 on the title insurance premium he paid.  This overcharge constitutes

an undisclosed finance charge to Frechette;

c.   Ameriquest charged Frechette the sum of $25.00 based on its purported

payment of "City/County Tax/Stamps" when, in fact, no such fee was paid by

Ameriquest.  This overcharge constitutes an undisclosed finance charge to

Frechette;

d.   Ameriquest charged Frechette a $300.00 "settlement or closing fee" and a

$750.00 "settlement/disbursement fee" for a total of $1,050.00 in "settlement"

legal fees.  Ameriquest further charged Frechette and additional $295.00 for

an "escrow fee".  Said attorney's fees, in the aggregate amount of $1,345.00

are clearly excessive to the range of charges customarily charged on loans of

this type, and, to the extent that such attorney's fees are excessive, they

constitute an undisclosed finance charge to Frechette.

17.    In summary, Ameriquest failed to disclose to Frechette an aggregate of at least
$727.00 in actual finance charges that were paid by Frechette, and further failed
to disclose to Frechette the excessive portion of legal fees paid by Frechette to
Ameriquest's closing attorney.

18.    Following the closing, Ameriquest assigned the Note and Mortgage to Deutsche
Bank, which is the present holder of the same.

19.    On or about January 18, 2005, Deutsche Bank, through its attorney, notified
Frechette that it was accelerating the Note.

20.    On or about January 28, 2005, Deutsche Bank initiated foreclosure proceedings
against Frechette, by filing a Petition to Foreclose Mortgage with the Land Court,
Case No. 305627, seeking authority to foreclose the Mortgage.

21.    On or about February 14, 2005, Deutsche Bank, through counsel, notified
Frechette of its intention to foreclose by sale the Mortgage, which sale was
originally scheduled for March 28, 2005, was continued to April 25, 2005, and
then continued again to June 7, 2005.

22.    On April 21, 2005, Frechette forwarded, by facsimile transmission and by
certified mail his Rescission Notice, based on the aforesaid violations of the
CCCDA, to Deutsche Bank, in full compliance with M.G.L. c. 140D, §10.  A true
copy of Frechette's Rescission Notice, including the certified mail return receipt
cards indicating receipt by Deutsche Bank of the Rescission Notice on April 22,
2005, is attached hereto as Exhibit "5" and is incorporated herein by reference.

23. Pursuant to M.G.L. c. 140D, §10, Deutsche Bank was required to respond to Frechette's Rescission Notice within twenty (20) days of service of the same. Said response by Deutsche Bank was due on or before May 12, 2005.

24. By letter dated May 18, 2005 and received by Frechette on May 19, 2005, Ameriquest belatedly responded to Frechette's Rescission Notice, admitted that Frechette had been overcharged Frechette by at least $115.00 in connection with the mortgage loan transaction, but rejected Frechette's Rescission Notice. A true copy of Ameriquest's letter is attached hereto as Exhibit "6", and is incorporated herein by reference.

25. Outside of the response made by Ameriquest, Deutsche Bank, to date, has not independently and substantively responded to Frechette's Rescission Notice.

26. On or about May 23, 2005, Deutsche Bank notified Frechette by letter that it was scheduling the foreclosure sale of his property for June 7, 2005, at 1:00 P.M. A true copy of said letter is attached hereto as Exhibit "7", and is incorporated herein by reference.

### COUNT I
(Action for a Declaratory Judgment under M.G.L. c. 231A)
[Frechette v. Ameriquest and Deutsche Bank]

27. Frechette repeats and incorporates by reference the allegations contained in paragraphs one through twenty six of this Complaint, as if fully restated herein.

28. Pursuant to M.G.L. c. 140D, §10, within twenty (20) days of the service of a proper Rescission Notice, Deutsche Bank and Ameriquest were required to return to Frechette all monies paid and to take any action necessary or appropriate to

reflect the termination of any security interest created by the mortgage loan transaction of October 1, 2003.

29.    By his letter dated April 21, 2005, Frechette properly served his Rescission Notice, and, for the reasons set forth therein, rescinded the Note and Mortgage he granted to Ameriquest on October 1, 2003.

30.    To date, Deutsche Bank and Ameriquest have refused to acknowledge the validity of Frechette's Rescission Notice, and Deutsche Bank and Ameriquest, in violation of M.G.L. c. 140D, §10, are continuing with efforts to foreclose Frechette's Mortgage.

31.    By failing to return to Frechette all monies that he paid in connection with the Note, and by failing to discharge the Mortgage granted by Frechette on October 1, 2003, Deutsche Bank and Ameriquest have violated M.G.L. c. 140D, §10.

32.    An actual and justiciable controversy, therefore, exists between Frechette on the one hand and Deutsche Bank and Ameriquest on the other hand, within the meaning of M.G.L. c. 231A, as to whether Frechette properly rescinded the Note and Mortgage.

## COUNT II
(Action for Violations of the CCCDA, M.G.L. c. 140D)
[Frechette v. Ameriquest and Deutsche Bank]

33.    Frechette repeats and incorporates by reference the allegations contained in paragraphs one through thirty two of this Complaint, as if fully restated herein.

34.    The actions of Ameriquest and Deutsche Bank, as hereinbefore set forth, constitute violations of the CCCDA and M.G.L. c. 140D, §10.

35.   By reason of the violations of the CCCDA and M.G.L. c. 140D, §10 by

Ameriquest and Deutsche Bank, Frechette has incurred actual damages.

36.   In accordance with the provisions of M.G.L. c. 140D, §32, Frechette is entitled to

an award of both his statutory and his actual damages.

## COUNT III
(Action for Violations of M.G.L. c. 93A)
[Frechette v. Ameriquest and Deutsche Bank]

37.   Frechette repeats and incorporates by reference the allegations contained in

paragraphs one through thirty six of this Complaint, as if fully restated herein.

38.   Pursuant to the provisions of M.G.L. c. 140D, §34, a violation of the CCCDA

constitutes a violation of the Massachusetts Consumer Protection Act, M.G.L. c.

93A.

39.   At all times material hereto, Ameriquest and Deutsche Bank was engaged in trade

or commerce within the meaning of M.G.L. c. 93A.

40.   The acts of Ameriquest and Deutsche Bank, as hereinabove set forth, constitute

unfair and deceptive acts within the meaning of M.G.L. c. 93A, §2.

41.   As a result of the unfair and deceptive acts or practices of Ameriquest and

Deutsche Bank, Frechette has sustained damages, including the loss of monies

paid to Ameriquest and to Deutsche Bank, the potential loss of his property at a

foreclosure sale, court costs and attorney's fees.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, Brian L. Frechette, prays that this Honorable Court:

1.   Issue a Temporary Restraining Order maintaining the *status* quo between all

parties by restraining and enjoining Deutsche Bank and Ameriquest from

proceeding with the foreclosure sale of 74 Washington Street, Sherborn, Massachusetts, presently scheduled for Tuesday, June 7, 2005.

2.   Issue a Short Order of Notice to Ameriquest and to Deutsche Bank to show cause why each should not be preliminarily enjoined from proceeding with the foreclosure sale of 74 Washington Street, Sherborn, Massachusetts, presently scheduled for Tuesday, June 7, 2005.

3.   Grant Frechette a Preliminary Injunction prohibiting Ameriquest and Deutsche Bank from proceeding with said foreclosure sale of 74 Washington Street, Sherborn, Massachusetts, pending a full determination upon the merits of the validity of Frechette's rescission of the mortgage granted to Ameriquest on October 1, 2003, and subsequently assigned by Ameriquest to Deutsche Bank.

4.   With respect to the claims asserted in Count I of this Complaint, that this Honorable Court issue a declaratory judgment in favor of the Plaintiff, Brian L. Frechette, adjudging and declaring that the Plaintiff has properly and validly rescinded the Note and Mortgage he provided to Ameriquest on October 1, 2003, and directing Ameriquest and Deutsche Bank to comply with all requirements of the CCCDA, including, in particular, the requirement that they repay Frechette all monies paid under the Note and discharge the Mortgage on his property.

5.   With respect to the claims asserted in Count II of this Complaint, that this Honorable Court enter judgment against Ameriquest and against Deutsche Bank in favor of Frechette in the full amount of the damages he sustained, including his actual damages and all statutory damages to which he is entitled pursuant to the provisions of M.G.L. c. 140D, §32.

6.     With respect to the claims asserted in Count III of this Complaint, that this

Honorable Court enter judgment against Ameriquest and against Deutsche Bank,

jointly and severally, for their violations of M.G.L. c. 93A, for the full amount of

the damages he sustained, along with interest, costs and reasonable attorney's

fees.

7.     With respect to the claims asserted in Count III of this Complaint, that this

Honorable Court treble the amount of damages caused Frechette by Ameriquest

and by Deutsche Bank, as provided by M.G.L. c. 93A, §11.

8.     That this Honorable Court grant such other and further relief as it deems just and

proper under the circumstances of this case.

Respectfully Submitted:

BRIAN L. FRECHETTE

By his attorneys:

John T. Landry, III
Glynn, Landry, Harrington & Rice, LLP
10 Forbes Road
Braintree, MA 02184-2605
(781) 356-1399
BBO No. 544388

Michael J. Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090
(781) 326-7766
BBO No. 405035

# EXHIBIT "1"



Loan Number: 9059193128 - 5788

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

| October 1, 2003 | Orange | CA |
|---|---|---|
| [Date] | [City] | [State] |

74 Washington Street, SHERBORN, MA 01770
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $543,750.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **11.500%**. This interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   December 1, 2003   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on November 1, 2033   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $5,384.71. This amount may change.

#### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The interest rate I will pay may change on the first day of   November, 2005  , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

#### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding   six and one-half percentage point(s) (  6.500  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials

10/01/2003 2:11:43 PM

1 of 3



Loan Number: 0059193128 - 5789

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **13.500 %** or less than **11.500 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **(1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **17.500** % or less than **11.500 %**.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first Three (3) year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1) If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.
2) If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.

3) If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

2 of 3

10/01/2003 2:11:43 PM

Loan Number: 0059193128 - 5789

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### 12. GOVERNING LAW PROVISION

This Note and the related Security Interest are governed by Federal and State law applicable to the jurisdiction of the Property.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)   _____ (Seal)
Borrower  Brian L. Prechette                           Borrower

_____ (Seal)   _____ (Seal)
Borrower                                               Borrower

3 of 3

10/01/2003 2:11:43 PM

201-3MA (Rev. 7/03)

●

<u>EXHIBIT "2"</u>

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

Prepared By:Ameriquest Mortgage Company

James SanClemente
1 Apple Hill DR., Box
8118,Natick, MA 01760

——————————————[Space Above This Line For Recording Data]——————————————

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 1, 2003 together with all Riders to this document.
(B) "Borrower" is Brian L. Frechette, Individually

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

0059193128 - 5789

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01

-6(MA) (0005)
Page 1 of 15                                                10/01/2003 2:11:43 PM
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 1100 Town and Country Road, Suite 200  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated October 1, 2003
The Note states that Borrower owes Lender five hundred forty-three thousand seven
hundred fifty and 00/100                                                    Dollars
(U.S. $543,750.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than November 1, 2033    .

