UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN L. FRECHETTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERIQUEST MORTGAGE COMPANY | ) |
| and DEUTSCHE BANK NATIONAL | ) |
| TRUST COMPANY, as TRUSTEE of | ) CIVIL ACTION NO. 05-11398-RWZ |
| AMERIQUEST MORTGAGE | ) |
| SECURITIES, INC. ASSET BACKED | ) **ORAL ARGUMENT REQUESTED** |
| PASS-THROUGH CERTIFICATES, | ) |
| SERIES 2003-11 UNDER THE POOLING | ) |
| AND SERVICING AGREEMENT DATED | ) |
| AS OF NOVEMBER 1, 2003, WITHOUT | ) |
| RECOURSE | ) |
| | ) |
| Defendants. | ) |
| | ) |

LOCAL RULE 56.1 STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, defendants Ameriquest Mortgage Company ("Ameriquest")

and Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc.,

Asset Backed Pass-Through Certificates, Series 2003-11 Under the Pooling and Servicing

Agreement Dated as of November 1, 2003, Without Recourse ("Deutsche Bank, as Trustee")

(collectively "defendants") respectfully submit this Statement of Undisputed Material Facts in

Support of their Motion for Summary Judgment.  The record support for each fact set forth below

is based on one or more of the following sources:  the Complaint ("Compl."); the Answer and

Counterclaim ("Answer"); the Declaration of George T. Crowley ("Crowley Decl.") filed

contemporaneously herewith; the Declaration of Lisa Cavin ("Cavin Decl.") filed

contemporaneously herewith; and the Deposition Transcript of Brian L. Frechette (attached to the Declaration of Ryan M. Tosi ("Tosi Decl.") filed contemporaneously herewith).

1.     On October 1, 2003, plaintiff entered into a thirty-year adjustable rate mortgage with Ameriquest with a principal amount owed by plaintiff of $543,750.00.  See Compl. at ¶ 11; Cavin Decl. at ¶ 4.

2.     Plaintiff's loan note has an initial interest rate of 11.500%.  See Cavin Decl. at ¶ 4; Compl. at ¶ 11; Deposition Transcript of Brian L. Frechette, dated April 27, 2006, at 25 ("Frechette Dep. Tr.") (attached as Exhibit 1 to Tosi Decl.).

3.     Plaintiff's loan note calls for monthly payments of $5,384.71 beginning on December 1, 2003.  See Cavin Decl. at ¶ 4; Compl. at ¶ 11; Frechette Dep. Tr. at 25.

4.     In connection with the loan closing, plaintiff received and signed a federal Truth in Lending Disclosure Statement, among other documents.  See Truth In Lending Disclosure Statement (attached as Exhibit B to Cavin Decl.); Compl. at ¶ 14; Frechette Dep. Tr. at 40.

5.     The Truth in Lending Disclosure Statement disclosed a finance charge in the amount of $1,412.417.24, and an amount financed in the amount of $526,077.32.  See Cavin Decl. at ¶ 7; Frechette Dep. Tr. at 41.

6.     Plaintiff agreed to the terms as disclosed in the Truth in Lending Disclosure Statement.  Frechette Dep. Tr. at 41.

7.     In connection with the closing, plaintiff also received and executed a HUD-1 Settlement Statement.  See HUD-1 Settlement Statement (attached as Exhibit C to Cavin Decl.); Compl. at ¶ 13; Frechette Dep. Tr. at 42-43.

8.     The HUD-1 Settlement Statement listed various fees and charges incurred by plaintiff in connection with his mortgage loan with Ameriquest, including the pre-paid fees encompassed within the finance charge calculation.  See Cavin Decl. at ¶ 9; Frechette Dep. Tr. at 42-43.

9.     Plaintiff agreed to pay the charges as listed in the HUD-1 Settlement Statement. Frechette Dep. Tr. at 47.

10.     Plaintiff does not recall having any specific complaints about any of the charges that were listed on the HUD-1 Settlement Statement at the time of closing.  Frechette Dep. Tr. at 45.

11.     An attorney from Attorney George T. Crowley's office was present at the closing "and explained the documents as [plaintiff] signed them."  Frechette Dep. Tr. at 27; see Crowley Decl. at ¶ 8.

