## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN L. FRECHETTE,           ) | |
|                 ) | |
|     Plaintiff,       ) | |
|                 ) | |
| v.                  ) | |
|                 ) | |
| AMERIQUEST MORTGAGE COMPANY ) | |
| and DEUTSCHE BANK NATIONAL   ) | |
| TRUST COMPANY, as TRUSTEE of   ) | CIVIL ACTION NO. 05-11398-RWZ |
| AMERIQUEST MORTGAGE         ) | |
| SECURITIES, INC. ASSET BACKED   ) | **ORAL ARGUMENT REQUESTED** |
| PASS-THROUGH CERTIFICATES,    ) | |
| SERIES 2003-11 UNDER THE POOLING ) | |
| AND SERVICING AGREEMENT     ) | |
| DATED AS OF NOVEMBER 1, 2003,   ) | |
| WITHOUT RECOURSE         ) | |
|                 ) | |
|     Defendants.    ) | |
|                 ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, defendants Ameriquest Mortgage

Company ("Ameriquest") and Deutsche Bank National Trust Company, as Trustee of

Ameriquest Mortgage Securities, Inc., Asset Backed Pass-Through Certificates, Series 2003-11

Under the Pooling and Servicing Agreement Dated as of November 1, 2003, Without Recourse

("Deutsche Bank, as Trustee") (collectively "defendants") respectfully submit this Memorandum

of Law in Support of their Motion for Summary Judgment on all counts of plaintiff's Complaint.

### INTRODUCTION AND SUMMARY OF ARGUMENT

This case presents a simple question of law regarding whether properly disclosed fees

charged in connection with a mortgage loan constitute a violation of the Massachusetts

Consumer Credit Cost Disclosure Act ("CCCDA"), Mass. Gen. L. ch. 140D, § 4 and its

implementing regulations at 209 C.M.R. 32.01, *et seq*.  Aside from vague and entirely unsupported allegations that plaintiff "believes" that the fees should have been classified as finance charges, plaintiff has presented no record evidence that would even remotely suggest that the fees charged were in violation of the CCCDA.

Here, Ameriquest more than fulfilled its obligations under the CCCDA.  As a matter of established case law, attorney's fees are not required to be included in a mortgage loan's finance charge calculation, but in this case, Ameriquest included $1,345 in attorney's fees in the calculation of plaintiff's finance charge and disclosed the same to plaintiff on the Truth in Lending Disclosure Statement and the HUD-1 Settlement Statement.  In doing so, Ameriquest significantly over-disclosed the amount of plaintiff's pre-paid finance charges.  While Ameriquest disclosed $17,672.68 in total pre-paid finance charges, all that Ameriquest was required to disclose was $16,327.68 in total pre-paid finance charges.  So even assuming plaintiff's unsubstantiated claim that Ameriquest failed to disclose $662.00 in pre-paid finance charges was true, Ameriquest over-estimated the amount of the finance charges by at least $1,345.  Thus, as a matter of law, Ameriquest's disclosure of $1,345 offsets the alleged non-disclosure of each of the fees challenged by plaintiff's Complaint.

Not only did Ameriquest comply with the terms of the CCCDA in over-disclosing the pre-paid finance charges in question, plaintiff has not – and cannot – proffer any record evidence that the challenged fees violate the finance charge disclosure obligations of the CCCDA.  In fact, plaintiff did not propound any written discovery in this case regarding any fees; he did not take any depositions, either of Ameriquest, the closing counsel, or third parties; and he did not designate any expert witnesses to analyze the fees.  Plaintiff, therefore, is merely left with bare allegations that certain fees were "excessive."  Under Fed. R. Civ. P. 56, such unsubstantiated

claims cannot provide a basis for plaintiff to rescind his loan and do not demonstrate a genuine, disputed issue of material fact so as to withstand summary judgment.

Under the circumstances, defendants' analysis set forth below demonstrates as a matter of law, through verifiable and objective calculations, that all of the pre-paid finance charges in question were properly disclosed and fall within the applicable tolerance levels as prescribed by the CCCDA.  And because defendants have not violated the CCCDA, plaintiff's Chapter 93A claim also fails as a matter of law.  Accordingly, summary judgment should be granted in favor of defendants on all three counts of plaintiff's Complaint.

## **PROCEDURAL AND FACTUAL BACKGROUND**

### A.    **Factual Background**

Plaintiff entered into a thirty-year adjustable rate mortgage with Ameriquest with a principal amount owed by plaintiff of $543,750.00.  See Declaration of Lisa Cavin, dated August 23, 2006 ("Cavin Decl.") at ¶ 4 filed contemporaneously herewith; Compl. at ¶ 11.  Plaintiff's loan note has an initial interest rate of 11.500%.  See Cavin Decl. at ¶ 4; Compl. at ¶ 11. Plaintiff's loan note calls for monthly payments of $5,384.71 beginning on December 1, 2003. See Cavin Decl. at ¶ 4; Compl. at ¶ 11; Deposition Transcript of Brian L. Frechette, dated April 27, 2006, at 25 ("Frechette Dep. Tr.") attached as Exhibit 1 to the Declaration of Ryan M. Tosi, dated August 25, 2006, filed contemporaneously herewith.