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

0059199128-8789

-6(MA) (0008)                        Page 2 of 15      10/01/2003   12:43    Form 3022  1/01

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County                                                                    [Type of Recording Jurisdiction]
of MIDDLESEX                                          [Name of Recording Jurisdiction]:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 000                                          which currently has the address of
74 Washington Street                                                                        [Street]
SHERBORN                                        [City] , Massachusetts 01770              [Zip Code]
("Property Address"):

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
      UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
      1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0059168128  5789

-6(MA) (0005)                            Page 3 of 15   10/01/2003  1:43 PM   Form 3022   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0059453128-5789

-6(MA) (0005)                    Page 4 of 15        10/01/2002  11:43    Form 3022  1/01

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6(MA) (0005)                     Page 8 of 15     10/01/2003 21:43     Form 3022   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

0059199  5789

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0059 5789

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0059193228 -8789

-6(MA) (0008)    Page 12 of 15    10/01/2803  2/12:43    Form 3022  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                     Brian L. Frechette          -Borrower

_____    _____ (Seal)
                                                                 -Borrower

_____ (Seal)     _____ (Seal)
                  -Borrower                                      -Borrower

_____ (Seal)     _____ (Seal)
                  -Borrower                                      -Borrower

_____ (Seal)     _____ (Seal)
                  -Borrower                                      -Borrower

0059193128 -5789

-6(MA) (0008)          Page 14 of 15   10/01/2003 2:11:43 PM  Form 3022  1/01

COMMONWEALTH OF MASSACHUSETTS,        County ss: Middlesex

On this ___1st___ day of ___October 2003___ before me personally
         Day              Month/Year
appeared

_____Brian L. Frechette_____

_____

to me known to be the person(s) described in and who executed the foregoing instrument, and
acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires: 03/24/06



Notary Public

MATTHEW T. DESROCHERS
Attorney At Law
Notary Public
Commonwealth of Massachusetts
My Commission Expires
March 24, 2006

||||| ||| |||| ||||| ||||| ||| ||| ||| |||

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 1st day of October , 2003   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

74 Washington Street, SHERBORN, MA  01770
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  11.500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of November, 2005  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials

Loan Number:  0059193128 - 5789

10/01/2003 2:11:43 PM

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding six and one-half percentage points ( 6.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 13.500% or less than 11.500%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 17.500% or less than 11.500%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan Number: 0059193126 - 5789

Initials

610-2 (Rev 1/01)              Page 2 of 3

10/01/2003 2:11:43 PM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
Borrower Brian L. Frechette                Borrower

_____ (Seal)    _____ (Seal)
Borrower                                   Borrower

Loan Number: 0059193128 - 5789

810-3 (Rev 1/01)    Page 3 of 3

10/01/2003 2:11:43 PM

CROWLEY LAW                    → AO NATICK          ☎ 004

## EXHIBIT A
## LEGAL DESCRIPTION

Loan Number:

A certain parcel of land situated in Sherborn in the County of Middlesex and said Commonwealth, bounded and described as follows:

SCUTHEASTERLY by Washington Street as shown on said plan, one three courses, measuring respectively 225 feet, 96 feet and 101.50 feet;

SCUTHWESTERLY by land now or formerly of H.E. Eastman on said Plan, 120.00 feet;

WESTERLY by land now or formerly of said Eastman on said plan on three courses measuring respectively, 55.00 feet, 46.35 feet and 42.70 feet;

NORTHWESTERLY nearly Northerly by land now or formerly of Francis Grout on said Plan, 561.50 feet; and

NORTHEASTERLY by said land now or formerly of Grout on said Plan, 214.67 feet.

Containing according to said plan, 2.4 acres.

The premises are conveyed together with all the rights, privileges and easements as set forth in a deeds of Francis Grout to Austin S. Grindle dated February 3, 1950, recorded with said District Deeds in Book 7519, Page 491.

The premises are conveyed subject to Takings by the Town on Sherborn for easements in said Washington Street as set forth in instruments recorded with said Deeds in Book 5592, Page 347 and in Book 5658, Page 230.

Being the same premises conveyed to the herein named mortgagor (s) by deed recorded with Middlesex South District Registry of Deeds in Book 35653, Page 77. See also deed recorded with Middlesex South District Registry of Deeds in Book 19675, Page 491.

**EXHIBIT "3"**

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

| Name & Address of Borrower: | | Name & Address of Lender: |
|---|---|---|
| Brian L. Frechette | | Ameriquest Mortgage Company |
| | | 1 Apple Hill DR., Box 8118 |
| 74 Washington Street    SHERBORN,MA 01770 | | Natick, MA 01760 |
| Property Location: (if different from above) | | Settlement Agent: |
| | | CROWLEY, ESQ., GEORGE T. |
| 74 Washington Street, SHERBORN, MA  01770 | | Place of Settlement: 63 SHORE ROAD WINCHESTER, MA  01690 |

## L.    Settlement Charges

| | | Loan Number: | Settlement Date: Estimated |
|---|---|---|---|
| **800. Items Payable in Connection with Loan** | | 0059193128 - 5789 | 10/08/2003 |
| 801. Loan origination fee    % to | | | |
| 802. Loan discount  2.000  % to Ameriquest Mortgage Company | $10,875.00 | **M.    'Disbursement to Others** | |
| 803. Apprsl/Prop Val to Burke Appraisals | $300.00 | 1501. | |
| 804. Credit report to | | HHLD BANK    (W) | $299.00 |
| 805. Inspection fee to | | 1502. | |
| 806. | | DISCOVER FINANCIAL S    (W) | $311.00 |
| 807. | | 1503. | |
| 808. Yield Spread Premium to | | PROVIDENTBNK    (W) | $456,532.08 |
| 809. | | 1504. | |
| 810. Tax Related Service Fee to Ameriquest Mortgage | $70.00 | PROVIDIAN FINANCIAL    (W) | $814.00 |
| 811. Flood Search Fee to Ameriquest Mortgage Company | $16.00 | 1505. | |
| 812. Lenders Processing Fee to Ameriquest Mortgage | $625.00 | SOVEREIGN BANK    (W) | $1,917.00 |
| 813.Admin to Ameriquest Mortgage Company | $239.00 | 1506. | |
| 814. Doc. Prep. Fee to | | | |
| 815. Credit Report Fee to | | 1507. | |
| 816. Origination Fee    % to | | | |
| 817. Application Fee to Ameriquest Mortgage Company | $350.00 | 1508. | |
| 818. Underwriting Fee to | | | |
| 819. Service Provider Fee to | | 1509. | |
| 820. Processing Fee to | | | |
| 821. Underwriting Fee to | | 1510. | |
| 822. Appraisal Fee to | | | |
| **900. Items Required by Lender to be Paid in Advance** | | 1511. | |
| 901. Interest from 10/08/2003  to  11/01/2003  @  $171.32 per day | $4,111.68 | | |
| 902. Mortgage insurance premium for    months to | | 1512. | |
| 903. Hazard ins prem to | $0.00 | | |
| 904. Flood ins prem  to | | 1513. | |
| **1000. Reserves Deposited with Lender** | | | |
| 1001. Hazard insurance    months @ $    per month | | 1514. | |
| 1002. Mortgage insurance    months @ $    per month | | | |
| 1003. Earthquake ins    months @ $    per month | | 1515. | |
| 1004. County prop. taxes    months @ $    per month | | | |
| 1005. Annual assess.    months @ $    per month | | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1006. Flood    months @ $    per month | | | $469,873.08 |
| 1007. Windstorm ins    months @ $    per month | | | |
| 1008. | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to  The Law Offices of | $300.00 | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| 1108. Title insurance to  The Law Offices of George Crowley | $1,450.00 | | |
| 1109. Lender's coverage:    $ | | Total Wire:    $527,152.32 | |
| 1110. Owner's coverage    $ | | | |
| 1111. Settlement/Disbursement fee to  The Law Offices of | $750.00 | | |
| 1112. Escrow Fee to The Law Offices of George Crowley | $295.00 | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording fees | $315.00 | | |
| 1202. City/county tax/stamps | $25.00 | **N.    NET SETTLEMENT** | |
| 1203. State tax/ stamps | | | |
| 1204. State specific fee | | | |
| 1205. State specific fee | | 1600. Loan Amount | $543,750.00 |
| **1300. Additional Settlement Charges** | | 1601. Plus Cash/Check from Borrower | |
| 1301. Demand to | | | |
| 1302. Past Inspection to | | 1602. Minus Total Settlement Charges | $19,812.68 |
| 1303. Survey Fee | $50.00 | (line 1400) | |
| 1304. Staff Appraiser Fee | | 1603. Minus Total Disbursements to Others | $469,873.08 |
| 1305. Reconveyance Fee to | | (line 1520) | |
| 1306. | | 1604. Equals Disbursements to Borrower | |
| 1307. Property Val Fee to | | (after expiration of any applicable rescission | |
| 1308. Courier Fee- | $30.00 | period) | $54,064.24 |
| | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | $19,812.68 | | |

Borrower(s) Signature(s):

X _____

Approved for Funding By: _____    Approved: _____    Branch:  Natick, MA 01760

Mortgage Lenders License - License Number ML0702

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702
LENDER:Ameriquest.Mortgage Company
1 Apple Hill DR., Box 8118
Natick, MA 01760
(508)655-1119

Preliminary ☐    Final [X]

Broker License:

Borrowers:Brian.L. Frechette

Type of Loan: ADJUSTABLE RATE
Date: October 1, 2003

Address:      74 Washington Street
City/State/Zip:   SHERBORN,MA 01770

Loan Number: 0059193128 - 5789

Property:      74 Washington Street, SHERBORN, MA 01770

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 11.830    % | $ 1,412,417.24 | $ 526,077.32 | $ 1,938,494.56 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $5,384.71 | 12/01/2003 | | | |
| 1 | $5,383.67 | 11/01/2033 | | | |

**VARIABLE RATE FEATURE:**
[X]  Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**    You are giving a security interest in the property located at: 74 Washington Street, SHERBORN, MA 01770

**ASSUMPTION:**   Someone buying this property  [X]  cannot assume the remaining balance due under original terms.
☐   may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

**LATE CHARGES:**    If a payment is late, you will be charged  3.000%  of the overdue principal and interest payment. .

**PREPAYMENT:**  If you pay off your loan early, you
[X] may      ☐ will not      have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower Brian L. Frechette _    10/01/03    Date        Borrower _____    Date

Borrower _____    Date        Borrower _____    Date

TIL1 (Rev. 7/01)

# *POWERS LAW OFFICES, P.C.*

91 Gloucester Road, Westwood, Massachusetts 02090
781-326-7766 (Tel)    781-326-7788 (Fax)    617-471-2000 (Cell)

MICHAEL J. POWERS, ESQUIRE
bicoastal@comcast.net

April 21, 2005

**Original By Certified Mail**
**(No. 7004 2890 0001 4715 5572)**
**Return Receipt Requested**
**Copy by Facsimile Transmission**
**(978-256-7615), & USPS Next Day**

Victor Manougian, Esquire
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824

| RE: | Borrower: | Brian L. Frechette |
|-----|-----------|--------------------|
| | Lender: | Ameriquest Mortgage Company |
| | Assignee: | Deutsche Bank National Trust Company, as Trustee |
| | Loan: | $543,750 Refinance Mortgage Loan dated October 1, 2003 |
| | Property: | 74 Washington Street, Sherborn, MA 01770 |
| | Mortgage: | Middlesex South Registry of Deeds, Book 41251, Page 76 |
| | Case No.: | 305627 (Land Court) |

Dear Attorney Manougian:

As you are aware, I, along with Attorney John T. Landry, III, of Glynn, Landry, Harrington & Rice, LLP, represent Brian L. Frechette ("Mr. Frechette") relative to the mortgage foreclosure proceeding commenced by your office on behalf of Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing Agreement dated as of November 1, 2003 ("Deutsche Bank"). Because the refinancing transaction that Mr. Frechette entered into on October 1, 2003, with Ameriquest Mortgage Company ("Ameriquest") involved several violations of the Massachusetts Truth In Lending Act (M.G.L. c.140D, §1 et seq.) ("TILA"), our client has authorized us to rescind the transaction pursuant to M.G.L. c.140D, §10, and the Massachusetts Banking Commissioner's Regulations promulgated thereunder, 209 CMR 32.23.

The following brief synopsis of the facts and law which outlines Mr. Frechette's right to rescind incorporates citations to the federal Truth In Lending Act ( (15 USC §1601, et. seq.), the Federal Reserve Board Regulations promulgated thereunder (12 CFR §226.1 et. seq., "Regulation Z"); the Official Staff Commentary of the Federal Reserve Board; and relevant federal case law. As the

Victor Manougian, Esquire
April 21, 2005
Page 2

Massachusetts TILA and regulations are identical to the federal statutory and regulatory scheme in all substantive aspects, the state courts are guided by this federal law in interpreting the cognate provisions of state law. Therefore, although reference is made to federal law throughout this letter for illustrative purposes, the rescission claim and all other claims made herein are solely grounded in state law.

### Bases For Exercise of Right of Rescission

The TILA violation which gives rise to Mr. Frechette's right to rescind the Ameriquest mortgage loan transaction includes, but is not limited to, Ameriquest's failure to disclose the correct finance charge. **Mr. Frechette hereby expressly reserve the right to allege additional TILA violations in the event the same are ascertained either in the course of additional investigation or analysis of the circumstances surrounding and the disclosures made in connection with the consummation of the Ameriquest mortgage loan transaction or ascertained through discovery in the event the resolution of this matter involves litigation.**

The TILA violations currently known to Mr. Frechette involve charges that were not bona fide and reasonable and, accordingly, these charges should have been disclosed as components of the finance charge at the time of the consummation of the Ameriquest mortgage loan transaction. By failing to disclose the following charges as components of the finance charge, Ameriquest violated Regulation Z, §226.4(c)(7), and 209 CMR 32.4(c)(7). (All of the following charges are shown on the copy of the HUD-1 Settlement Statement relative to Mr. Frechette's refinance mortgage loan with Ameriquest attached to this correspondence as Exhibit "A").

A.    *$90.00 Undisclosed Finance Charge Based On Failure To Properly Calculate Title Insurance Premium.* According to line 1108 of the Ameriquest HUD-1 Settlement Statement, Mr. Frechette was charged $1,450.00 for lender's title insurance coverage in the amount of $543,750. According to the copy of the Fidelity National Title Insurance Company of New York ("Fidelity") Loan Policy Number 5412-3231241 issued in connection with Mr. Frechette's Ameriquest mortgage loan, the actual premium paid was $1,360.00 (a copy of Schedule A to said loan policy attached hereto as Exhibit "B"). Accordingly, the $90.00 overcharge constitutes an undisclosed finance charge.