12.     Attorney Crowley's office provided the following services in connection with Mr. Frechette's loan transaction, including without limitation: (1) acting as the escrow agent; (2) acting as the closing agent; (3) arranging for a title examination of property; (4) resolving outstanding issues with the title to Mr. Frechette's property; (5) ensuring that any outstanding liens on Mr. Frechette's property were addressed and paid, including Mr. Frechette's outstanding property taxes; (6) assembling and reviewing documents received from the bank and third parties; (7) ensuring that the closing package was complete; (8) disbursing the proceeds of the Ameriquest refinance transaction to Mr. Frechette's prior lender, Mr. Frechette's various creditors and to Mr. Frechette; (9) countersigning the Fidelity National Title Insurance Policy Preliminary Title Insurance Binder; and (10) countersigning the Fidelity National Title Insurance Company's Title Insurance Policy.  See Crowley Decl. at ¶ 9.

13.     In connection with the services described in paragraph 12, Attorney Crowley's offices charged a settlement or closing fee in the amount of $300 (HUD-1 Settlement Statement line 1101), (2) a settlement/disbursement fee in the amount of $750 (HUD-1 Settlement Statement line 1111), and (3) an escrow fee in the amount of $295 (HUD-1 Settlement Statement line 1112). See Crowley Decl. at ¶ 8; see also HUD-1 Settlement Statement (attached as Exhibit C to Cavin Decl.).

14.     Following the closing, Ameriquest assigned plaintiff's note and mortgage to Deutsche Bank National Trust Company, as Trustee.  See Cavin Decl. at ¶ 5.

15.     Plaintiff has not made a payment on the loan since September 2004.  See Cavin Decl. at ¶ 18.

16.     Plaintiff has not paid his residential real estate taxes for three years.  See Frechette Dep. Tr. at 106-107.

17.     On January 28, 2005, Deutsche Bank National Trust Company, as Trustee filed a Complaint for authority to foreclose plaintiff's mortgage with the Land Court, Commonwealth of Massachusetts, Case No. 305627.  See Cavin Decl. at ¶ 20.

18.     By stipulation of the parties to this action, the foreclosure has been stayed pending further action by the Court.  See Court Order of October 20, 2005, granting Stipulation and Consent Order at Docket No. 19.

19.     On April 21, 2005, plaintiff notified Deutsche Bank National Trust Company, as Trustee that he was purportedly rescinding his mortgage transaction.  See April 21, 2005 letter (attached as Exhibit D to Cavin Decl.); Compl. at ¶ 22; Frechette Dep. Tr. at 74-75.

4

20.     On April 26, 2006, Ameriquest wrote to plaintiff and acknowledged receipt of plaintiff's April 21, 2005 letter.  See April 26, 2006 letter (attached as Exhibit E to Cavin Decl.); Frechette Dep. Tr. at 91.

21.     On May 18, 2005, Ameriquest wrote to plaintiff and denied his purported claim for rescission.  See May 18, 2005 letter (attached as Exhibit F to Cavin Decl.); see also Frechette Dep. Tr. at 92-93.

22.     Plaintiff instituted this action on June 3, 2005, seeking rescission of his mortgage loan for alleged TILA violations by the originator of the loan, Ameriquest and, in turn, Deutsche Bank, as Trustee as the current holder of the loan.  See Compl. at ¶ 1.

23.     Plaintiff alleges that defendants violated the Massachusetts Consumer Credit Cost Disclosure Act, G.L. c. 140D (Counts I and II) and Mass. Gen. L. ch. 93A (Count III) by failing to disclose certain alleged pre-paid finance charges in connection with plaintiff's mortgage loan.  See Compl.

24.     Neither Ameriquest nor Deutsche Bank, as Trustee received a Chapter 93A demand letter prior to the filing of the instant lawsuit.  See Cavin Decl. at ¶ 15.

25.     In his Complaint, plaintiff does not allege that a Chapter 93A demand letter was sent.  See, generally, Compl.

26.     Defendants have also filed a counterclaim against plaintiff seeking a declaration that the plaintiff did not, and is not entitled to, rescind his mortgage loan with Ameriquest and that alternatively, any such rescission should require a mutual exchange of monies and property by the parties through escrow.  See Answer to Compl.

27.     Plaintiff never propounded any discovery on Ameriquest.  See Cavin Decl. at ¶ 16.

28.    Plaintiff never propounded any discovery on Deutsche Bank, as Trustee.  See Cavin Decl. at ¶ 16.

29.    Plaintiff never propounded any discovery on any third party.  See Cavin Decl. at ¶ 16.

30.    Plaintiff did not take any depositions.  See Cavin Decl. at ¶ 16.

31.    Plaintiff never designated an expert witness.  See Cavin Decl. at ¶ 16.

32.    Plaintiff admits that he received a Truth in Lending Disclosure Statement and a HUD-1 Settlement Statement fully disclosing various fees associated with his loan.  See Compl. at ¶¶ 13, 14; Frechette Dep. Tr. at 41.