In connection with the loan closing, plaintiff received and signed a federal Truth in Lending Disclosure Statement, among other documents.  See Truth In Lending Disclosure Statement (attached as Exhibit B to Cavin Decl.); Compl. at ¶ 14; Frechette Dep. Tr. at 40.  The Truth in Lending Disclosure Statement disclosed a finance charge in the amount of $1,412.417.24, and an amount financed in the amount of $526,077.32.  See Cavin Decl. at ¶ 7; Frechette Dep. Tr. at 41.  Plaintiff agreed to the terms as disclosed in the Truth in Lending

Disclosure Statement.  See Frechette Dep. Tr. at 41.

Plaintiff also received and signed a HUD-1 Settlement Statement at the closing.  See HUD-1 Settlement Statement (attached as Exhibit C to Cavin Decl.); Compl. at ¶ 13; Frechette Dep. Tr. at 42-43.  The HUD-1 Settlement Statement listed the various fees and charges incurred by plaintiff in connection with his mortgage loan, including the pre-paid fees encompassed within the finance charge calculation.  See Cavin Decl. at ¶ 9; Frechette Dep. Tr. at 42-43.

Following the closing, Ameriquest assigned plaintiff's note and mortgage to Deutsche Bank National Trust Company, as Trustee.  See Cavin Decl. at ¶ 5.  Because plaintiff had failed to make a mortgage payment since September 2004, Deutsche Bank National Trust Company, as Trustee filed a Complaint on January 28, 2005 for authority to foreclose plaintiff's mortgage with the Land Court, Commonwealth of Massachusetts, Case No. 305627.  See Cavin Decl. at ¶¶ 18, 20.[1]

On April 21, 2005, plaintiff notified Deutsche Bank National Trust Company, as Trustee that he was purportedly rescinding his mortgage transaction.  See Plaintiff's April 21, 2005 letter (attached as Exhibit D to Cavin Decl.); Compl. at para 22; Frechette Dep. Tr. at 74-75.  On April 26, 2006, counsel for Ameriquest wrote to plaintiff and acknowledged receipt of plaintiff's April 21, 2005 letter.  See Ameriquest's April 26, 2006 letter (attached as Exhibit E to Cavin Decl.); Frechette Dep. Tr. at 91.  On May 18, 2005, counsel for Ameriquest wrote to plaintiff and denied his claim for rescission.  See Ameriquest's May 18, 2005 letter (attached as Exhibit F to Cavin Decl.); see also Frechette Dep. Tr. at 92-93.

Plaintiff thereafter instituted this action on June 3, 2005, seeking rescission of his

---

[1]    By stipulation of the parties to this action, the foreclosure has been stayed pending further action by the Court.  See Court Order of October 20, 2005, granting Stipulation and Consent Order at Docket No. 19.

mortgage for alleged CCCDA violations by the originator of the loan, Ameriquest and, in turn, Deutsche Bank, as Trustee, as the current holder of the loan.  See Compl. at para 1.  Plaintiff admits that he received a Truth in Lending Disclosure Statement and a HUD-1 Settlement Statement fully disclosing the various fees associated with his loan.  See Compl. at ¶¶ 13, 14.

Despite this admission, and despite the detailed disclosure contained in the documents plaintiff received from Ameriquest, plaintiff claims that Ameriquest misstated the pre-paid finance charge in violation of the CCCDA and that, as a result, he is entitled to rescind the loan. See Compl. at ¶ 16.  Specifically, plaintiff contends that Ameriquest failed to disclose $622.00 in pre-paid finance charges, including an alleged overcharge of $90.00 for lender's title insurance, an alleged overcharge of $25.00 for City/County Tax Stamps that Ameriquest allegedly never paid, and an alleged overcharge of $547.00 resulting from Ameriquest's purported failure to provide plaintiff with a title insurance premium discount.  See id.  Plaintiff also contends that he was charged excessive fees, including "settlement or closing" fees, "settlement/disbursement" fees, and "escrow" fees in connection with the transaction.  See id.  These overcharges allegedly constitute undisclosed finance charges, in violation of M.G.L. c. 140D.  See id.

### B.       Procedural History of this Action

On or about June 3, 2005, plaintiff brought this action alleging that defendants violated the CCCDA, G.L. c. 140D (Counts I and II) and Mass. Gen. L. ch. 93A (Count III) by failing to properly disclose certain alleged finance charges in connection with plaintiff's mortgage loan. On July 1, 2005, defendants timely removed the action from the Middlesex Superior Court to the United States District Court for the District of Massachusetts and subsequently answered the Complaint.  Defendants have also filed a counterclaim against plaintiff seeking a declaration that the plaintiff did not, and is not entitled to, rescind his mortgage loan with Ameriquest and that alternatively, any such rescission should require a mutual exchange of monies and property by

the parties through escrow.