B.    *$547.00 Undisclosed Finance Charge Based On Failure To Provide Refinance Loan "Discount" On Title Insurance Premium.* At the time of the issuance of Ameriquest's loan policy of title insurance, Fidelity's published premium rate schedule also provided that in the case of a refinance loan if a policy has been issued insuring the mortgage being refinanced, then the new premium may be 60% of the current premium. To the extent that the new loan amount exceeded the old loan amount, then additional premium at the full rate should be collected for the excess amount. A policy had in fact been issued in connection with the

Victor Manougian, Esquire
April 21, 2005
Page 3

$456,400 first mortgage loan with New Century Mortgage Corporation being refinanced by Mr. Frechette. Accordingly, Mr. Frechette should have been charged only $740.00 for the required lender's policy of title insurance, calculated as follows:

$684.60  Premium on first $456,400 of coverage x 60% of $2.50 rate/$1,000
$218.40  Premium on remaining $87,350 at $2.50 rate/$1,000
$903.00  Premium reflecting appropriate discount

Failure to provide Mr. Frechette with the available discount resulted in a title insurance premium overcharge of $547.00, which overcharge constitutes an undisclosed finance charge.

C.    *$65.00 Undisclosed Finance Charge Based on Recording Fees Overcharge.*   According to line 1201 of the Ameriquest HUD-1 Settlement Statement, Mr. Frechette was charged recording fees in the amount of $315.00. However, an examination of the public records of the Middlesex South Registry of Deeds indicates that only $250.00 in recording fees were paid in connection with the (i) the recording of Ameriquest's mortgage ($175.00) and (ii) the recording of a discharge ($75.00). To the extent that the remaining $65.00 in recording fees collected from Mr. Frechette were in fact not paid to public officials, the same represents an undisclosed finance charge. See *Mayo v. Key Financial Services, Inc.*, 424 Mass. 862 (1997).

D.    *$25.00 Undisclosed Finance Charge Based on "City/County Tax/Stamps" Fee Overcharge.*   According to line 1202 of the Ameriquest HUD-1 Settlement Statement, Mr. Frechette was charged $25.00 for "City/County Tax/Stamps." There is no record of any tax or stamps being paid in connection with the consummation of Mr. Frechette's mortgage loan transaction with Ameriquest. To the extent that the $25.00 in tax/stamps collected from Mr. Frechette were in fact not paid to public officials, the same represents an undisclosed finance charge.

F.    *Excessive portion of Attorney Closing Fees Overcharge.*   According to lines 1101 and 1111 of the Ameriquest HUD-1 Settlement Statement, the closing attorney handling Mr. Frechette's Ameriquest refinance mortgage loan transaction charged Mr. Frechette a $300.00 "settlement or closing fee" and a $750.00 "settlement/disbursement" fee, for a total of $1,050.00 in "settlement" legal fees. In addition, the $295.00 charged for an "escrow fee" referenced on line 1112 of the Settlement Statement is merely disguised as a separate cost in order to make the aggregate "settlement" legal fees charged appear lower. The aggregate $1,345.00 legal fee charged for closing Mr. Frechette's mortgage loan far exceeds the range of charges normally imposed by experienced lender's counsel on loans of this type. As such, the excessive portion is an undisclosed finance charge.

Victor Manougian, Esquire
April 21, 2005
Page 4

In summary, Ameriquest failed to disclose an aggregate of $727.00 in actual finance charges that were paid by Mr. Frechette and failed to disclose the excessive portion of the legal fees paid by Mr. Frechette to Ameriquest's closing attorney. These failures constitute a violation of Regulation Z, §226.18(d) and 209 CMR 32.18(d) in amounts exceeding TILA's error tolerance for material disclosures (i.e. $35.00 error tolerance applicable in foreclosure defense context). Further, this failure to make required material disclosures tolls Mr. Frechette's rescission rights until the earlier of Deutsche Bank's provision of rescission right notices with corrected material disclosures, or the passage of four years subsequent to consummation of the transaction. G.L. c.140D, §10, 209 CMR 32.23(a)(3). Cf., 15 USC 1635, Regulation Z, §226.23(a)(3). Deutsche Bank has not provided Mr. Frechette with rescission notices accompanied by the required corrected material disclosures. Further, it has only been approximately one year and eight months since the consummation of the Ameriquest mortgage loan transaction. Accordingly, Mr. Frechette is entitled at this time to rescind the Ameriquest mortgage loan transaction pursuant to the extended rescission rights provided for by TILA.

## Demand For Relief

As a result of this rescission notice, Deutsche Bank's security interest is void (209 CMR 32.23(d)(1); Regulation Z, §226.23(d)(1)) and Deutsche Bank is bound to immediately terminate such security interest. 209 CMR 32.23(d)(2); Regulation Z, §226.23(d)(2). In addition, Deutsche Bank has twenty (20) days from its receipt of this notice to return to Mr. Frechette all monies paid in connection with the terms of the Ameriquest mortgage loan. *Id.* Failure to cancel the security interest and return to Mr. Frechette all monies due may subject Deutsche Bank to actual and statutory damages, pursuant to G.L. c.140D, §32, as well as multiple damages for corresponding violations of c.93A. *See*, G.L. c.140D, §34. **Finally, demand is made to immediately suspend all collection proceedings being instituted against Mr. Frechette including but not limited to the foreclosure sale of the subject property scheduled for 2:00 p.m. on Monday, April 25, 2005.**

Very truly yours,

Michael J. Powers

Enclosures
cc: Brian L. Frechette (w/copies of encls. - by first class mail)
    Paul Irwin, Esquire (w/copies of encls. - by fax and first class mail)
    John T. Landry, III, Esquire (w/copies of encls. - by fax and first class mail)
    The Jumpp Company, Inc. (w/copies of encls. - by fax and first class mail)
    Deutsche Bank National Trust Company, as Trustee (w/copies of encls. - by Certified Mail,
    No. 7004 2890 0001 , Return Receipt Requested at: 1761 Andrews Place, Santa Ana, CA 92705)
    4725 5569    (East Street)

Oct-08-03  12:31pm  From-AMERIQUEST MORTGAGE/NATICK                    +508-855-7589              T-508  P.004/005  F-094

and Urban Development                                                    WLI STN .

Transactions without Seller

Name & Address of Borrower:
Brian L. Frechette

74 Washington Street    SHERBORN,MA 01770

Property Location: (if different from above)

74 Washington Street, SHERBORN, MA  01770

Name & Address of Lender:
Ameriquest Mortgage Company
1 Apple Hill DR., Box 6118
Natick, MA 01760

Settlement Agent:
CROWLEY, ESQ., GEORGE T.

Place of Settlement: 63 SHORE ROAD  WINCHESTER, MA  01890

## L.  Settlement Charges

| | | Loan Number: | Settlement Date: |
|---|---|---|---|
| 800.  Items Payable in Connection with Loan | | 0039163126 - 5789 | 10/08/2003 |

| | | | |
|---|---|---|---|
| 801.  Loan origination fee     % to  . | | **M.   Disbursement to Others** | |
| 802.  Loan discount  2,000  % to  Ameriquest Mortgage Company | $10,875.00 | | |
| 803.  Appral/Prop Val to Burke Appraisals          *L $180.00 *  $8.50 | $300.00 | 1501.<br>HELD BANK     (W) | $299.00 |
| 804.  Credit report to | | | |
| 805.  Inspection fee to | | 1502.<br>DISCOVER FINANCIAL S     (W) | $311.00 |
| 806. | | | |
| 807. | | 1503.<br>PROVIDENTBNK     (W) | $466,532.08 |
| 808.  Yield Spread Premium to | | | |
| 809. | | 1504.<br>PROVIDIAN FINANCIAL     (W) | $814.00 |
| 810.  Tax Related Service Fee to  Ameriquest Mortgage  . | $70.00 | | |
| 811.  Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | 1505.<br>SOVEREIGN BANK     (W) | $1,917.00 |
| 812.  Lenders Processing Fee to  Ameriquest Mortgage | $626.00 | | |
| 813.Admin to Ameriquest Mortgage Company | $238.00 | 1506. | |
| 814.  Doc. Prep. Fee to | | | |
| 815.  Credit Report Fee to | | 1507. | |
| 816.  Origination Fee     % to | | | |
| 817.  Application Fee to  Ameriquest Mortgage Company | $360.00 | 1508. | |
| 818.  Underwriting Fee to | | | |
| 819.  Service Provider Fee to | | 1509. | |
| 820.  Processing Fee  to | | | |
| 821.  Underwriting Fee to | | 1510. | |
| 822.  Appraisal Fee to | | | |
| 900.  Items Required by Lender to be Paid in Advance | | 1511. | |
| 901.  Interest from 10/08/2003  to  11/01/2003  @  $171.32  per day | $4,111.68 | | |
| 902.  Mortgage Insurance premium for         months to | | 1512. | |
| 903.  Hazard Ins prem  to | $0.00 | | |
| 904.  Flood ins prem  to | | 1513. | |
| 1000.  Reserves Deposited with Lender | | | |
| 1001. Hazard Insurance     months @ $     per month | | 1514. | |
| 1002. Mortgage Insurance     months @ $     per month | | | |
| 1003.  Earthquake ins     months @ $     per month | | 1515. | |
| 1004.  County prop. taxes     months @ $     per month | | | |
| 1005.  Annual assess.     months @ $     per month | | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1006. Flood     months @ $     per month | | | $469,873.08 |
| 1007.  Windstorm Ins     months @ $     per month | | | |
| 1008. | | Total Wire:                   $527,152.32 | |
| 1100.  Title Charges | | | |
| 1101. Settlement or closing fee to  The Law Offices of | $300.00 | Deposit at Escrow/Title:        $0.00 | |
| 1102. Abstract or title search to | | Subordinate Financing:          $0.00 | |
| 1103. Title examination to | | | |
| 1104. Title Insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| 1108. Title insurance to  The Law Offices of George Crowley | $1,450.00 | | |
| 1109. Lender's coverage     $ | | | |
| 1110. Owner's coverage     $ | | | |
| 1111. Settlement/Disbursement fee to  The Law Offices of | $750.00 | | |
| 1112. Escrow Fee to The Law Offices of George Crowley | $295.00 | L = Lender Paid | |
| 1200.  Government Recording and Transfer Charges | | | |
| 1201. Recording fees | $315.00 | | |
| 1202. City/county tax/stamps | $25.00 | N.   NET SETTLEMENT | |
| 1203. State law/ stamps | | | |
| 1204. State specific fee | | 1600. Loan Amount | $43,750.80 |
| 1205. State specific fee | | | |
| 1300.  Additional Settlement Charges | | 1601. Plus Cash/Check from Borrower | |
| 1301. Demand to | | | |
| 1302. Pest Inspection to | | 1602. Minus Total Settlement Charges<br>(line 1400) | $19,812.68 |
| 1303. Survey Fee | $60.00 | | |
| 1304. Staff Appraisal Fee | | 1603. Minus Total Disbursements to Others<br>(line 1520) | $469,873.08 |
| 1305. Reconveyance Fee to | | | |
| 1306. | | 1604. Equals Disbursements to Borrower<br>(after expiration of any applicable rescission<br>period) | $54,084.24 |
| 1307. Property Val Fee to | | | |
| 1308. Courier Fee | $30.00 | | |
| 1400. Total Settlement Charges (enter on line 1602) | $19,812.68 | | |

Borrower(s) Signature(s):

X _____

Approved for Funding by:  Chris Jenkins          Approved:          Branch:  Natick, MA 01760

Mortgage Lenders License - License Number ML0702

## SCHEDULE A
### LOAN FORM
OFFICE FILE NO. 2006182

| WNERS | POLICY NUMBER | DATE OF POLICY @ | AMOUNT OF INSURANCE | PREMIUM |
|-------|---------------|------------------|---------------------|---------|
| ƆAN | POLICY NUMBER 5412-3231241 | DATE OF POLICY 10/9/2003 @ 2:16 PM | AMOUNT OF INSURANCE $543,750.00 | PREMIUM $1,360.00 |

1.     Name of Insured:

       Ameriquest Mortgage Company, its successor and/or assigns, ATIMA

2.     The estate or interest referred to herein is at Date of Policy vested in:

       Brian L. Frechette

3.     The estate or interest in land described in this Schedule and which is encumbered by the insured mortgage is :

       Fee Simple.

4.     The Mortgage, herein referred to as the insured mortgage, and the assignments thereof, if any, are described as follows:

       Mortgage from Brian L. Frechette to Ameriquest Mortgage Company, dated 9/23/2003, securing the original principal amount of $543,750.00 and recorded with the Middlesex County Registry of Deeds on 10/9/2003 at 2:16 PM as Instrument No. 1279.