33.    Plaintiff argues that four specific charges were improperly excluded from finance charge disclosed on the Truth in Lending Disclosure Statement: (1) $1,345 in fees paid to closing counsel, (2) $25 for city/county tax/stamps, (3) $90 for alleged title insurance discrepancies, and (4) $547 in overcharges for Ameriquest's alleged failure to obtain a renewal discount on plaintiff's title insurance premium.  See Compl. at ¶ 16.

34.    Plaintiff contends that he was charged excessive fees, including "settlement or closing" fees, "settlement/disbursement" fees, and "escrow" fees in connection with the transaction.  See Compl. at ¶ 16(d).

35.    The disclosed pre-paid finance charge of $17,672.68 is calculated as the principal amount of the loan ($543,750.00), less the amount financed ($526,077.32) as stated on the borrower's Truth in Lending Disclosure Statement.  See Cavin Decl. at ¶ 11.

36.    The $1,345 in settlement-related fees paid to Attorney Crowley were disclosed in their entirety and included in the calculation of the finance charges even though they are excludable under TILA and the CCCDA.  See Cavin Decl. at ¶¶ 13-14.

37.    Ameriquest disclosed $17,672.68 in total pre-paid finance charges, even though all that Ameriquest was required to disclose was $16,327.68 in total pre-paid finance charges.  See Cavin Decl. at ¶ 14.

38.    Plaintiff in his deposition admitted that he did not "think the issue of legal expenses came up" during the closing.  Frechette Dep. Tr. at 46.

39.    Plaintiff contends that he was eligible for a special discounted renewal rate when he was charged for title insurance.  See Compl. at ¶ 16(b).

40.    Fidelity National Title Insurance Company, the title insurer in question, however, provides that a purchaser of title insurance "may be" entitled to a renewal rate only if evidence of the earlier policy is produced.  See Frechette Dep. Tr. at 79-80; Fidelity National Title Insurance Company Premium Rate Increase (attached as Exhibit 2 to Tosi Decl.).

41.    Plaintiff did not produce an earlier title policy to his title insurance company at the time of closing to substantiate his allegation that he is eligible for an insurance premium discount. See Frechette Dep. Tr. at 96.

42.     Plaintiff did not produce an earlier title policy to Ameriquest at the time of closing to substantiate his allegation that he is eligible for an insurance premium discount.  See Frechette Dep. Tr. at 77, 81-82, 93-94, 96.

43.    Plaintiff did not produce an earlier title policy to Attorney Crowley's office at the time of closing to substantiate his allegation that he is eligible for an insurance premium discount. See Frechette Dep. Tr. at 77, 81-82, 93-94, 96.

44.    Plaintiff did not produce an earlier title policy to defendants at any time during the discovery period in this action to substantiate his allegation that he is eligible for an insurance premium discount.  See Cavin Decl. at ¶ 17.

45.    By order of the Court dated June 1, 2006 the plaintiff was obliged to turn over any prior policy with Fidelity National Title Insurance Company to Ameriquest by June 8, 2006.  <u>See</u> Court Order of June 1, 2006.  Plaintiff failed to produce such a policy.  <u>See</u> Cavin Decl. at ¶ 17.

46.    Plaintiff did not contact Fidelity National Title directly to request a discount.  <u>See</u> Frechette Dep. Tr. at 81.

47.    Plaintiff stated as his deposition that he did not know whether his attorneys had contacted Fidelity National Title to request a discount.  <u>See</u> Frechette Dep. Tr. at 81-82.

48.    During the closing, plaintiff did not speak with the attorney from Attorney Crowley's office regarding any title insurance issues, did not state he was eligible for the special renewal rate and did not object to being charged the full rate for this title insurance.  <u>See</u> Frechette Dep. Tr. at 77.

Respectfully submitted,

AMERIQUEST MORTGAGE COMPANY and
DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE OF
AMERIQUEST MORTGAGE SECURITIES,
INC. ASSET BACKED PASS-THROUGH
CERTIFICATES, SERIES 2003-11 UNDER
THE POOLING AND SERVICING
AGREEMENT DATED AS OF NOVEMBER
1, 2003, WITHOUT RECOURSE

By their attorneys,

/s/ *Phoebe S. Winder*

_____
R. Bruce Allensworth (BBO #015820)
(ballensworth@klng.com)
Phoebe S. Winder (BBO #567103)
(pwinder@klng.com)
Ryan M. Tosi (BBO #661080)
(rtosi@klng.com)
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100

Dated: August 25, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed on August 25, 2006 through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 25, 2006.

John T. Landry, III
Glynn, Landry, Harrington & Rice, LLP
10 Forbes Road
Braintree, MA 02184-2605

Michael J. Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090


/s/ *Phoebe S. Winder*
_____
Phoebe S. Winder