Neither of the defendants received a Chapter 93A demand letter from the plaintiff.  See Cavin Decl. at ¶ 15.  Plaintiff never alleged that he sent a demand letter in his Complaint, see generally, Compl, nor did plaintiff propound any discovery on Ameriquest, Deutsche Bank, as Trustee or on any third party.  See Cavin Decl. at ¶ 16.

## STANDARD OF REVIEW

Where the pleadings, depositions, answers to interrogatories, admissions and any affidavits on file show that there is no genuine issue as to a material fact, then the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Cataret, 477 U.S. 317, 323 (1986); Nat'l. Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).  Plaintiff bears the burden of proof at trial as to defendants' liability.  Defendants are entitled to summary judgment either (1) by producing evidence negating a material fact and thus demonstrating that plaintiff will be unable to prove his case at trial or (2) by showing the absence of evidence in the record to support judgment for plaintiff.  See id.

To forestall summary judgment, plaintiff must show that there is some evidence on which a reasonable jury could return a verdict in his favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The mere existence of some alleged factual dispute is insufficient and the non-moving party cannot rest on its pleadings or merely show that there is "some metaphysical doubt as to the material facts"; rather, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  Celotex Corp., 477 U.S. at 324.  To avoid summary judgment, plaintiff must be able to point to specific, competent evidence to support his claim.  See August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992) ("[m]ere allegations, or conjecture unsupported in the record are insufficient to raise a genuine issue of

material fact").  Once defendants satisfy their initial burden under Rule 56(c), the burden of

production shifts to plaintiff who must "go beyond the pleadings and by [his] own affidavits, or

by the 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" <u>Celotex Corp.</u>, 477 U.S. at 324.

Further, "the plain language of Rule 56(c) mandates the entry of summary

judgment...against a party **who fails to make a showing sufficient to establish the existence of**

**an element essential to that party's case, and on which that party will bear the burden of**

**proof at trial**." <u>Celotex Corp.</u>, 477 U.S. at 322 (emphasis added).  In such a situation, there can

be "no genuine issue as to any material fact, since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial."

<u>Id.</u> at 322-23 (emphasis added) (quoting <u>Anderson</u>, 477 U.S. at 250).

## <u>ARGUMENT</u>

Ameriquest over-disclosed the pre-paid finance charges set forth on the Truth in Lending

Statement signed by plaintiff in connection with his mortgage loan.  These disclosures were

proper and satisfy all the requirements of the CCCDA and Chapter 93A for a loan in foreclosure.

Plaintiff therefore has no basis on which to demand rescission and to avoid his mortgage

obligations, and defendants are entitled to judgment as a matter of law.

## I.    PLAINTIFF IS NOT ENTITLED TO RESCIND HIS MORTGAGE LOAN CONTRACT BECAUSE DEFENDANTS HAVE NOT VIOLATED THE CCCDA

A plaintiff may bring a cause of action under the CCCDA to rescind a loan contract

where a lender has failed to fully disclose finance charges to a borrower.  <u>See</u> Mass. Gen. L. ch.

140D, §§ 4, 10.[2]  To stem the tide of litigants bringing *de minimus* claims, the CCCDA provides

---

[2]      CCCDA provisions parallel those of the federal Truth in Lending Act ("TILA") and
accordingly "should be construed in accordance with federal law."  <u>Mayo v. Key Financial
Services, Inc.</u>, 1994 Mass. Super. LEXIS 549, at *8, 2 Mass. L. Rep. 269 (Mass. Super. Ct. June

that lenders are not liable where their disclosed finance charges are within a permissible range of tolerance for accuracy.  See Quinn v. Ameriquest Mortgage Co., 2004 WL 316408, *3 (N.D. Ill. Jan. 26, 2004); Smith v. Highland Bank, 108 F.3d 1325, 1327 n. 4 (11th Cir. 1997).  Where, as here, foreclosure has been initiated against the property secured by a loan, a finance charge shall be considered accurate where (1) the disclosed finance charge is within a $35 tolerance for error, or (2) where the disclosed finance charge "is greater than the amount required to be disclosed." 209 C.M.R. 32.23(8)(b)(1) & (2) (emphasis added); Mass. Gen. L. ch. 140D, § 10(i)(2) (emphasis added).  Here, because the finance charge was greater than the amount required to be disclosed, the finance charge is deemed accurate under CCCDA.  See Mass. Gen. L. ch. 140D, § 10(i)(2).