5.     The land referred to in this policy is located at 74 Washington Street, in the City/Town of Sherborn, County of Middlesex, State of Massachusetts, and is described as set forth in Exhibit A attached hereto and made a part hereof.

Countersigned

By: _George T. Crowley_ Idmb.
     Authorized Signatory.
     George T. Crowley

FORM 26 - 031/041 - 90/92 A (4/93) (rev. 96)

# AMERIQUES t
MORTGAGE COMPANY

May 18, 2005                                                                              *Via Federal Express*

Michael Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090

*Re:*    *Borrower(s):*                    *Brian Frechette*
         *Ameriquest Loan Number:*         *0059193128*
         *Property Address:*               *74 Washington Street*
                                           *Sherborn, MA 01770*

Dear Mr. Powers:

We are writing in response to your letter requesting rescission of the above referenced loan
pursuant to the Federal Truth In Lending Act (TILA). After careful review, we respectfully reject
your claim that in making the loan to your client Ameriquest violated TILA, and accordingly
deny your request for rescission. Below is our response to your inquiries regarding the charges on
your client's HUD Settlement Statement (HUD):

## Title Insurance

We have confirmed with the Law Office of George Crowley, closing agent for this loan that
although the premium for your client's Fidelity National Title Insurance (Fidelity National)
policy was reflected as being $1,450.00 on the HUD, it was in fact $1,360.00. Please accept the
$90.00 difference which is included in the enclosed check issued by Crowley's office to your
client.

## Title Insurance Reissuance Rate

You indicated that title insurance had been issued in connection with your client's prior mortgage
with New Century Mortgage Corporation. Fidelity National has confirmed that they would have
charged a refinance reissuance amount of $816.00 (at the rate of $1.50 per $1,000 of the loan
amount) had your client submitted a copy of their previous title insurance policy as proof of
eligibility for such rate. They do not have records indicating that any proof was submitted, and
your client is welcome to submit a copy of his prior policy to Fidelity National to determine his
eligibility for a refund.

## Recording Fee

Although the HUD shows that the recording fees were $315.00, the actual amount paid to
Middlesex County was $325.00 and is broken down as follows: $175.00 mortgage recording;
$75.00 discharge of Provident Bank mortgage; $75.00 discharge of mortgage from Brian L.



Frechette to Gregory Frechette and Gene Christopher Frechette (see enclosure). The overcharge of $10.00 in recording fees was absorbed by Crowley's office.

## City / County Tax / Stamps Fee

The amount of $25.00 was paid to the county for a municipal lien certificate to verify whether any outstanding taxes were owed. George Crowley's office has refunded this fee as an accommodation, the amount of which has also been included in the enclosed check.

## Settlement or Closing / Disbursement Fee

A settlement or closing fee is charged when a third party such as The Law Office of George Crowley performs the closing duties. A settlement disbursement fee was charged by them for their disbursement of the loan funds at settlement. Please note that Ameriquest does not dictate the amounts charged by third parties, and we are unable to respond to any allegations that such fees are unreasonable without further evidence that the charges are not in conformity with the standard market rate for such services.

Along with the check from the Law Office of George Crowley in the amount of $115.00 (including $90.00 title insurance refund plus the $25.00 municipal lien certificate fee), we are also enclosing the final disbursement ledger, HUD and settlement invoice as provided by Crowley's office.

We trust that the above responds to your concerns.

Sincerely,

Ann Tran
Counsel
Ameriquest Mortgage Company

Encls.

LAW OFFICE OF GEORGE T. CROWLEY
OPERATING ACCOUNT
304 CAMBRIDGE ROAD    SUITE 202
WOBURN, MA 01801

6367

CAMBRIDGE TRUST COMPANY
CAMBRIDGE, MA
53-59/113

5/17/2005

PAY TO THE
ORDER OF _____ Brian Frechette

$ **115.00

One Hundred Fifteen and 00/100***************************************************************************** DOLLARS

Brian Frechette

MEMO

74 Washington Street, Sherborn

⑂ SECURITY FEATURES INCLUDED. DETAILS ON BACK. ⑂

⑈006367⑈ ⑉011300595⑉ ⑈9104060⑈

WL258823-02-05

# KORDE & ASSOCIAT1

Counsellors at Law
321 Billerica Road, Suite 210
Chelmsford, MA 01824-4100

SANJIT S. KORDE
AMY H. MASFERRER
JULIE A. RANIERI
ANOUK DANAN

JOHN H. SLINGERLAND, OF COUNSEL

Telephone (978) 256-1500
Telefax (978) 256-7615
Email: skorde@kordeassoc.com

May 23, 2005

Michael J. Powers, Esq.                         CERTIFIED MAIL NO. 7004 2890 0004 2137 3336
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090

RE:   Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc.,
      Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing
      Agreement dated as of November 1, 2003, Without Recourse vs. Brian L. Frechette
      Land Court Case No. 305627
      Property Address: 74 Washington Street, Sherborn, MA

Dear Attorney Powers:

       You are hereby notified of the intention of Deutsche Bank National Trust Company, as Trustee
of Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under
the Pooling and Servicing Agreement dated as of November 1, 2003, Without Recourse to foreclose by
sale under the power of sale contained in a certain mortgage given by Brian L. Frechette to Ameriquest
Mortgage Company. The sale has been rescheduled to June 7, 2005 at 1:00 PM on the premises.

Very truly yours,

Julie A. Ranieri

JAR/am

# EXHIBIT B

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                    SUPERIOR COURT
                                 CIVIL ACTION NO.

BRIAN L. FRECHETTE,                 )
    Plaintiff                    )
                                    )
V.                                  )
                                    )
AMERIQUEST MORTGAGE COMPANY )
and DEUTSCHE BANK NATIONAL          )
TRUST COMPANY, as TRUSTEE of        )
AMERIQUEST MORTGAGE                 )
SECURITIES INC., ASSET BACKED       )
PASS-THROUGH CERTIFICATES,          )
SERIES 2003-11 UNDER THE            )
POOLING AND SERVICING               )
AGREEMENT DATED AS OF               )
NOVEMBER 1, 2003, WITHOUT           )
RECOURSE,                           )
    Defendants                   )

### PLAINTIFF, BRIAN L. FRECHETTE, APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND/OR FOR A PRELIMINARY INJUNCTION

Now comes the Plaintiff, Brian L. Frechette (hereinafter "Frechette"), and respectfully

moves this Honorable Court to issue a Temporary Restraining Order and/or a Preliminary

Injunction, enjoining and restraining the Defendants, Ameriquest Mortgage Company

(hereinafter "Ameriquest") and Deutsche Bank National Trust Company, as Trustee of

Ameriquest Mortgage Securities, Inc., Asset Backed Pass-Through Certificates, Series 2003-11

under the Pooling and Servicing Agreement dated as of November 1, 2003 (hereinafter,

collectively, "Deutsche Bank"), from proceeding with the foreclosure sale of Frechette's home at

74 Washington Street, Sherborn, Massachusetts, which sale is currently scheduled for Tuesday,

June 7, 2005, at 1:00 P.M.

As more fully set forth in the accompanying Memorandum of Law and the Affidavit of Brian L. Frechette, Frechette has properly and validly rescinded the mortgage which Ameriquest and Deutsche Bank seek to foreclose, based upon violations of the Massachusetts Consumer Credit Cost Disclosure Act by Ameriquest and Deutsche Bank, the assignee of Ameriquest and the present holder of the mortgage granted by Frechette. In foreclosure proceedings, the tolerance level for material disclosures by a lender such as Ameriquest is $35.00, and Ameriquest has admitted to errors in its disclosures of $115.00. Accordingly, Frechette's rescission of the mortgage loan transaction with Ameriquest on April 21, 2005 is both timely and valid, the mortgage at issue is void as a matter of law, and Ameriquest and Deutsche Bank, the assignee of Ameriquest, should be accordingly be enjoined from proceeding with the foreclosure sale of Frechette's home.

Frechette contends that he has satisfied all elements necessary to warrant the grant of injunctive relief, namely (1) a likelihood of success on the merits of his claims; (2) the likelihood that he will suffer irreparable harm, in particular, the loss of his home in the event that injunctive relief is not granted; (3) a demonstration that such harm outweighs any harm injunctive relief will cause Ameriquest and Deutsche Bank; and (4) that the issuance of injunctive relief is consonant with the public interest.

In further support of this Application, Frechette files the accompanying Memorandum of Law and the Affidavit of Brian L. Frechette, which are expressly incorporated herein by reference.

WHEREFORE, Frechette request that his Application for a Temporary Restraining Order and/or for a Preliminary Injunction, be granted, and that Ameriquest and Deutsche Bank be

enjoined from proceeding with the foreclosure sale, presently scheduled for Tuesday, June 7,

2005.

Respectfully Submitted:

BRIAN L. FRECHETTE

By its attorneys:

John T. Landry, III
Glynn, Landry, Harrington & Rice, LLP
10 Forbes Road
Braintree, MA 02184-2605
(781) 356-1399
BBO No. 544388

Michael J. Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090
(781) 326-7766
BBO No. 405035

# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

MIDDLESEX, SS.                                          CIVIL ACTION NO._____

BRIAN L. FRECHETTE,                    )
                 Plaintiff                           )
                                                       )
V.                                                     )
                                                       )
AMERIQUEST MORTGAGE COMPANY )
and DEUTSCHE BANK NATIONAL      )
TRUST COMPANY, as TRUSTEE of     )
AMERIQUEST MORTGAGE               )
SECURITIES, INC., ASSET BACKED    )
PASS-THROUGH CERTIFICATES,        )
SERIES 2003-11 UNDER THE             )
POOLING AND SERVICING               )
AGREEMENT DATED AS OF               )
NOVEMBER 1, 2003, WITHOUT          )
RECOURSE,                                          )
                 Defendants                         )

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF APPLICATION FOR EQUITABLE RELIEF

### INTRODUCTION

Plaintiff, Brian L. Frechette, is 58 years old, divorced and has two sons in college. He

has resided at his home located at 174 Washington Street, Sherborn, Massachusetts, since the

time he purchased the home almost 30 years ago in August of 1978[1].

The mortgage given to the Defendant Ameriquest Mortgage Company (hereinafter

"Ameriquest") by Mr. Frechette, and which is presently the subject of mortgage foreclosure

proceedings, was obtained in violation of state and federal laws, including the federal Truth-In-

Lending Act. The existence of these violations coupled with the commencement of foreclosure proceedings gave rise to rescission rights enabling Mr. Frechette to rescind the mortgage loan transaction. Rescission is a complete defense to the instant foreclosure action because the mortgage given to Ameriquest and subsequently assigned to the Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing Agreement dated as of November 1, 2003, Without Recourse (hereinafter "Deutsche Bank") was automatically rendered void upon Mr. Frechette's exercise of his rescission rights.

If the imminent foreclosure sale is allowed to proceed, it will cause Mr. Frechette immediate, substantial, and irreparable injury as he will lose his home of thirty years. For these reasons, Mr. Frechette requests this Court grant injunctive relief to prohibit the foreclosure sale of the home scheduled for Tuesday, June 7, 2005 at 1:00 p.m., and to stay any further acts of foreclosure of the mortgage pending the adjudication of the defenses raised by Mr. Frechette. In further support of his Application For Equitable Relief, Mr. Frechette relies on the Complaint and his Affidavit filed herewith.

## FACTS

Mr. Frechette, who is self-employed as a hardwood floor installer, suffered a significant business setback during the middle of 2004 that dramatically affected his cash flow. As a result, in the Fall of 2004, Mr. Frechette fell behind in the payments called for by the Adjustable Rate Note he had signed in connection with the refinance mortgage loan transaction he had entered

---

[1] The home was originally purchased by the Plaintiff, his then wife, his brother and his brother's fiancee; the Plaintiff currently owns the home outright having, over the years and at different times, bought out his brother, his brother's fiancee and his ex-wife.

2

into with Ameriquest on October 1, 2003 (hereinafter the "Mortgage Loan"). The Adjustable Rate Note signed by Mr. Frechette provided, among other things, for an initial interest rate of 11.500%, monthly payments of principal and interest in the amount of \$5,384.71 for the first two years of the loan term, and a prepayment penalty that remained in effect until the third anniversary of the Mortgage Loan transaction (the "Note").

Significantly, on September 23, 2003, just seven days prior to entering into the Mortgage Loan with Ameriquest, Mr. Frechette had entered into a refinance mortgage loan transaction with Ameriquest on loan terms practically identical to the terms of the Mortgage Loan. Mr. Frechette exercised his right to rescind this loan transaction during the so-called automatic three day right of rescission period due to Mr. Frechette's disappointment with the fact that the terms of this prior refinance transaction did not match the terms that had been disclosed to him in advance of the closing and due to his concern about his ability to make the payments called for by this loan. Notwithstanding this extraordinary action on the part of Mr. Frechette and his continued serious concern about his ability to make the payments called for by the Note, the Ameriquest loan originator that had been working with Mr. Frechette throughout the course of his dealings with Ameriquest convinced him to proceed with the Mortgage Loan refinance transaction in large part based on verbal representations that he would be able to refinance Mr. Frechette's mortgage loan within six to eight months at a much lower interest rate. **See ¶5-6 of Affidavit of Brian L. Frechette** filed herewith (hereinafter the "Frechette Affidavit").