The issue of whether plaintiff, as a matter of law, has stated a claim for relief under the CCCDA for failure to disclose finance charges boils down to a simple mathematical calculation. To have violated the CCCDA, the Court must determine whether Ameriquest failed to disclose $35 or more in fees that were required to be disclosed as finance charges.  Put another way, in this case, the total actual pre-paid finance charge in connection with plaintiff's loan is accurate for purposes of the CCCDA if it is not more than $17,672.68 plus $35.

Here, the disclosed pre-paid finance charge of $17,672.68,[3] which is calculated as the principal amount of the loan ($543,750.00), less the amount financed ($526,077.32) as stated on the borrower's Truth in Lending Disclosure Statement.  See Cavin Decl. at ¶ 11; Oscar v. Bank One, 2006 WL 401853, at *4 (E.D. Pa. Feb. 17, 2006) (total loan amount less the amount

---

22, 1994), aff'd in relevant part, 424 Mass. 862 (1997); In re Whitley, 177 B.R. 142, 148 (Bankr. D. Mass. 1995) (noting "the only material difference between state and federal law is the limitation period for rescission and damages claims").

[3]     A list breaking down the fees, interest and expenses that comprise the disclosed pre-paid finance charge of $17,672.68 is included in the Declaration of Lisa Cavin, at ¶ 10.

financed equals pre-paid finance charge); 209 C.M.R. § 32.18(2)(a)-(c).

Plaintiff argues that four specific charges were improperly excluded from the finance charge disclosed on the Truth in Lending Disclosure Statement: (1) $1,345 in fees paid to closing counsel, (2) $25 for city/county tax/stamps, (3) $90 for alleged title insurance discrepancies, and (4) $547 in overcharges for Ameriquest's alleged failure to obtain a renewal discount on plaintiff's title insurance premium.  For the reasons set forth below, plaintiff cannot prove that Ameriquest understated the finance charge, and as a result, defendants are entitled to summary judgment.

### A.    The Fees Paid to Closing Counsel Were Included In The Pre-Paid Finance Charge Calculation And Were Properly Disclosed To Plaintiff

The first fees that plaintiff argues were improperly excluded from the Truth in Lending Disclosure Statement are the $1,345 in settlement-related fees paid to the Law Offices of Attorney George T. Crowley ("Attorney Crowley" or "Attorney Crowley's office").[4]  Plaintiff, however, ignores that these fees were disclosed in their entirety and included in the calculation of the finance charges even though they are excludable under the CCCDA.  See Cavin Decl. at ¶ 14.

Settlement fees paid to attorneys, including fees for attending the closing and preparing and reviewing loan documents, are not considered to be finance charges, and are not generally included in the calculation of finance charges.  See Marquez v. New Century Mortgage Corp., 2004 WL 742205, at *3 (N.D. Ill. April 5, 2004) ("settlement fee," which was included in finance charge, was excludable under TILA); In re Whitley, 177 B.R. 142, 148-49 (Bankr. D.

---

[4]    This $1,345 in fees to the Law Offices of Attorney Crowley are comprised of (1) a settlement or closing fee in the amount of $300 (HUD-1 Settlement Statement line 1101), (2) a settlement/disbursement fee in the amount of $750 (HUD-1 Settlement Statement line 1111), and (3) an escrow fee in the amount of $295 (HUD-1 Settlement Statement line 1112).  A copy of the plaintiff's signed HUD-1 Settlement Statement is attached as Exhibit C to the Cavin Decl.

Mass. 1995) (so long as they are reasonable, "[a]ttorneys' fees for preparing deeds, mortgages, settlement sheets and similar documents are excluded from the finance charge"); Hickey v. Great Western Mortgage Corp., 1995 WL 317095, at *6 (N.D. Ill. May 23, 1995) ("a charge by a closing agent is not a 'finance charge' as that term is defined in TILA"); Therrien v. Resource Financial Group, Inc., 704 F. Supp. 322, 327 (D.N.H. 1989) (notwithstanding other nondisclosure improprieties, the full $600 in legal fees paid for "legal services" rendered by counsel deemed to be excludable from finance charges).

It is well established, in cases where TILA tolerances are at issue, that any finance charge disclosed to plaintiff must be reduced by the charges that should not have been included in the Truth in Lending Disclosure Statement as finance charges. See Marquez, 2004 WL 742205, at *3. Marquez presents a case directly on point. There, the United States District Court for the Northern District of Illinois ruled that a $285 "settlement fee" should not have been included in the lender's calculation of the finance charge and for purposes of determining whether there was a TILA violation, the finance charge had to be reduced by the full amount of the "settlement fee." Id. at *3. The court ruled that, "[r]educing the finance charge by this additional amount [of $285] makes [the lender's] alleged understatement of the finance charges simply *de minimus*." Id.; see also Scott v. Indymac Bank, FSB, 2004 WL 422654, at *3 (N.D. Ill. Feb. 3, 2004) (although a "Settlement or Closing" fee of $310.00 paid to closing agent was included as a finance charge, this fee was properly excludable under 12 C.F.R. 226.4(c)(7); reducing the actual finance charge by $310 left an understatement of the finance charge that was well within tolerance range, and accordingly, complaint failed to state TILA claim).