By letter dated January 18, 2005, Mr. Frechette was advised by Korde & Associates, P.C. that they had been retained by Deutsche Bank  relative to Deutsche Bank's purported acceleration of the of the Mortgage Loan indebtedness. See **Exhibit A** attached hereto. By letter dated Feburary 14, 2005, Mr. Frechette was advised by Korde & Associates, P.C. of the filing

3

with the Land Court Department of the Trial Court of the Commonwealth of Massachusetts of a Petition To Foreclose Mortgage.    See **Exhibit B** attached hereto.  By letter also dated February 14, 2005, Mr. Frechette was advised by Korde & Associates, P.C. of Deutsche Bank's intention to foreclose by sale the mortgage granted by Mr. Frechette to Ameriquest in conjunction with the Mortgage Loan, said foreclosure sale to be held March 28, 2005.  See **Exhibit C** attached hereto. By letter dated March 14, 2005, in response to his request for same, Korde & Associates, P.C. provided Mr. Frechette with a breakdown of the "reinstatement" figure required to reinstatement the Mortgage Loan.  See **Exhibit D** attached hereto.  By letter dated April 4, 2005, Korde & Associates, P.C. advised Mr. Frechette that the foreclosure sale would be held at 2:00 p.m. on April 25, 2005.  See **Exhibit E** attached hereto.

On April 21, 2005, Mr. Frechette, through counsel, delivered a letter of rescission exercising Mr. Frechette's right to rescind the Mortgage Loan to Korde & Associates, P.C. via facsimile transmission, first class mail and certified mail, return receipt requested, with a copy to Deutsche Bank by first class mail and certified mail, return receipt requested (hereinafter the "Rescission Letter").  See **Exhibit F** attached hereto.  In summary, the Rescission Letter alleged that certain loan closing charges totaling in the aggregate in excess of $727.00 had not been included in the "finance charge" disclosed to Mr. Frechette at the time of the closing of the Mortgage Loan.  See paragraphs 15-17 of the Complaint filed herein for an itemization of said overcharges.

The return receipt received from the U.S. Postal Service relative to the copy of the Rescission Letter delivered to Deutsche Bank indicates receipt by Deutsche Bank on April 22, 2005.  See **Exhibit G** attached hereto.  By letter dated April 26, 2005, without providing a substantive response to Mr. Frechette's exercise of his rescission rights, Ameriquest, presumably

4

in its capacity as agent Deutsche Bank, acknowledged receipt of the Rescission Letter and further advised of the postponement of the foreclosure sale to June 7, 2005. See **Exhibit H** attached hereto. By letter dated May 18, 2005, sent via Federal Express Delivery and received by counsel for Mr. Frechette on May 19, 2005, Ameriquest, again presumably in its capacity as agent for Deutsche Bank, provided a substantive response to Mr. Frechette's Rescission Letter rejecting Mr. Frechette's right to rescind while simultaneously acknowledging a $90.00 overcharge relative to the title insurance premium that Mr. Frechette was charged for at the time of the closing of the Mortgage Loan. See **Exhibit I** attached hereto. Notwithstanding Ameriquest's acknowledgment of a $90.00 overcharge, Mr. Frechette was notified by letter dated May 23, 2005 of Deutsche Bank's intention to proceed with the foreclosure sale rescheduled for June 7, 2005. See **Exhibit J** attached hereto.

## ARGUMENT

A TEMPORARY RESTRAINING ORDER AND/OR A PRELIMINARY INJUNCTION SHOULD BE ISSUED AGAINST THE DEFENDANTS BECAUSE PLAINTIFF HAS SATISFIED THE REQUIREMENTS FOR INJUNCTIVE RELIEF.

The standard for granting a temporary restraining order and/or preliminary injunction are well-settled. Before a temporary restraining order or a preliminary injunction will issue, the movant must establish to the Court's satisfaction each of the following four elements: (1) that it has a likelihood of success on the merits; (2) that it will suffer irreparable harm if the temporary restraining order or injunction is not granted; (3) that such harm outweighs any harm injunctive relief would inflict on the defendant; and (4) that the injunction is consonant with the public interest. See *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 617 (1980). See also *T&D Video, Inc. v. Revere*, 423 Mass. 577 (1996); *Town of Brookline v. Goldstein*, 388 Mass. 443, 447 (1993).

5

As will be demonstrated below, Plaintiff has shown that he has a likelihood of success on the merits and he will suffer irreparable harm if the injunctive relief sought is not granted. It is also clear that the harm to the Plaintiff which would result if the restraining order and/or injunction is not granted far exceeds any harm which the Defendants might suffer from the issuance of a restraining order and/or an injunction. Finally, the granting of an injunction in this case is consonant with the public interest.

A.     Plaintiff's Likelihood of Success On The Merits.

　　　1.     Truth In Lending Violations.

Plaintiff has validly exercised his right to rescind the Mortgage Loan transaction on the basis of several violations of the Massachusetts Consumer Credit Cost Disclosure Act (hereinafter referred to as "CCCDA"). See M.G.L. c. 140D, §1 et seq. In that CCCDA provisions parallel those of federal Truth In Lending Act, 15 U.S.C.A. §1601, et seq. (hereinafter referred to as "TILA") and, accordingly, "should be construed in accordance with federal law." *Mayo v. Key Financial Services, Inc.*, No. 92-6441-D, slip op. at 6-7 (Superior Court, June 22, 1994). Further, the regulations promulgated under TILA (12 CFR §226.1 et seq., "Regulation Z") and CCCDA (209 C.M.R. 32.23) are substantially similar as well. *Whitley v. Rhodes Financial Services, Inc. (In re Whitley)*, 177 B.R. 142, 147 (Bankr. D. Massachusetts 1995). Accordingly, this Court may be guided by TILA and Regulation Z in interpreting the cognate provisions of Massachusetts law.

Relying solely on the fact that Ameriquest, as it has admitted, failed to include in the finance charge the amount of the $90.00 overcharge associated with the title insurance premium paid by Plaintiff, and the additional $25.00 charge for "City/County Tax Stamps", as evidenced by their check to Frechette for the same, the required TILA disclosures given to Plaintiff by

6

Defendant Ameriquest at the closing of the Mortgage Loan contained incorrect calculations of the annual percentage rate, finance charge and amount financed.[2] The failure to include the $90.00 title insurance premium and the $25.00 charge for stamps in the disclosed finance charge constitutes a violation of Regulation Z, §226.18(d) and 209 CMR 32.18(d) in amounts exceeding TILA's error tolerance for material disclosures. The tolerance level applicable in the foreclosure defense context is $35.00. 15 U.S.C. §1635(i)(2); Regulation Z § 226.23(h)(2)(i); 209 C.M.R. 32.23(8).

## 2.    Right To Rescind.

The Defendant Ameriquest's failure to make required material disclosures tolled the Plaintiff's rescission rights until the earlier of the provision of rescission rights notices with corrected material disclosures, or the passage of four years subsequent to the consummation of the Mortgage Loan transaction. M.G.L. c. 140D §10, 209 CMR 32.23(a)(3); cf., 15 U.S.C. §1635, Regulation Z, §226.23(a)(3). Neither the Defendant Ameriquest, nor the Defendant Deutsche Bank has provided the Plaintiff with rescission notices accompanied by the required corrected material disclosures. Plaintiff exercised his right to rescind by delivery of the Rescission Letter approximately one year and eight months after the closing of the Mortgage Loan, well within the permissible four year period. Plaintiff has validly exercised his right to rescind the Mortgage Loan transaction pursuant to the CCCDA and the regulations promulgated thereunder.

---

[2] Other defenses to the Mortgage Loan transaction may become evident during the course of litigation. Plaintiff reserves the right to raise them at that time. Much of the relevant

7

3.    Effect of Rescission.

As a result of Plaintiff's valid rescission of the Mortgage Loan transaction, the Defendant's security interest is void. Regulation Z, §226.23(d)(1); 209 C.M.R. 32.23(d)(1). Furthermore, and more importantly in the context of the instant proceeding, rescission is a complete defense to foreclosure of the mortgage encumbering the Plaintiff's property. See *FDIC v. Ablin*, 532 N.E. 2d 379 (Ill. App. 1988); *Community National Bank & Trust v. McClammy*, 525 N.Y.S. 2d 629 (App. Div. 1988); *Yslas v. D.K. Guenther Builders, Inc.*, 342 So. 2d 859 (Fla. Dist. Ct. App. 1977).

B.    If The Foreclosure Is Not Enjoined, Plaintiff Will Suffer Irreparable Harm Which Will Greatly Outweigh Any Harm To The Defendants.

If the Defendant's foreclosure is allowed to proceed, the Plaintiff will be irreparably harmed by virtue of the loss of his home of thirty years. On the other hand, if the Court decides at this time to simply enjoin the foreclosure, the amount of money the Defendants will lose pending the outcome of this litigation is small. Furthermore, if the Court were to ultimately decide that the Plaintiff was not entitled to rescind the Mortgage Loan transaction and that the Defendants were entitled to enforce the mortgage, the foreclosure sale can proceed at that time and the Defendants will have the opportunity to recover whatever small losses they may have sustained during the injunction period and any additional costs could be recouped through the foreclosure sale, or by virtue of pursing a deficiency action against Plaintiff if the foreclosure sale proceeds are insufficient to satisfy the Mortgage Loan indebtedness (assuming a valid mortgage).

information is solely in the possession of the Defendants. Thus, Plaintiff is raising only those defenses based on facts that are clear at this time.

C.    The Issuance Of Injunctive Relief In This Case Is Consonant With The Public Interest.

The purposes of the Truth-In-Lending Act have been eloquently described as follows:

> The federal TILA, originally enacted in 1969 to attempt to resolve the problem arising in the burgeoning post-World War II consumer-credit industry of overreaching of consumers by certain creditors by means of imposing unknown and often unknowable finance charges upon consumers, . . . Has been a Congressional "success story." The problem addressed by the Act was that, due to their leverage arising from production of adhesion contracts, the credit industry was imposing charges upon consumers of which consumers were ignorant . . .. The theory of the TILA was that, by requiring creditors to inform consumers, in standardized disclosure terms, of the cost of credit, consumers would be enlightened about these terms and would be able to shop for credit. The philosophy of "Let the buyer beware" was, thus, per former Chief Justice Burger, transformed into the philosohy of "Let the seller [or lender] disclose."

In re Russell, 72 B.R. 855, 861 (Bankr. E.D. Pa. 1987) (citing Mourning v. Family Publications Service, 411 U.S. 356, 364-65, 93 S. Ct. 1652, 36 L. Ed.2d 318, 326-327 (1973)). In light of the foregoing description of the purposes of TILA, to allow the foreclosure sale of the Plaintiff's home without first determining the validity of the underlying mortgage that is the subject of foreclosure proceedings by the Defendants undermines the public interest. The Plaintiff has raised serious doubts as to the validity of the Defendants' mortgage. To allow the foreclosure proceedings to go any further will not only be a gross injustice but will violate all notions of public policy.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that his Application For A Temporary Restraining Order and/or A Preliminary Injunction be granted.

9

Respectfully submitted,

BRIAN L. FRECHETTE

By his attorneys,

John T. Landry, III (BBO#544388)
Glynn, Landry, Harrington & Rice, LLP
10 Forbes Road East
Braintree, MA 02184

Tel: 781-356-1399

Michael J. Powers BBO# 405035
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090
Tel: 781-326-7766

Dated: June 3, 2005

10

Korde & Associates, P.C.    9782567615    14/36

# KORDE & ASSOCIATES, P.C.

Counsellors at Law
321 Billerica Road, Suite 210
Chelmsford, Massachusetts 01824-4100

Telephone (978) 256-1500
Teletax (978) 256-7615
Email: skorde@kordeassoc.com

January 18, 2005

**FIRST CLASS &**
**CERTIFIED MAIL NO. 7004 1160 0002 9342 8034**

Brian L. Frechette
74 Washington Street
Sherborn, MA 01770

RE: Account No.: 0059193128

Dear Mr. Frechette:

Please be advised that this office represents Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing Agreement dated as of November 1, 2003, Without Recourse the present holder of your mortgage to Ameriquest Mortgage Company. My client has brought to our attention your delinquent mortgage account regarding the property located at 74 Washington Street, Sherborn, MA and their acceleration of the entire indebtedness. The current outstanding balance on your debt is $583,828.90. This includes principal, interest, escrow, late charges, attorney fees and expenses.