Here, Ameriquest included $1,345 in attorney-related fees in the calculation of the finance charge when CCCDA did not so require. See Cavin Decl. at ¶ 14. The $1,345 in

attorney-related charges, which represent the fees for preparing and/or reviewing loan-related documents, attending the closing, and holding monies in escrow, Declaration of George T. Crowley, dated August 24, 2006 ("Crowley Decl.") at ¶ 8, were disclosed in their entirety as pre-paid finance charges. See also Cavin Decl. at ¶ 14. So, while Ameriquest disclosed $17,672.68 in total pre-paid finance charges, in fact, all that Ameriquest was required to disclose was $16,327.68 in total pre-paid finance charges. See Cavin Decl. at ¶ 14. Put another way, Ameriquest disclosed significantly more in finance charges than it was required to do, and pursuant to Marquez and Scott, the amount that Ameriquest "over-disclosed" (in this case $1,345) must be deducted before any assessment of TILA tolerances can be performed. See also Strang v. Wells Fargo Bank, N.A., 2005 WL 1655886, at *4 (E.D. Pa. July 13, 2005) ("because the estimated finance charge was greater than the amount required to be disclosed, no TILA violation….").

Plaintiff has not come forward with any evidence of the purported "excessiveness" of any of the fees charged by Attorney Crowley's office. Plaintiff did not conduct any form of discovery on this issue, nor did he designate an expert on this issue. See Cavin Decl. at ¶ 16. Further, plaintiff in his deposition admitted that he did not "think the issue of legal expenses came up" during the closing, Frechette Dep. Tr. at 46, and Attorney Crowley has confirmed that the issue did not come up during the closing. See Crowley Decl. at ¶ 11. Instead, plaintiff makes nothing more than bare, conclusory and unsubstantiated statements that such fees are "excessive." See Compl. at ¶ 16(d). Such allegations, however, are not sufficient to withstand a motion for summary judgment. August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992) ("Mere allegations, or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact"); Guise v. BWM Mortgage, LLC, 377 F.3d 795, 799-800 (7th Cir.

2004) (dismissing complaint notwithstanding allegations that services were not bona fide).

Moreover, tellingly, in his complaint, plaintiff does not allege that he did not receive closing services, nor has the plaintiff alleged any facts to give rise to the inference that Attorney Crowley's offices failed to perform legal services. In fact, plaintiff testified at his deposition that an attorney from Attorney Crowley's office was present at the closing "and explained the documents as I signed them." Frechette Dep. Tr. at 27; see also Crowley Decl. at ¶ 8. Attorney Crowley's offices provided numerous services in connection with Mr. Frechette's loan transaction, including without limitation: (i) acting as the escrow agent; (ii) acting as the closing agent; (iii) arranging for a title examination of property; (iv) resolving outstanding issues with the title to Mr. Frechette's property; (v) ensuring that any outstanding liens on Mr. Frechette's property were addressed and paid, including Mr. Frechette's outstanding property taxes; (vi) assembling and reviewing documents received from the bank and third parties; (vii) ensuring that the closing package was complete; (viii) disbursing the proceeds of the Ameriquest refinance transaction to Mr. Frechette's prior lender, Mr. Frechette's various creditors and to Mr. Frechette; (ix) countersigning the Fidelity National Title Insurance Policy Preliminary Title Insurance Binder; and (x) countersigning the Fidelity National Title Insurance Company's Title Insurance Policy. See Crowley Decl. at ¶ 9. Because there is absolutely no evidence in the record regarding the purported unreasonableness of Attorney Crowley's fees, defendants are entitled to summary judgment. See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323; see Guise v. BWM Mortgage, LLC, 377 F.3d 795, 799-800 (7th Cir. 2004) (dismissing complaint notwithstanding allegations that services were not bona fide).

Moreover, even if plaintiff could overcome that fact that he has no evidence to proffer concerning the reasonableness of Attorney Crowley's attorneys fees, all that Ameriquest would

be required to show is that $80 in settlement and attorney-related services[5] of the $1,345 in fees paid to Attorney Crowley's office were not excessive. Ameriquest, as a matter of law, could make this showing because at least 6% ($80 divided by $1,345) of Attorney Crowley's fees was reasonable and warranted for the legal services required and rendered in connection with plaintiff's residential mortgage loan transaction. That is all it is needed as a matter of law to defeat plaintiff's CCCDA claim.

In addition, even if plaintiff were to now challenge the fees paid to Attorney Crowley's office as being for services which in part constitute finance charges, the Federal Reserve Bank has expressly rejected this argument. The Bank's Official Staff Interpretation makes it clear that:

> "a lump sum charged for conducting or attending a closing (for example, by a lawyer or a title company) is excluded from the finance charge if the charge is primarily for services related to items listed in § 226.4(c)(7) (for example, reviewing or completing documents), even if other incidental services such as explaining various documents or disbursing funds for the parties are performed. **The entire charge is excludable even if a fee for the incidental services would be a finance charge if it were imposed separately**."