UNLESS YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL A COPY OF SUCH VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR. THAT YOU HAVE 30 DAYS TO NOTIFY THIS OFFICE OF A DISPUTE AS TO THE VALIDITY OF ALL OR ANY PORTION OF THE DEBT MAY NOT PREVENT THIS OFFICE FROM FILING A COMPLAINT TO FORECLOSE MORTGAGE WITHIN THAT TIME.

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Sincerely,

Julie A. Ranieri

Received Time Apr. 21. 11:05AM

# KORDE & ASSOCIATES, P.C.

Counsellors at Law

321 Billerica Road. Suite 210
Chelmsford. Massachusetts 01824-4100

SANDIT S. KORDE
AND H. MASFERRED
JULIE A. RANIERI
ANOUK DANAN
VECTOR MANOUGIAN

JOHN H. SLINGERLAND OF COUNSEL

Telephone (978) 256-1500
Telefax (978) 256-7615
Email: skorde@kordeassoc.com

February 14, 2005

FIRST CLASS MAIL &
CERTIFIED MAIL NO. 7004 1160 0002 9348 3903

Brian L. Frechette
74 Washington Street
Sherborn, MA 01770

RE:   PETITION TO FORECLOSE MORTGAGE
      Land Court Case No. 305627
      Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage
      Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under
      the Pooling and Servicing Agreement dated as of November 1, 2003, Without
      Recourse vs. Brian L. Frechette
      Property: 74 Washington Street, Sherborn, MA

Dear Mr. Frechette:

Enclosed herewith please find a citation issued by the Land Court with respect to the
above foreclosure action.

Should you have any questions with respect to this matter, please do not hesitate to
contact the undersigned.

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

Sincerely,

Victor Manougian

Enclosure

### COMMONWEALTH OF MASSACHUSETTS

(SEAL)

### LAND COURT

### DEPARTMENT OF THE TRIAL COURT

To:    Brian L. Frechette

**Case No.  3 0 56 27**

and to all persons entitled to the benefit of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended:

Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing Agreement dated as of November 1, 2003, Without Recourse

claiming to be the holder of                    mortgage
covering real                                   property in  Sherborn, numbered 74 Washington Street,

given by Brian L. Frechette to Ameriquest Mortgage Company, dated October 1, 2003,
    recorded at Middlesex County (Southern District) Registry of Deeds in Book 41251,
    Page 76, and now held by the Plaintiff by assignment,

has filed with said court a complaint for authority to foreclose said mortgage

in the manner following: by entry and possession and exercise of power of sale.

If you are entitled to the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended and you object to such foreclosure you or your attorney should file a written appearance and answer in said court at Boston on or before the    14th    day of    March    20 05  ,
or you may be forever barred from claiming that such foreclosure                        is invalid
under said act.

Witness, **KARYN F. SCHEIER**, Chief Justice of said Court this

    28th    day of    January    20 05 .

Ann-Marie J. Breuer
Deputy Recorder

LCO-5 (9/89)

PUBLISH THE ABOVE COPY
RECORD THE ATTESTED COPY

# KORDE & ASSOCIATES, P.C.

Counsellors at Law

321 Billerica Road, Suite 210
Chelmsford, Massachusetts 01824-4100

SANJIT S. KORDE
AMY H. MASREPPER
JULIE A. RANIEP.
ANJLIK DANAN
VICTOR MANOELCIAN

JOHN H. SLINGERLAND, OF COUNSEL

Telephone (978) 256-1500
Telefax (978) 256-7615
Email: skorde@kordeassoc.com

**DEFICIENCY NOTICE**

February 14, 2005

FIRST CLASS MAIL &
CERTIFIED MAIL NO. 7004 1160 0002 9348 3903

Brian L. Frechette
74 Washington Street
Sherborn, MA 01770

RE:    PROPERTY: 74 Washington Street, Sherborn, MA
       MORTGAGE HELD BY: Deutsche Bank National Trust Company, as Trustee of
                        Ameriquest Mortgage Securities Inc., Asset Backed
                        Pass-Through Certificates, Series 2003-11 under the
                        Pooling and Servicing Agreement dated as of
                        November 1, 2003, Without Recourse
       MORTGAGE GIVEN TO: Ameriquest Mortgage Company
       DATE OF MORTGAGE:    October 1, 2003
       ORIGINAL PRINCIPAL AMOUNT OF MORTGAGE: $543,750.00
       MORTGAGE RECORDED WITH:    Middlesex County (Southern District)
                        Registry of Deeds, Book 41251, Page 76

Dear Mr. Frechette:

You are hereby notified in accordance with the statutes of the Commonwealth of
Massachusetts of our intention on or about March 28, 2005 to foreclose by sale under
power of sale for breach of conditions, and by entry, the above captioned mortgage
given to secure a note for the above stated original principal amount for the whole or
the above named holder of the mortgage in the event
he foreclosure sale.

O COLLECT A DEBT. ANY INFORMATION
THAT PURPOSE.



compliance

Brian L. Frechette
74 Washington Street
Sherborn

March 14, 2005

Brian L. Frechette
P.O. Box 92
Sherborn, MA  01770

> RE:  Mortgagor: Brian L. Frechette
>       Premises:  74 Washington Street, Sherborn, MA
>       Account #: 0059193128

Per your request, following is a breakdown of **reinstatement** figures for the above account:

| | |
|---|---:|
| 6 Payments | $32,308.26 |
| Accrued Late Charges | 1,776.94 |
| Late Charge Forecasted | 161.54 |
| Property Inspections | 30.00 |
| Escrow | 4.71 |
| Appraisal/BPO | 375.00 |
| Foreclosure Fees & Costs | 4,260.41 |
| Bad Check | 20.00 |
| Net Other Fees | 40.00 |
| Suspense | (115.30) |
| Total | **$38,861.56** |

Please note that the above figure is valid only until **March 21, 2005**. ALL FUNDS FOR REINSTATEMENT MUST BE IN THE FORM OF EITHER A BANK OR CERTIFIED CHECK PAYABLE TO AMERIQUEST MORTGAGE COMPANY. The check <u>must be received</u> by our office no later than **4:00 P.M. March 21, 2005**. Should a shortage exist on the escrow account after reinstatement, your account will be reanalyzed to insure the escrow payment is sufficient.

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Sincerely,

Brenda Taylor

Received Time Apr.21. 11:05AM

# KORDE & ASSOCIATES, P.C.

Counsellors at Law
321 Billerica Road, Suite 210
Chelmsford, MA 01824-4100

SANJIT S. KORDE
AMY H. NASTERBER
JULIE A. RANIERI
ANOUK DAKAN
VICTOR MANOUGIAN

JOHN H. SLINGERLAND, OF COUNSEL

Telephone (978) 256-1500
Telefax (978) 256-7615
Email: skorde@kordeassoc.com

| **DEFICIENCY NOTICE** |
| --- |

April 4, 2005

Brian L. Frechette
P.O. Box 92
Sherborn, MA 01770

VIA FIRST CLASS MAIL &
CERTIFIED MAIL NO. 7004 2890 0004 2132 7582

RE:    Property: 74 Washington Street, Sherborn, MA
Mortgage Held By: Deutsche Bank National Trust Company, as Trustee of Ameriquest
Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under
the Pooling and Servicing Agreement dated as of November 1, 2003, Without Recourse
Mortgage Given To: Ameriquest Mortgage Company
Date of Mortgage: 10/1/2003
Original Principal Amount of Mortgage: $543,750.00
Mortgage Recorded With Middlesex (Southern) Registry of Deeds, Book 41251, Page 76

Dear Mr. Frechette:

You are hereby notified in accordance with the statutes of the Commonwealth of Massachusetts
of our intention on or after April 25, 2005 to foreclose by sale under power of sale for breach of
conditions, and by entry, the above captioned mortgage given to secure a note for the above
stated original principal amount for the whole or part of which you may be liable to the above
named holder of the mortgage in the event of a deficiency in the proceeds of the foreclosure sale.

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

Sincerely,

Julie A. Ranieri

JAR/am

Korde & Associates, P.C    9782567615    7/36


Exhibit E (2 of 3)

## LEGAL NOTICE
## MORTGAGEE'S SALE OF REAL ESTATE

By virtue of and in execution of the Power of Sale contained in a certain mortgage given by **Brian L. Frechette** to **Ameriquest Mortgage Company**, dated October 1, 2003 and recorded with Middlesex County (Southern District) Registry of Deeds in Book 41251, Page 76 of which mortgage **Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing Agreement dated as of November 1, 2003, Without Recourse** is the present holder by assignment, for breach of conditions of said mortgage and for the purpose of foreclosing the same, the mortgaged premises located at 74 Washington Street, Sherborn, Massachusetts will be sold at a Public Auction at 2:00 P.M. on April 25 2005, at the mortgaged premises, more particularly described below, all and singular the premises described in said mortgage, to wit:

A certain parcel of land situated in Sherborn in the County of Middlesex and said Commonwealth, bounded and described as follows:

SOUTHEASTERLY by Washington Street as shown on said plan, one three courses, measuring respectively 225 feet, 96 feet and 101.50 feet;

SOUTHWESTERLY by land now or formerly of H.E. Eastman on said Plan, 120.00 feet;

WESTERLY by land now or formerly of said Eastman on said plan on three courses measuring respectively, 55.00 feet, 46.35 feet and 42.70 feet;

NORTHWESTERLY nearly Northerly by land now or formerly of Francis Grout on said Plan, 561.50 feet; and

NORTHEASTERLY by said land now or formerly of Grout on said Plan, 214.67 feet.

Containing according to said plan, 2.4 acres.

Th premises are conveyed together with all the rights, privileges and easements as set forth in a deeds of Francis Grout to Austin S. Grindle dated February 3, 1950, recorded with said District Deeds in Book 7539, Page 491.

The premises are conveyed subject to Takings by the Town on Sherborn for easements in said Washington Street as set forth in instruments recorded with said Deeds in Book 5592, Page 347 and in Book 5658. Page 230.

For mortgagor's title see deed recorded with the Middlesex County (Southern District) Registry of Deeds in Book 35653, Page 77.

Korde & Associates. P.C.    9782567615    8/36
Exhibit E (3 of 3)

The premises will be sold subject to any and all unpaid taxes and other municipal assessments and liens, and subject to prior liens or other enforceable encumbrances of record entitled to precedence over this mortgage, and subject to and with the benefit of all easements, restrictions, reservations and conditions of record and subject to all tenancies and/or rights of parties in possession.

Terms of the Sale: Cash, cashier's or certified check in the sum of $5,000.00 as a deposit must be shown at the time and place of the sale in order to qualify as a bidder (the mortgage holder and its designee(s) are exempt from this requirement); high bidder to sign written Memorandum of Sale upon acceptance of bid; balance of purchase price payable in cash or current funds in thirty (30) days from the date of the sale at the offices of mortgagee's attorney, Korde & Associates, P.C., 321 Billerica Road, Suite 210, Chelmsford, MA 01824-4100 c/o Sanjit S. Korde or such other time as may be designated by mortgagee.

Other terms to be announced at the sale.

Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing Agreement dated as of November 1, 2003, Without Recourse,

present holder of said mortgage, by its attorney

Sanjit S. Korde
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824-4100
(978) 256-1500

# *POWERS LAW OFFICES, P.C.*

91 Gloucester Road, Westwood, Massachusetts 02090
781-326-7766 (Tel)     781-326-7788 (Fax)   617-471-2000 (Cell)

MICHAEL J. POWERS, ESQUIRE
bicoastal@comcast.net

April 21, 2005

**Original By Certified Mail**
**(No. 7004 2890 0001 4725 5572)**
**Return Receipt Requested**
**Copy by Facsimile Transmission**
**(978-256-7615), & USPS Next Day**

Victor Manougian, Esquire
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824

| RE: | Borrower: | **Brian L. Frechette** |
|---|---|---|
| | Lender: | **Ameriquest Mortgage Company** |
| | Assignee: | **Deutsche Bank National Trust Company, as Trustee** |
| | Loan: | **$543,750 Refinance Mortgage Loan dated October 1, 2003** |
| | Property: | **74 Washington Street, Sherborn, MA 01770** |
| | Mortgage: | **Middlesex South Registry of Deeds, Book 41251, Page 76** |
| | Case No.: | **305627 (Land Court)** |

Dear Attorney Manougian:

As you are aware, I, along with Attorney John T. Landry, III, of Glynn, Landry, Harrington & Rice, LLP, represent Brian L. Frechette ("Mr. Frechette") relative to the mortgage foreclosure proceeding commenced by your office on behalf of Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing Agreement dated as of November 1, 2003 ("Deutsche Bank"). Because the refinancing transaction that Mr. Frechette entered into on October 1, 2003, with Ameriquest Mortgage Company ("Ameriquest") involved several violations of the Massachusetts Truth In Lending Act (M.G.L. c.140D, §1 et seq.) ("TILA"), our client has authorized us to rescind the transaction pursuant to M.G.L. c.140D, §10, and the Massachusetts Banking Commissioner's Regulations promulgated thereunder, 209 CMR 32.23.