12 C.F.R. Pt. 226, Subpart A, at § 226.4(c)(7)-2 (emphasis added). In other words, plaintiff cannot cherry pick out certain closing-related services and characterize them as a finance charge. The Federal Reserve Bank has determined that they must be considered excludable from the finance charge on a lump-sum basis. See id.

In the end, Ameriquest over-estimated the amount of the finance charge by $1,345. So even if plaintiff were to prevail with respect to the fees and discounts complained of below, this still would not be enough to overcome the fact that the estimated finance charge was

---

[5]    This calculation of $80 is based on the following: (1) It assumes as true plaintiff's allegations that the alleged $90 title insurance overcharge and the $25 tax stamp fee were not properly disclosed to plaintiff as finance charges ($90+$25 less $35 tolerance = $80); and (2) it rejects plaintiff's claimed entitlement to an alleged title insurance renewal discount of $547 because plaintiff has produced absolutely no evidence showing that he was eligible for such a discount. See below for further discussion with regard to the title insurance renewal discount.

significantly greater than the amount required to be disclosed.  Accordingly, no violation of the CCCDA exists, requiring the Court to enter summary judgment for defendants.

**B.    Ameriquest's Over-Disclosure Of Attorney-Related Fees Offsets Any Alleged Non-Disclosure Of The Stamp And Title Insurance Fees**

As explained above, even assuming as true the plaintiff's allegations concerning the $25 in stamp taxes and the $90 in alleged excess title insurance charges – which they are not – plaintiff still cannot prevail under the CCCDA as a matter of law.  Ameriquest's over-disclosure of $1,345 in attorney-related fees offsets any alleged non-disclosure with respect to the stamp taxes and alleged excess title insurance fees.

By way of illustration, where the $25 in stamp taxes is added to the $90 in alleged title insurance overcharges, and that sum is then deducted by the CCCDA $35 tolerance for loans in foreclosure, one is left with $80 in alleged undisclosed finance charges.  As a result, even where the Court to conclude that such charges constituted undisclosed finance charges, defendants remain well within the applicable CCCDA limits due to the over-disclosure of the $1,345 in attorney's fees.  Such a result is fatal to plaintiff's claims and summary judgment must enter in favor of defendants.

**C.    Plaintiff Is Not Entitled To A Discount Rate For Title Insurance**

Lastly, plaintiff contends that he was eligible for a special renewal rate on his title insurance.  Fidelity National Title Insurance Company, ("Fidelity National") the title insurer in question, however, provides that a purchaser of title insurance "may be" entitled to a renewal rate only if evidence of the earlier policy is produced.  See Frechette Dep. Tr. at 79-80; see also, Fidelity National Premium Rate Increase (attached as Exhibit 2 to Tosi Decl.).

At the time of closing, however, plaintiff did not produce an earlier title policy to anyone – not to his title insurance company, to Ameriquest, or to Attorney Crowley's office – in an

effort to substantiate his allegation that he is eligible for an insurance premium discount.  See Frechette Dep. Tr. at 77, 81-82, 93-94, 96.  In fact, during the closing, plaintiff did not speak with the closing attorney from Attorney Crowley's office regarding any title insurance issues, did not state he was eligible for the special renewal rate and did not object to being charged the full rate for this title insurance.  See Frechette Dep. Tr. at 77; Crowley Decl. at ¶ 10.  Moreover, 18 months after the closing, when for the first time plaintiff raised questions about his alleged eligibility for a title insurance discount in his rescission letter to defendants, plaintiff still had not contacted Fidelity National Title directly to request a discount, and stated as his deposition in April 2006 that he did not know whether his attorneys had ever contacted Fidelity National Title to request such a discount.[6]  See Frechette Dep. Tr. at 81-82, 93-94.

Likewise, in the course of this action, plaintiff did not produce an earlier title policy at any time during discovery – even after defendants' counsel expressly requested that this policy be produced at plaintiff's deposition and repeated this request at the Court's June 1 status conference.  See Cavin Decl. at ¶ 17; Frechette Dep. Tr. at 93-94.  And although by order of the Court dated June 1, 2006, the plaintiff was obliged to turn over any remaining documents, including any prior policy with Fidelity National to Ameriquest, the plaintiff never produced such a policy.  See Court Order of June 1, 2006; Cavin Decl. at ¶ 17.