The following brief synopsis of the facts and law which outlines Mr. Frechette's right to rescind incorporates citations to the federal Truth In Lending Act ( (15 USC §1601, et. seq.), the Federal Reserve Board Regulations promulgated thereunder (12 CFR §226.1 et. seq., "Regulation Z"); the Official Staff Commentary of the Federal Reserve Board; and relevant federal case law. As the

**Victor Manougian, Esquire**
**April 21, 2005**
**Page 2**

Massachusetts TILA and regulations are identical to the federal statutory and regulatory scheme in all substantive aspects, the state courts are guided by this federal law in interpreting the cognate provisions of state law. Therefore, although reference is made to federal law throughout this letter for illustrative purposes, the rescission claim and all other claims made herein are solely grounded in state law.

### Bases For Exercise of Right of Rescission

The TILA violation which gives rise to Mr. Frechette's right to rescind the Ameriquest mortgage loan transaction includes, but is not limited to, Ameriquest's failure to disclose the correct finance charge. **Mr. Frechette hereby expressly reserve the right to allege additional TILA violations in the event the same are ascertained either in the course of additional investigation or analysis of the circumstances surrounding and the disclosures made in connection with the consummation of the Ameriquest mortgage loan transaction or ascertained through discovery in the event the resolution of this matter involves litigation.**

The TILA violations currently known to Mr. Frechette involve charges that were not bona fide and reasonable and, accordingly, these charges should have been disclosed as components of the finance charge at the time of the consummation of the Ameriquest mortgage loan transaction. By failing to disclose the following charges as components of the finance charge, Ameriquest violated Regulation Z, §226.4(c)(7), and 209 CMR 32.4(c)(7). (All of the following charges are shown on the copy of the HUD-1 Settlement Statement relative to Mr. Frechette's refinance mortgage loan with Ameriquest attached to this correspondence as Exhibit "A").

A.   *$90.00 Undisclosed Finance Charge Based On Failure To Properly Calculate Title Insurance Premium.* According to line 1108 of the Ameriquest HUD-1 Settlement Statement, Mr. Frechette was charged $1,450.00 for lender's title insurance coverage in the amount of $543,750. According to the copy of the Fidelity National Title Insurance Company of New York ("Fidelity") Loan Policy Number 5412-3231241 issued in connection with Mr. Frechette's Ameriquest mortgage loan, the actual premium paid was $1,360.00 (a copy of Schedule A to said loan policy attached hereto as Exhibit "B"). Accordingly, the $90.00 overcharge constitutes an undisclosed finance charge.

B.   *$547.00 Undisclosed Finance Charge Based On Failure To Provide Refinance Loan "Discount" On Title Insurance Premium.* At the time of the issuance of Ameriquest's loan policy of title insurance, Fidelity's published premium rate schedule also provided that in the case of a refinance loan if a policy has been issued insuring the mortgage being refinanced, then the new premium may be 60% of the current premium. To the extent that the new loan amount exceeded the old loan amount, then additional premium at the full rate should be collected for the excess amount. A policy had in fact been issued in connection with the

**Victor Manougian, Esquire**
**April 21, 2005**
**Page 3**

$456,400 first mortgage loan with New Century Mortgage Corporation being refinanced by Mr. Frechette. Accordingly, Mr. Frechette should have been charged only $740.00 for the required lender's policy of title insurance, calculated as follows:

$684.60  Premium on first $456,400 of coverage x 60% of $2.50 rate/$1,000
$218.40  Premium on remaining $87,350 at $2.50 rate/$1,000
$903.00  Premium reflecting appropriate discount

Failure to provide Mr. Frechette with the available discount resulted in a title insurance premium overcharge of $547.00, which overcharge constitutes an undisclosed finance charge.

C.    *$65.00 Undisclosed Finance Charge Based on Recording Fees Overcharge.* According to line 1201 of the Ameriquest HUD-1 Settlement Statement, Mr. Frechette was charged recording fees in the amount of $315.00. However, an examination of the public records of the Middlesex South Registry of Deeds indicates that only $250.00 in recording fees were paid in connection with the (i) the recording of Ameriquest's mortgage ($175.00) and (ii) the recording of a discharge ($75.00). To the extent that the remaining $65.00 in recording fees collected from Mr. Frechette were in fact not paid to public officials, the same represents an undisclosed finance charge. See *Mayo v. Key Financial Services, Inc.*, 424 Mass. 862 (1997).

D.    *$25.00 Undisclosed Finance Charge Based on "City/County Tax/Stamps" Fee Overcharge.* According to line 1202 of the Ameriquest HUD-1 Settlement Statement, Mr. Frechette was charged $25.00 for "City/County Tax/Stamps." There is no record of any tax or stamps being paid in connection with the consummation of Mr. Frechette's mortgage loan transaction with Ameriquest. To the extent that the $25.00 in tax/stamps collected from Mr. Frechette were in fact not paid to public officials, the same represents an undisclosed finance charge.

F.    *Excessive portion of Attorney Closing Fees Overcharge.* According to lines 1101 and 1111 of the Ameriquest HUD-1 Settlement Statement, the closing attorney handling Mr. Frechette's Ameriquest refinance mortgage loan transaction charged Mr. Frechette a $300.00 "settlement or closing fee" and a $750.00 "settlement/disbursement" fee, for a total of $1,050.00 in "settlement" legal fees. In addition, the $295.00 charged for an "escrow fee" referenced on line 1112 of the Settlement Statement is merely disguised as a separate cost in order to make the aggregate "settlement" legal fees charged appear lower. The aggregate $1,345.00 legal fee charged for closing Mr. Frechette's mortgage loan far exceeds the range of charges normally imposed by experienced lender's counsel on loans of this type. As such, the excessive portion is an undisclosed finance charge.

**Victor Manougian, Esquire**
**April 21, 2005**
**Page 4**

In summary, Ameriquest failed to disclose an aggregate of $727.00 in actual finance charges that were paid by Mr. Frechette and failed to disclose the excessive portion of the legal fees paid by Mr. Frechette to Ameriquest's closing attorney. These failures constitute a violation of Regulation Z, §226.18(d) and 209 CMR 32.18(d) in amounts exceeding TILA's error tolerance for material disclosures (i.e. $35.00 error tolerance applicable in foreclosure defense context). Further, this failure to make required material disclosures tolls Mr. Frechette's rescission rights until the earlier of Deutsche Bank's provision of rescission right notices with corrected material disclosures, or the passage of four years subsequent to consummation of the transaction. G.L. c.140D, §10, 209 CMR 32.23(a)(3). Cf., 15 USC 1635, Regulation Z, §226.23(a)(3). Deutsche Bank has not provided Mr. Frechette with rescission notices accompanied by the required corrected material disclosures. Further, it has only been approximately one year and eight months since the consummation of the Ameriquest mortgage loan transaction. Accordingly, Mr. Frechette is entitled at this time to rescind the Ameriquest mortgage loan transaction pursuant to the extended rescission rights provided for by TILA.

## Demand For Relief

As a result of this rescission notice, Deutsche Bank's security interest is void (209 CMR 32.23(d)(1); Regulation Z, §226.23(d)(1)) and Deutsche Bank is bound to immediately terminate such security interest. 209 CMR 32.23(d)(2); Regulation Z, §226.23(d)(2). In addition, Deutsche Bank has twenty (20) days from its receipt of this notice to return to Mr. Frechette all monies paid in connection with the terms of the Ameriquest mortgage loan. *Id.* Failure to cancel the security interest and return to Mr. Frechette all monies due may subject Deutsche Bank to actual and statutory damages, pursuant to G.L. c.140D, §32, as well as multiple damages for corresponding violations of c.93A. *See*, G.L. c.140D, §34. **Finally, demand is made to immediately suspend all collection proceedings being instituted against Mr. Frechette including but not limited to the foreclosure sale of the subject property scheduled for 2:00 p.m. on Monday, April 25, 2005.**

Very truly yours,

Michael J. Powers

Enclosures
cc: Brian L. Frechette (w/copies of encls. - by first class mail)
    Paul Irwin, Esquire (w/copies of encls. - by fax and first class mail)
    John T. Landry, III, Esquire (w/copies of encls. - by fax and first class mail)
    The Jumpp Company, Inc. (w/copies of encls. - by fax and first class mail)
    Deutsche Bank National Trust Company, as Trustee (w/copies of encls. - by Certified Mail,
    No. 7004 2510 0001 , Return Receipt Requested at: 1761 Andrews Place, Santa Ana, CA 92705)
    4725 5589                                              East Street,

EXHIBIT F (504)

Oct-09-03  12:31pm  From-AMERIQUEST MORTGAGE/NATICK    +508-655-7589    T-508  P.004/005  F-094

and Urban Development    WLI STN

**Transactions without Sellers**

Name & Address of Borrower:
Brian L. Frechette

74 Washington Street    SHERBORN, MA 01770
Property Location: (if different from above)

74 Washington Street, SHERBORN, MA 01770

Name & Address of Lender:
Ameriquest Mortgage Company
1 Apple Hill DR., Box 8118
Natick, MA 01760

Settlement Agent:
CROWLEY, ESQ., GEORGE T.

Place of Settlement: 63 SHORE ROAD WINCHESTER, MA 01890

| L. Settlement Charges | | | | | | |
|---|---|---|---|---|---|---|
| 800. Items Payable in Connection with Loan | | | Loan Number: 0059193128 - 5789 | | Settlement Date: 10/08/2003 | |
| 801. Loan origination fee    % to | | | | | | |
| 802. Loan discount  2.000  % to  Ameriquest Mortgage Company | | $10,875.00 | M.    Disbursement to Others | | | |
| 803. Apprsl/Prop Val to Burke Appraisals    *L  $160.80 *  $0.00 | | $300.00 | 1501. HHLD BANK | (W) | $299.00 | |
| 804. Credit report to | | | | | | |
| 805. Inspection fee to | | | 1502. DISCOVER FINANCIAL S | (W) | $311.00 | |
| 806. | | | | | | |
| 807. | | | 1503. PROVIDENTBNK | (W) | $466,532.08 | |
| 808. Yield Spread Premium to | | | | | | |
| 809. | | | 1504. PROVIDIAN FINANCIAL | (W) | $214.00 | |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | | $70.00 | | | | |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | | $16.00 | 1505. SOVEREIGN BANK | (W) | $1,817.00 | |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | | $526.00 | | | | |
| 813. Admin to Ameriquest Mortgage Company | | $239.00 | 1506. | | | |
| 814. Doc. Prep. Fee to | | | | | | |
| 815. Credit Report Fee to | | | 1507. | | | |
| 816. Origination Fee    % to | | | | | | |
| 817. Application Fee to  Ameriquest Mortgage Company | | $350.00 | 1508. | | | |
| 818. Underwriting Fee to | | | | | | |
| 819. Service Provider Fee to | | | 1509. | | | |
| 820. Processing Fee  to | | | | | | |
| 821. Underwriting Fee to | | | 1510. | | | |
| 822. Appraisal Fee to | | | | | | |
| 900. Items Required by Lender to be Paid in Advance | | | 1511. | | | |
| 901. Interest from 10/08/2003 to 11/01/2003  @  $171.32  per day | | $4,111.68 | | | | |
| 902. Mortgage insurance premium for    months to | | | 1512. | | | |
| 903. Hazard ins prem  to | | $0.00 | | | | |
| 904. Flood ins prem  to | | | 1513. | | | |
| 1000. Reserves Deposited with Lender | | | | | | |
| 1001. Hazard insurance    months @ $    per month | | | 1514. | | | |
| 1002. Mortgage insurance    months @ $    per month | | | | | | |
| 1003. Earthquake Ins    months @ $    per month | | | 1515. | | | |
| 1004. County prop. taxes    months @ $    per month | | | | | | |
| 1005. Annual assess.    months @ $    per month | | | 1520. TOTAL DISBURSED (enter on line 1603) | | $469,873.08 | |
| 1006. Flood    months @ $    per month | | | | | | |
| 1007. Wingstorm Ins    months @ $    per month | | | Total Wire:    $527,162.32 | | | |
| 1008. | | | | | | |
| 1100. Title Charges | | | Deposit at Escrow/Title:    $0.00 | | | |
| 1101. Settlement or closing fee to  The Law Offices of | | $300.00 | Subordinate Financing:    $0.00 | | | |
| 1102. Abstract or title search to | | | | | | |
| 1103. Title examination to | | | | | | |
| 1104. Title insurance binder to | | | | | | |
| 1105. Document preparation to | | | | | | |
| 1106. Notary fees to | | | | | | |
| 1107. Attorney's fees to | | | | | | |
| 1108. Title insurance to  The Law Offices of George Crowley | | $1,450.00 | | | | |
| 1109. Lender's coverage    $ | | | | | | |
| 1110. Owner's coverage    $ | | | | | | |
| 1111. Settlement/Disbursement fee to  The Law Offices of | | $750.00 | L = Lender Paid | | | |
| 1112. Escrow Fee to The Law Offices of George Crowley | | $295.00 | | | | |
| 1200. Government Recording and Transfer Charges | | | | | | |
| 1201. Recording fees | | $315.00 | N.    NET SETTLEMENT | | | |
| 1202. City/county tax/stamps | | $25.00 | | | | |
| 1203. State tax/ stamps | | | | | | |
| 1204. State specific tax | | | 1500. Loan Amount | | $543,750.00 | |
| 1205. State specific tax | | | | | | |
| 1300. Additional Settlement Charges | | | 1501. Plus Cash/Check from Borrower | | | |
| 1301. Demand to | | | | | | |
| 1302. Pest inspection to | | | 1502. Minus Total Settlement Charges (line 1400) | | $19,812.68 | |
| 1303. Survey Fee | | $60.00 | | | | |
| 1304. Staff Appraiser Fee | | | 1503. Minus Total Disbursements to Others (line 1520) | | $469,873.08 | |
| 1305. Reconveyance Fee to | | | | | | |
| 1306. | | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | | $54,064.24 | |
| 1307. Property Val Fee to | | | | | | |
| 1308. Courier Fee | | $30.00 | | | | |
| 1400. Total Settlement Charges (enter on line 1602) | | $19,812.68 | | | | |