Under the circumstances, the plaintiff is not entitled – as a matter of law – to a reissue or refinance rate.  Ricciardi, 2005 WL 61416, at *3 (plaintiff not entitled to reissue rate where

---

[6]     Not only is plaintiff not entitled to a discount, plaintiff's calculations regarding this discount are incorrect and give rise to a double-counting of the alleged non-disclosed title insurance fees.  Plaintiff claims at the same time (1) that he was overcharged for title insurance in the amount of $90, and (2) that he is entitled to a title insurance discount in the amount of $547.00 (which calculations are again based on the presumption of a $90 overcharge). Plaintiff cannot have it both ways.  Plaintiff should not be permitted to double-dip in such title insurance calculations.  Nevertheless, even if the Court includes the $547 and $90 charges, defendants remain well within the applicable CCCDA tolerance levels.

plaintiff did not produce prior insurance policy), aff'd 164 Fed. Appx. 221, 226, 2006 WL

120234, at *4 (3rd Cir. Jan. 17, 2006) ("As Ricciardi presented no evidence prior to or at the loan

closing that his previous mortgage was insured, Ameriquest appropriately charged him the

default insurance rate as published in the Rate Manual"); Stump v. WMC Mortgage Corp., 2005

WL 645238, at *6 (E.D. Pa. Mar. 16, 2005) (where no indication "that plaintiffs' previous

mortgage was insured by a title insurance policy, we find that, as a matter of law, plaintiffs were

not entitled to the refinance rate").  As a result, plaintiff's failure to produce any evidence of a

prior policy with Fidelity National as proof of eligibility for a discounted rate is fatal to his

claims.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) ("[m]ere allegations, or conjecture

unsupported in the record are insufficient to raise a genuine issue of material fact").

        Moreover, even if Mr. Frechette had tendered a title insurance policy at the time of

closing (which he did not), it is still entirely speculative that he would have been eligible for the

title discount in the first instance.  Fidelity National's Premium Rate Sheet specifically provides

that a purchaser of title insurance "may be" entitled to a renewal rate only if evidence of the

earlier policy is produced.  See Fidelity National Premium Rate Increase (attached as Exhibit 2 to

Tosi Decl.).  In keeping with this policy, Mr. Frechette acknowledged in his deposition that is

was only "possible" that he was entitled to the discounted renewal rate.  See Frechette Dep. Tr. at

80-81.  Further, because plaintiff never deposed anyone from Fidelity National and did not

propound written discovery on Fidelity National, he has not been able to establish anything more

than it is possible that Fidelity National would have extended him a discounted rate.  Instead,

plaintiff merely presumes an automatic entitlement notwithstanding Fidelity National's

discretionary discount policy.  Such a speculative presumption, standing alone, is not enough to

survive summary judgment.  Boulais v. Town of Rehoboth, 2002 WL 1760874, at *2 (D. Mass.

Jul. 31, 2002) ("[o]ne could speculate about various possibilities, but the essential point is that …speculation or conjecture…is obviously not enough to avoid the entry of summary judgment"); <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (summary judgment should be granted where plaintiff "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation").

Finally, even if plaintiff could somehow show his entitlement to a $547 Fidelity National discount, he still would be unable to overcome the fact that Ameriquest overstated the finance charge by at least $1,345. As detailed above, this over-statement more than offsets any alleged discount and is fatal to plaintiff's claims.

### D. Plaintiff Does Not Have An Extended Right To Rescind And Therefore Plaintiff's Attempted Rescission Is Untimely

Under the CCCDA, a borrower's right to rescind is extended from three days to four years only if the lender failed to provide material disclosures or if the material disclosures were inaccurate. <u>See</u> Mass. Gen. L. ch. 140D, § 10(f). Plaintiff claims that he has an extended right to rescind because of Ameriquest's alleged failure to make delivery of all required disclosures. As demonstrated above, however, Ameriquest disclosed Attorney Crowley's attorney's fees in their entirety as finance charges under the CCCDA. Consequently, as the CCCDA disclosures provided to plaintiff <u>over-estimated</u> the finance charge actually charged to plaintiff, plaintiff did not have an extended right to rescind the loan and his claims fail as a matter of law. <u>See</u> Mass. Gen. L. ch. 140D, § 10(i)(2). Because plaintiff is not entitled to an extended right of rescission, his purported notice of rescission was of no effect, and defendants are entitled to judgment on their counterclaims and to proceed with the foreclosure sale.

## II.   BECAUSE PLAINTIFF'S CCCDA CLAIMS FAIL AS A MATTER OF LAW PLAINTIFF'S CHAPTER 93A CLAIM ALSO FAILS; MOREOVER PLAINTIFF FAILED TO SEND DEFENDANTS A DEMAND LETTER MANDATING COUNT III'S DISMISSAL AS A MATTER OF LAW

The Court need not even determine whether plaintiff's Chapter 93A claim set forth in Count III can survive on substantive grounds because the claim cannot survive on procedural grounds. Even if the Court finds material facts in dispute – which there are none – plaintiff has failed to meet the statutory prerequisites of Chapter 93A in that plaintiff has failed to send defendants a demand letter. The defendants never received such a letter, nor is there an allegation in the Complaint that such a letter was sent. See Cavin Decl. at ¶ 15.