Borrower(s) Signature(s):

X _____

Approved for Funding By: Chris Jenkins    Approved: _____    Branch: Natick, MA 01760

Mortgage Lenders License - License Number ML0702

## SCHEDULE A
### LOAN FORM

OFFICE FILE NO. 2006182

| OWNERS | POLICY NUMBER | DATE OF POLICY @ | AMOUNT OF INSURANCE | PREMIUM |
|--------|---------------|------------------|---------------------|---------|
| LOAN | POLICY NUMBER 5412-3231241 | DATE OF POLICY 10/9/2003 @ 2:16 PM | AMOUNT OF INSURANCE $543,750.00 | PREMIUM $1,360.00 |

1.    Name of Insured:

Ameriquest Mortgage Company. its successor and/or assigns, ATIMA

2.    The estate or interest referred to herein is at Date of Policy vested in:

Brian L. Frechette

3.    The estate or interest in land described in this Schedule and which is encumbered  by the  insured mortgage is :

Fee Simple.

4.    The Mortgage, herein referred to as the insured mortgage, and the assignments thereof, if any, are described as follows:

Mortgage from Brian L. Frechette to Ameriquest Mortgage Company, dated 9/23/2003, securing the original principal amount of $543,750.00 and recorded with the Middlesex County Registry of Deeds on 10/9/2003 at 2:16 PM as Instrument No. 1279.

5.    The land referred to in this policy is located at 74 Washington Street, in the City/Town of Sherborn, County of Middlesex, State of Massachusetts,  and is described as set forth in Exhibit A attached hereto and made a part hereof.

Countersigned

By: _George T. Crowley/dmb_
     Authorized Signatory
     George T. Crowley

FORM 26 - 031/041 - 90/92 A (4/93) (rev. 96)

EXHIBIT G

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( *Printed Name* )    C. Date of Delivery
4/22/05

1. Article Addressed to:

Deutsche Bank National Tr. Co,
        Trustee
1761 East Street
Andrews Place
Santa Ana, CA 92705

D. Is delivery address different from item 1? ☐ Yes
    If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*    ☐ Yes

2. Article Number
*(Transfer from service label)*    7004 2890 0001 4725 5589

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540



# AMERIQUEST®
MORTGAGE COMPANY

April 26, 2005                                    *Via First Class U.S. Mail*

Michael Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090

*Re:*    *Borrower(s):*               *Brian Frechette*
         *Ameriquest Loan Number:*    *0059193128*
         *Property Address:*          *74 Washington Street*
                                      *Sherborn, MA 01770*

Dear Mr. Powers:

This letter is to acknowledge receipt of your correspondence dated April 21, 2005, regarding the loan referenced above.

Ameriquest Mortgage Company strives to provide you with the utmost attention in resolving your concerns. We will research the matters contained in your correspondence and provide a response upon completion of our investigation.

Please note that the foreclosure sale that was originally scheduled for April 25, 2005 has been postponed until June 7, 2005, pending resolution of this matter.

On behalf of Ameriquest Mortgage Company, we would like to thank you for bringing this matter to our attention.

Sincerely,

Ameriquest Mortgage Company





May 18, 2005                                                         *Via Federal Express*

Michael Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090

*Re:*    *Borrower(s):*                *Brian Frechette*
         *Ameriquest Loan Number:*    *0059193128*
         *Property Address:*          *74 Washington Street*
                                      *Sherborn, MA 01770*

Dear Mr. Powers:

We are writing in response to your letter requesting rescission of the above referenced loan
pursuant to the Federal Truth In Lending Act (TILA). After careful review, we respectfully reject
your claim that in making the loan to your client Ameriquest violated TILA, and accordingly
deny your request for rescission. Below is our response to your inquiries regarding the charges on
your client's HUD Settlement Statement (HUD):

### Title Insurance

We have confirmed with the Law Office of George Crowley, closing agent for this loan that
although the premium for your client's Fidelity National Title Insurance (Fidelity National)
policy was reflected as being $1,450.00 on the HUD, it was in fact $1,360.00. Please accept the
$90.00 difference which is included in the enclosed check issued by Crowley's office to your
client.

### Title Insurance Reissuance Rate

You indicated that title insurance had been issued in connection with your client's prior mortgage
with New Century Mortgage Corporation. Fidelity National has confirmed that they would have
charged a refinance reissuance amount of $816.00 (at the rate of $1.50 per $1,000 of the loan
amount) had your client submitted a copy of their previous title insurance policy as proof of
eligibility for such rate. They do not have records indicating that any proof was submitted, and
your client is welcome to submit a copy of his prior policy to Fidelity National to determine his
eligibility for a refund.

### Recording Fee

Although the HUD shows that the recording fees were $315.00, the actual amount paid to
Middlesex County was $325.00 and is broken down as follows: $175.00 mortgage recording;
$75.00 discharge of Provident Bank mortgage; $75.00 discharge of mortgage from Brian L.

1100 Town & Country Road, Suite 450, Orange, CA 92868 · Phone (714) 541-9960 · Fax (714) 564-9639



Frechette to Gregory Frechette and Gene Christopher Frechette (see enclosure). The overcharge of $10.00 in recording fees was absorbed by Crowley's office.

## City / County Tax / Stamps Fee

The amount of $25.00 was paid to the county for a municipal lien certificate to verify whether any outstanding taxes were owed. George Crowley's office has refunded this fee as an accommodation, the amount of which has also been included in the enclosed check.

## Settlement or Closing / Disbursement Fee

A settlement or closing fee is charged when a third party such as The Law Office of George Crowley performs the closing duties. A settlement disbursement fee was charged by them for their disbursement of the loan funds at settlement. Please note that Ameriquest does not dictate the amounts charged by third parties, and we are unable to respond to any allegations that such fees are unreasonable without further evidence that the charges are not in conformity with the standard market rate for such services.

Along with the check from the Law Office of George Crowley in the amount of $115.00 (including $90.00 title insurance refund plus the $25.00 municipal lien certificate fee), we are also enclosing the final disbursement ledger, HUD and settlement invoice as provided by Crowley's office.

We trust that the above responds to your concerns.

Sincerely,

Ann Tran
Counsel
Ameriquest Mortgage Company

Encls.

Exhibit 1 (2 of 2)

WLZ58620-03-05

LAW OFFICE OF GEORGE T. CROWLEY
OPERATING ACCOUNT
304 CAMBRIDGE ROAD     SUITE 202
WOBURN, MA 01801

6367

CAMBRIDGE TRUST COMPANY
CAMBRIDGE, MA

53-59/113

5/17/2005

PAY TO THE
ORDER OF     Brian Frechette                                          $ **115.00

One Hundred Fifteen and 00/100**************************************************** DOLLARS

Brian Frechette

MEMO     74 Washington Street, Sherborn

⑈006367⑈  ⑆011300595⑆  ⑈910406011⑈

SECURITY FEATURES INCLUDED. DETAILS ON BACK.

# KORDE & ASSOCIATES, P.C.

Counsellors at Law
321 Billerica Road, Suite 210
Chelmsford, MA 01824-4100

SANJIT S. KORDE
AMY H. MASFERRER
JULIE A. RANIERI
ANOUK DANAN

JOHN H. SLINGERLAND, OF COUNSEL

Telephone (978) 256-1500
Telefax (978) 256-7615
Email: skorde@kordeassoc.com

May 23, 2005

Michael J. Powers, Esq.                              CERTIFIED MAIL NO. 7004 2890 0004 2137 3336
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090

RE:   Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc.,
      Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing
      Agreement dated as of November 1, 2003, Without Recourse vs. Brian L. Frechette
      Land Court Case No. 305627
      Property Address: 74 Washington Street, Sherborn, MA

Dear Attorney Powers:

    You are hereby notified of the intention of Deutsche Bank National Trust Company, as Trustee
of Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under
the Pooling and Servicing Agreement dated as of November 1, 2003, Without Recourse to foreclose by
sale under the power of sale contained in a certain mortgage given by Brian L. Frechette to Ameriquest
Mortgage Company. The sale has been rescheduled to June 7, 2005 at 1:00 PM on the premises.

Very truly yours,

Julie A. Ranieri

JAR/am

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts Superior Court Department County: Middlesex |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| BRIAN L. FRECHETTE | AMERIQUEST MORTGAGE COMPANY, et al |
| Attorney John T. Landry, III, Glynn, Landry, Harrington & Rice 10 Forbes Road, Braintree, MA 02184-2605 (781) 356-1399        BBO No. 544388 | ATTORNEY (if known) |

## Origin code and track designation

Place an x in one box only:

[x] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.        TYPE OF ACTION (specify)      TRACK      IS THIS A JURY CASE?

D13        Declaratory Judgment ( A )        ( ) Yes    ( X ) No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.   Documented medical expenses to date:
  1.   Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$. . . . . . . . . . . . .
  2.   Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$. . . . . . . . . . . . .
  3.   Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$. . . . . . . . . . . . .
  4.   Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$. . . . . . . . . . . . .
  5.   Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$. . . . . . . . . . . . .
                                                                                             Subtotal $ . . . . . . . . . . . . .
B.   Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$. . . . . . . . . . . . .
C.   Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$. . . . . . . . . . . . .
D.   Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$. . . . . . . . . . . . .
E.   Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$. . . . . . . . . . . . .
F.   Other documented items of damages (describe)
                                                                                                             $ . . . . . . . . . . . . .
G.   Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                                                             $ . . . . . . . . . . . . .
                                                                                             TOTAL $ . . . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

This is a Declaratory Judgment action seeking to determine the validity of the Plaintiff's rescission of a mortgage laon transaction.

                                                                                             TOTAL $. . . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

                        None

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____        DATE: 6-3-05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

☜JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Bruce L. Frechette

**DEFENDANTS**

Ameriquest Mortgage Co.,
Deutsche Bank National Trust Co., as Trustee

**(b)** County of Residence of First Listed Plaintiff    Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

John T. Landry, IV, Glynn, Landry, Harrington & Rice, LLP, 10 Forbes Rd., Braintree, MA 02184

Attorneys (If Known)

R. Bruce Allensworth/Phoebe S. Winder, Kirkpatrick & Lockhart Nicholson Graham, LLP
75 State Street, Boston, MA 02109

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

☐ 2 U.S. Government Defendant

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S. C. 1441(a)
Brief description of cause:
Removal of State case to Federal Court

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** Damages, injunctive relief, rescission

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE July 2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.  **Title of case (name of first party on each side only)**    Frechette v. Ameriquest Mortgage Company

2.  **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).**

    | | | |
    |---|---|---|
    | [ ] | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
    | [ ] | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121<br>740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases |
    | [x] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,<br>315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,<br>380, 385, 450, 891. |
    | [ ] | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,<br>690, 810, 861-865, 870, 871, 875, 900. |
    | [ ] | V. | 150, 152, 153. |

    05  11398 RWZ

3.  **Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**

4.  **Has a prior action between the same parties and based on the same claim ever been filed in this court?**

    YES [ ]    NO [x]

5.  **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)**

    YES [ ]    NO [x]

    **If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**

    YES [ ]    NO [ ]

6.  **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**

    YES [ ]    NO [x]

7.  **Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).**

    YES [xx]    NO [ ]

    A.   **If yes, in which division do all of the non-governmental parties reside?**

    Eastern Division [x]    Central Division [ ]    Western Division [ ]

    B.   **If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?**

    Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8.  **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)**

    YES [x]    NO [ ]

**(PLEASE TYPE OR PRINT)**
**ATTORNEY'S NAME**    R. B. Allensworth
**ADDRESS**    75 State Street, Boston, MA 02109
**TELEPHONE NO.**    617-261-3100

(CategoryForm.wpd - 5/2/05)