Before bringing a claim under Mass. Gen. L. ch. 93A, a plaintiff is required to send to the prospective defendant: "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." Mass. Gen. L. ch. 93A, § 9(3). A demand letter meeting the requirements of Section 9 is an "absolute prerequisite" to filing suit. See Ball v. Wal-Mart, Inc., 102 F.Supp.2d 44, 54 (D. Mass. 2000) (granting defendant summary judgment on Chapter 93A count because plaintiff "neither alleged that she sent a 30-day demand letter to [defendant] nor has she attached such a letter to her complaint").[7]

Moreover, upon filing suit, plaintiff's Complaint must specifically allege that a Chapter 93A demand letter was sent to the defendants. See Rodi v. Southern New England School Of

---

[7]      To be sure, plaintiff may argue that plaintiff's purported notice of rescission for violation of the CCCDA contained the Chapter 93A demand. Plaintiff is wrong. A letter of rescission is not a Chapter 93A demand letter. Instead, plaintiff merely made passing reference to the availability of "multiple damages for corresponding violations of" Chapter 93A where the CCCDA has been violated. See April 21, 2005 letter (attached as Exhibit D to Cavin Decl.). Such passing reference is insufficient to meet the statutory demands of Chapter 93A, particularly when plaintiff was referring – and citing – to the CCCDA for that proposition. The required demand letter "listing the specific deceptive practices is a prerequisite to suit and as a special element must be alleged and proved." Spring, 394 Mass. at 287 (citing Entrialgo v. Twin City Dodge, 368 Mass. 812, 813 (1975)). Plaintiff has failed to do so.

Law, 389 F.3d 5, 19-20 (1st Cir. 2004) (complaint that did not allege that plaintiff made written demand for relief from defendant before filing complaint alleging violation of Chapter 93A was subject to dismissal for failure to state claim); Giuliano v. Nations Title, Inc., 134 F.3d 361, 1998 WL 45459, at *8 (1st. Cir. 1988) (complaint that did not allege that plaintiff made written demand for relief from defendant before filing complaint alleging violation of Chapter 93A was subject to dismissal as a matter of law); McMahon v. Digital Equipment Corp., 944 F.Supp. 70, 77 (D. Mass. 1996) ("failure [to allege demand letter sent] is fatal" to plaintiff's Chapter 93A claim); Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 287 (1985) ("[a] demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved").

Where, as here, a plaintiff failed to allege the sending of a demand letter in his Complaint, and where plaintiff never sent a letter in the first instance, plaintiff's claim must be dismissed as a matter of law. See Ball, 102 F.Supp.2d at 54; City of Boston v. Aetna Life Ins. Co., 399 Mass. 569, 574 (1987) (summary judgment for defendant proper because "the [plaintiff's failure] to allege the sending of a demand letter is fatal to its [Chapter 93A] claim").

And, even assuming such failure to send a demand letter somehow was not a violation of Chapter 93A, plaintiff ties his Chapter 93A claim entirely to the violation of the CCCDA. Because, as described above, defendants have not violated CCCDA, plaintiff's Chapter 93A claim must also fail. See Egan v. Athol Mem. Hosp., 971 F.Supp. 37, 47 (D. Mass. 1997) (holding that where there was no evidence of the claimed underlying violation, and where there were "no unique arguments related to [the] Chapter 93A claim," defendant was entitled to summary judgment on Chapter 93A claim).

<u>**CONCLUSION**</u>

For the foregoing reasons, defendants Ameriquest Mortgage Company and Deutsche

Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset

Backed Pass-Through Certificates, Series 2003-11 Under the Pooling and Servicing Agreement

Dated as of November 1, 2003, Without Recourse respectfully request that the Court grant their

Motion for Summary Judgment.

Respectfully submitted,

AMERIQUEST MORTGAGE COMPANY and
DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE OF AMERIQUEST
MORTGAGE SECURITIES, INC. ASSET
BACKED PASS-THROUGH CERTIFICATES,
SERIES 2003-11 UNDER THE POOLING AND
SERVICING AGREEMENT DATED AS OF
NOVEMBER 1, 2003, WITHOUT RECOURSE

By their attorneys,

/s/ *Phoebe S. Winder*
_____
R. Bruce Allensworth (BBO #015820)
(ballensworth@klng.com)
Phoebe S. Winder (BBO #567103)
(pwinder@klng.com)
Ryan M. Tosi (BBO #661080)
(rtosi@klng.com)
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100

Dated: August 25, 2006

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document, filed on August 25, 2006 through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 25, 2006.

John T. Landry, III
Glynn, Landry, Harrington & Rice, LLP
10 Forbes Road
Braintree, MA 02184-2605

Michael J. Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090


/s/ *Phoebe S. Winder*
_____
Phoebe S. Winder