# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRIAN L. FRECHETTE, )<br><br>Plaintiff, )<br><br>v. )<br><br>AMERIQUEST MORTGAGE COMPANY )<br>and DEUTSCHE BANK NATIONAL )<br>TRUST COMPANY, as TRUSTEE of )<br>AMERIQUEST MORTGAGE )<br>SECURITIES, INC., ASSET BACKED )<br>PASS-THROUGH CERTIFICATES, )<br>SERIES 2003-11 UNDER THE POOLING )<br>AND SERVICING AGREEMENT DATED )<br>AS OF NOVEMBER 1, 2003, WITHOUT )<br>RECOURSE )<br><br>Defendants. ) | CIVIL ACTION NO. 05-11398-RWZ |

## DECLARATION OF LISA CAVIN

I, Lisa Cavin, hereby declare under oath as follows:

1.    I am employed by Defendant Ameriquest Mortgage Company ("Ameriquest") as a Team Lead, Customer Resolution, in Ameriquest's offices located at 1100 Town & Country Road, Suite 1200, Orange, CA 92868.

2.    I make this declaration in connection with, and in support of Ameriquest Mortgage Company's ("Ameriquest") and Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass-Through Certificates, Series 2003-11 Under the Pooling and Servicing Agreement Dated as of November 1, 2003, Without Recourse's ("Deutsche Bank, as Trustee") Motion for Summary Judgment and Incorporated Memorandum of Law.

3.    I am competent to testify to the facts set forth below based on my personal

knowledge or my review of Ameriquest's business records.

4.      On or about October 1, 2003, plaintiff entered into a thirty-year adjustable rate mortgage with Ameriquest with a principal amount owed by plaintiff of $543,750.00.  Plaintiff's loan note has an initial interest rate of 11.500%, which is also the minimum rate.  Plaintiff's loan note calls for monthly payments of $5,384.71 beginning December 1, 2003.  A true and accurate copy of plaintiff's note is attached hereto as Exhibit A.

5.      Following the closing, Ameriquest assigned plaintiff's note and mortgage to Deutsche Bank National Trust Company, as Trustee.

6.      In connection with the closing of his mortgage loan, plaintiff received and executed a Truth in Lending Disclosure Statement.  A true and accurate copy of the Truth in Lending Disclosure Statement is attached hereto as Exhibit B.

7.      The Truth in Lending Disclosure Statement disclosed a finance charge in the amount of $1,412.417.24, and the amount financed in an amount of $526,077.32.

8.      In connection with the closing of his mortgage loan, plaintiff received and executed a HUD-1 Settlement Statement.  A true and accurate copy of the HUD-1 Settlement Statement is attached hereto as Exhibit C.

9.      The HUD-1 Settlement Statement listed the various fees and charges incurred by plaintiff in connection with this mortgage loan with Ameriquest, including the pre-paid fees included in the finance charge calculation.

10.      The chart below, based upon the fees listed on the HUD-1 Settlement Statement executed by plaintiff sets forth each of the pre-paid fees, interest and expenses that comprise the finance charge disclosed to the plaintiff in connection with his mortgage loan:

| Description | Amount |
|---|---|
| Loan Discount 2.000% to Ameriquest Mortgage Company | $10,875.00 |
| Tax Related Service Fee to Ameriquest Mortgage Company | $70.00 |
| Flood Search Fee to Ameriquest Mortgage Company | $16.00 |
| Lenders Processing Fee to Ameriquest Mortgage Company | $626.00 |
| Admin to Ameriquest Mortgage Company | $239.00 |
| Application Fee to Ameriquest Mortgage Company | $360.00 |
| Interest from 10/8/03 to 11/1/03 Ameriquest Mortgage Company | $4,111.68 |
| Settlement or closing fee to The Law Offices of George Crowley | $300.00 |
| Settlement/Disbursement fee to The Law Offices of George Crowley | $750.00 |
| Escrow Fee to The Law Offices of George Crowley | $295.00 |
| Courier Fee | $30.00 |
| | Total: |
| | $17,672.68 |

11.    Here, as set forth above, the disclosed pre-paid finance charge of $17,672.68, which is calculated as the principal amount of the loan ($543,750.00), less the amount financed ($526,077.32) as stated on the borrower's Truth-in-Lending Disclosure Statement.

12.    I understand from plaintiff's complaint that plaintiff alleges that four specific charges (together totaling $2,007) were improperly excluded from finance charge disclosed on the TIL statement. According to plaintiff, the four charges are: (1) $1,345 in fees paid to closing counsel, (2) $25 for city/county tax/stamps, (3) $90 for alleged title insurance discrepancies, and (4) $547 in overcharges for Ameriquest's alleged failure to obtain a renewal discount on plaintiff's title insurance premium.

13.    Plaintiff argues that the $1,345 in settlement-related fees paid to Attorney Crowley were improperly excluded from the Truth in Lending Disclosure Statement. This $1,345 in fees to Attorney Crowley are comprised of (1) a settlement or closing fee in the amount of $300 (HUD-1 Settlement Statement line 1101), (2) a settlement/disbursement fee in

3

the amount of $750 (HUD-1 Settlement Statement line 1111), and (3) an escrow fee in the amount of $295 (HUD-1 Settlement Statement line 1112).

14.     These fees were disclosed in their entirety and included in the calculation of the finance charges even though they are excludable under TILA and the CCCDA. While Ameriquest disclosed $17,672.68 in total pre-paid finance charges, in fact, all that Ameriquest was required to disclose was $16,327.68 in total pre-paid finance charges. As a result, Ameriquest over-estimated the amount of the finance charge by at least $1,345.

15.     Ameriquest never received a Chapter 93A demand letter from the plaintiff. Upon information and belief, Deutsche Bank, as Trustee never received a demand letter from plaintiff.

16.     Plaintiff never propounded any discovery on Ameriquest. Plaintiff never propounded any discovery requests on Deutsche Bank, as Trustee. Upon information and belief, plaintiff never propounded any discovery requests on any third party. Likewise, plaintiff did not take any depositions or designate an expert witness.

17.     Ameriquest and Deutsche Bank, as Trustee did not receive documentation from plaintiff to substantiate his claim for an insurance rate discount during discovery or during the time established by the Court Order of June 1, 2006.

18.     Plaintiff has not made a payment on the loan since September 2004.

19.     Plaintiff has not paid his residential real estate taxes for approximately three years.

20.     Because plaintiff had failed to make a mortgage payment since September 2004, Deutsche Bank National Trust Company, as Trustee filed a Complaint on January 28, 2005 for authority to foreclose plaintiff's mortgage with the Land Court, Commonwealth of Massachusetts, Case No. 305627.

21.     On April 21, 2005, plaintiff notified Deutsche Bank National Trust Company, as Trustee that he was purportedly rescinding his mortgage transaction.  A true and accurate copy of plaintiff's April 21, 2005 letter is attached hereto as Exhibit D.

22.     On April 26, 2005, Ameriquest wrote to plaintiff and acknowledged receipt of plaintiff's April 21, 2005 letter.  A true and accurate copy of Ameriquest's April 26, 2005 letter is attached hereto as Exhibit E.

23.     On May 18, 2005, Ameriquest wrote to plaintiff and denied his claim for rescission.  A true and accurate copy of Ameriquest's May 18, 2005 letter is attached hereto as Exhibit F.

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED THIS **23** TH DAY OF AUGUST, 2006 AT ORANGE, CALIFORNIA.

By: Lisa Cavin
Title: Team Lead, Customer Resolution

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed on August 25, 2006 through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 25, 2006.

John T. Landry, III
Glynn, Landry, Harrington & Rice, LLP
10 Forbes Road
Braintree, MA 02184-2605

Michael J. Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090

/s/ Phoebe S. Winder

_____
Phoebe S. Winder

# EXHIBIT A



Loan Number:  0059193128 - 5789

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.**

October 1, 2003                          Orange                                CA
[Date]                                   [City]                               [State]
                        74 Washington Street, SHERBORN, MA  01770
                                   [Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $543,750.00    (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is    Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of  **11.500%**.  This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    December 1, 2003   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal.  If, on **November 1, 2033**   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100, ·Orange, CA 92868

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$5,384.71.  This amount may change.**

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of  **November, 2005** , and on that day every  sixth  month thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   six and one-half percentage point(s) (  **6.500**  %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

1 of 3

Initials

10/01/2003 2:11:43 PM

**AMC-Frechette 00007**



Loan Number: 0059193128 - 5789

**(D)  Limits on Interest Rate Changes**
The Interest rate I am required to pay at the first Change Date will not be greater than **13.500 %** or less than **11.500 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **(1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **17.500 %** or less than **11.500 %**.

**(E)  Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first **Three (3)** year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1)  If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.
2)  If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.
3)  If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

**6.  LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A)  Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D)  No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

201-2MA (Rev. 7/03)

10/01/2003 2:11:43 PM

AMC-Frechette 00008

Loan Number:  0059193128 – 5789

9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

10.  WAIVERS
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.  UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions.  In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note.  That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12.  GOVERNING LAW PROVISION
This Note and the related Security Interest  are governed by Federal and State law applicable to the jurisdiction of the Property.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable.  This written agreement contains all the terms the Borrower(s) and the Lender have agreed to.  Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)        _____(Seal)
Borrower  Brian L. Frechette                             Borrower

_____(Seal)        _____(Seal)
Borrower                                                           Borrower

201-3MA (Rev. 7/03)                                                      10/01/2003 2:11:43 PM

AMC-Frechette 00009

# EXHIBIT B

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
1 Apple Hill DR., Box 8118
Natick, MA 01760
(508)655-1119

[ ] Preliminary    [X] Final

Broker License:

Borrowers: Brian.L. Frechette

Type of Loan: ADJUSTABLE RATE
Date: October 1, 2003

Address: 74 Washington Street
City/State/Zip: SHERBORN,MA 01770

Loan Number: 0059193128 - 5789

Property: 74 Washington Street, SHERBORN, MA 01770

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 11.830 % | $ 1,412,417.24 | $ 526,077.32 | $ 1,938,494.56 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $5,384.71 | 12/01/2003 | | | |
| 1 | $5,383.67 | 11/01/2033 | | | |

VARIABLE RATE FEATURE:
[X] Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 74 Washington Street, SHERBORN, MA 01770

ASSUMPTION: Someone buying this property [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE: You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES: If a payment is late, you will be charged 3.000% of the overdue principal and interest payment. .

PREPAYMENT: If you pay off your loan early, you
[X] may    [ ] will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Brian L. Frechette [signature]_    10/01/03
Borrower Brian L. Frechette    Date

Borrower _____    Date _____

Borrower _____    Date _____

Borrower _____    Date _____

TIL1 (Rev. 7/01)

10/01/2003 2:11:43 PM

# EXHIBIT C

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491

WLI

Name & Address of Borrower:
Brian L. Frechette

Name & Address of Lender:
Ameriquest Mortgage Company
1 Apple Hill DR., Box 5118
Natick, MA 01760

74 Washington Street    SHERBORN, MA 01770
Property Location: (if different from above)

74 Washington Street, SHERBORN, MA 01770

Settlement Agent:
CROWLEY, ESQ., GEORGE T.

Place of Settlement: 63 SHORE ROAD  WINCHESTER, MA 01890

## L.  Settlement Charges

| 800. Items Payable in Connection with Loan | | |
|---|---|---|
| 801. Loan origination fee    % to | | |
| 802. Loan discount  2.000  % to  Ameriquest Mortgage Company | $10,875.00 | |
| 803. Apprs/Prop Val to Burke Appraisals | $300.00 | |
| 804. Credit report to | | |
| 805. Inspection fee to | | |
| 806. | | |
| 807. | | |
| 808. Yield Spread Premium to | | |
| 809. | | |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | $70.00 | |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $625.00 | |
| 813 Admin to Ameriquest Mortgage Company | $239.00 | |
| 814. Doc. Prep. Fee to | | |
| 815. Credit Report Fee to | | |
| 816. Origination Fee    % to | | |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | |
| 818. Underwriting Fee to | | |
| 819. Service Provider Fee to | | |
| 820. Processing Fee to | | |
| 821. Underwriting Fee to | | |
| 822. Appraisal Fee to | | |
| 900. Items Required by Lender to be Paid in Advance | | |
| 901. Interest from 10/08/2003  to  11/01/2003  @  $171.32 per day | $4,111.68 | |
| 902. Mortgage Insurance premium for    months to | | |
| 903. Hazard Ins prem to | $0.00 | |
| 904. Flood Ins prem to | | |
| 1000. Reserves Deposited with Lender | | |
| 1001. Hazard Insurance    months @ $    per month | | |
| 1002. Mortgage Insurance    months @ $    per month | | |
| 1003. Earthquake Ins    months @ $    per month | | |
| 1004. County prop. taxes    months @ $    per month | | |
| 1005. Annual assess.    months @ $    per month | | |
| 1006. Flood    months @ $    per month | | |
| 1007. Windstorm Ins    months @ $    per month | | |
| 1008. | | |
| 1100. Title Charges | | |
| 1101. Settlement or closing fee to  The Law Offices of | $300.00 | |
| 1102. Abstract or title search to | | |
| 1103. Title examination to | | |
| 1104. Title Insurance binder to | | |
| 1105. Document preparation to | | |
| 1106. Notary fees to | | |
| 1107. Attorney's fees to | | |
| 1108. Title Insurance to  The Law Offices of George Crowley | $1,450.00 | |
| 1109. Lender's coverage    $ | | |
| 1110. Owner's coverage    $ | | |
| 1111. Settlement/Disbursement fee to  The Law Offices of | $750.00 | |
| 1112. Escrow Fee to The Law Offices of George Crowley | $295.00 | |
| 1200. Government Recording and Transfer Charges | | |
| 1201. Recording fees | $315.00 | |
| 1202. City/county tax/stamps | $26.00 | |
| 1203. State tax/ stamps | | |
| 1204. State specific fee | | |
| 1205. State specific fee | | |
| 1300. Additional Settlement Charges | | |
| 1301. Demand to | | |
| 1302. Pest Inspection to | | |
| 1303. Survey Fee | $50.00 | |
| 1304. Staff Appraiser Fee | | |
| 1305. Reconveyance Fee to | | |
| 1306. | | |
| 1307. Property Val Fee to | | |
| 1308. Courier Fee | $30.00 | |
| 1400. Total Settlement Charges (enter on line 1602) | $19,812.68 | |

Loan Number: 0059193128 - 5769
Settlement Date: 10/08/2003  Estimated

## M.    Disbursement to Others

| | | |
|---|---|---|
| 1501. HHLD BANK | (W) | $299.00 |
| 1502. DISCOVER FINANCIAL S | (W) | $311.00 |
| 1503. PROVIDENTBNK | (W) | $466,532.08 |
| 1504. PROVIDIAN FINANCIAL | (W) | $814.00 |
| 1505. SOVEREIGN BANK | (W) | $1,917.00 |
| 1506. | | |
| 1507. | | |
| 1508. | | |
| 1509. | | |
| 1510. | | |
| 1511. | | |
| 1512. | | |
| 1513. | | |
| 1514. | | |
| 1515. | | |
| 1520. TOTAL DISBURSED (enter on line 1603) | | $469,873.08 |

Total Wire:    $527,152.32

## N.  NET SETTLEMENT

| | |
|---|---|
| 1600. Loan Amount | $43,750.00 |
| 1601. Plus Cash/Check from Borrower | |
| 1602. Minus Total Settlement Charges (line 1400) | $19,812.68 |
| 1603. Minus Total Disbursements to Others (line 1520) | $469,873.08 |
| 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | $54,064.24 |

Borrower's Signature:

Approved for Funding By:    Approved:

Branch:  Natick, MA 01760
Mortgage Lenders License - License Number ML0702

AMC-Frechette 00030

# EXHIBIT D

# POWERS LAW OFFICES, P.C.

91 Gloucester Road, Westwood, Massachusetts 02090
781-326-7766 (Tel)     781-326-7788 (Fax)     617-471-2000 (Cell)

MICHAEL J. POWERS, ESQUIRE
bicoastal@comcast.net

April 21, 2005

**Original By Certified Mail**
(No. 7004 2890 0001 4725 5572)
Return Receipt Requested
Copy by Facsimile Transmission
(978-256-7615), & USPS Next Day

Victor Manougian, Esquire
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824

RE:   Borrower:    Brian L. Frechette
      Lender:      Ameriquest Mortgage Company
      Assignee:    Deutsche Bank National Trust Company, as Trustee
      Loan:        $543,750 Refinance Mortgage Loan dated October 1, 2003
      Property:    74 Washington Street, Sherborn, MA 01770
      Mortgage:    Middlesex South Registry of Deeds, Book 41251, Page 76
      Case No.:    305627 (Land Court)

Dear Attorney Manougian:

As you are aware, I, along with Attorney John T. Landry, III, of Glynn, Landry, Harrington & Rice, LLP, represent Brian L. Frechette ("Mr. Frechette") relative to the mortgage foreclosure proceeding commenced by your office on behalf of Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2003-11 under the Pooling and Servicing Agreement dated as of November 1, 2003 ("Deutsche Bank"). Because the refinancing transaction that Mr. Frechette entered into on October 1, 2003, with Ameriquest Mortgage Company ("Ameriquest") involved several violations of the Massachusetts Truth In Lending Act (M.G.L. c.140D, §1 et seq.) ("TILA"), our client has authorized us to rescind the transaction pursuant to M.G.L. c.140D, §10, and the Massachusetts Banking Commissioner's Regulations promulgated thereunder, 209 CMR 32.23.

The following brief synopsis of the facts and law which outlines Mr. Frechette's right to rescind incorporates citations to the federal Truth In Lending Act ( (15 USC §1601, et. seq.), the Federal Reserve Board Regulations promulgated thereunder (12 CFR §226.1 et. seq., "Regulation Z"); the Official Staff Commentary of the Federal Reserve Board; and relevant federal case law. As the

Victor Manougian, Esquire
April 21, 2005
Page 2

Massachusetts TILA and regulations are identical to the federal statutory and regulatory scheme in all substantive aspects, the state courts are guided by this federal law in interpreting the cognate provisions of state law. Therefore, although reference is made to federal law throughout this letter for illustrative purposes, the rescission claim and all other claims made herein are solely grounded in state law.

Bases For Exercise of Right of Rescission

The TILA violation which gives rise to Mr. Frechette's right to rescind the Ameriquest mortgage loan transaction includes, but is not limited to, Ameriquest's failure to disclose the correct finance charge. **Mr. Frechette hereby expressly reserve the right to allege additional TILA violations in the event the same are ascertained either in the course of additional investigation or analysis of the circumstances surrounding and the disclosures made in connection with the consummation of the Ameriquest mortgage loan transaction or ascertained through discovery in the event the resolution of this matter involves litigation.**

The TILA violations currently known to Mr. Frechette involve charges that were not bona fide and reasonable and, accordingly, these charges should have been disclosed as components of the finance charge at the time of the consummation of the Ameriquest mortgage loan transaction. By failing to disclose the following charges as components of the finance charge, Ameriquest violated Regulation Z, §226.4(c)(7), and 209 CMR 32.4(c)(7). (All of the following charges are shown on the copy of the HUD-1 Settlement Statement relative to Mr. Frechette's refinance mortgage loan with Ameriquest attached to this correspondence as Exhibit "A").

A.  *$90.00 Undisclosed Finance Charge Based On Failure To Properly Calculate Title Insurance Premium.* According to line 1108 of the Ameriquest HUD-1 Settlement Statement, Mr. Frechette was charged $1,450.00 for lender's title insurance coverage in the amount of $543,750. According to the copy of the Fidelity National Title Insurance Company of New York ("Fidelity") Loan Policy Number 5412-3231241 issued in connection with Mr. Frechette's Ameriquest mortgage loan, the actual premium paid was $1,360.00 (a copy of Schedule A to said loan policy attached hereto as Exhibit "B"). Accordingly, the $90.00 overcharge constitutes an undisclosed finance charge.

B.  *$547.00 Undisclosed Finance Charge Based On Failure To Provide Refinance Loan "Discount" On Title Insurance Premium.* At the time of the issuance of Ameriquest's loan policy of title insurance, Fidelity's published premium rate schedule also provided that in the case of a refinance loan if a policy has been issued insuring the mortgage being refinanced, then the new premium may be 60% of the current premium. To the extent that the new loan amount exceeded the old loan amount, then additional premium at the full rate should be collected for the excess amount. A policy had in fact been issued in connection with the

Victor Manougian, Esquire
April 21, 2005
Page 3

$456,400 first mortgage loan with New Century Mortgage Corporation being refinanced by Mr. Frechette. Accordingly, Mr. Frechette should have been charged only $740.00 for the required lender's policy of title insurance, calculated as follows:

$684.60  Premium on first $456,400 of coverage x 60% of $2.50 rate/$1,000
$218.40  Premium on remaining $87,350 at $2.50 rate/$1,000
$903.00  Premium reflecting appropriate discount

Failure to provide Mr. Frechette with the available discount resulted in a title insurance premium overcharge of $547.00, which overcharge constitutes an undisclosed finance charge.

C.    *$65.00 Undisclosed Finance Charge Based on Recording Fees Overcharge.* According to line 1201 of the Ameriquest HUD-1 Settlement Statement, Mr. Frechette was charged recording fees in the amount of $315.00. However, an examination of the public records of the Middlesex South Registry of Deeds indicates that only $250.00 in recording fees were paid in connection with the (i) the recording of Ameriquest's mortgage ($175.00) and (ii) the recording of a discharge ($75.00). To the extent that the remaining $65.00 in recording fees collected from Mr. Frechette were in fact not paid to public officials, the same represents an undisclosed finance charge. See *Mayo v. Key Financial Services, Inc.,* 424 Mass. 862 (1997).

D.    *$25.00 Undisclosed Finance Charge Based on "City/County Tax/Stamps" Fee Overcharge.* According to line 1202 of the Ameriquest HUD-1 Settlement Statement, Mr. Frechette was charged $25.00 for "City/County Tax/Stamps." There is no record of any tax or stamps being paid in connection with the consummation of Mr. Frechette's mortgage loan transaction with Ameriquest. To the extent that the $25.00 in tax/stamps collected from Mr. Frechette were in fact not paid to public officials, the same represents an undisclosed finance charge.

F.    *Excessive portion of Attorney Closing Fees Overcharge.* According to lines 1101 and 1111 of the Ameriquest HUD-1 Settlement Statement, the closing attorney handling Mr. Frechette's Ameriquest refinance mortgage loan transaction charged Mr. Frechette a $300.00 "settlement or closing fee" and a $750.00 "settlement/disbursement" fee, for a total of $1,050.00 in "settlement" legal fees. In addition, the $295.00 charged for an "escrow fee" referenced on line 1112 of the Settlement Statement is merely disguised as a separate cost in order to make the aggregate "settlement" legal fees charged appear lower. The aggregate $1,345.00 legal fee charged for closing Mr. Frechette's mortgage loan far exceeds the range of charges normally imposed by experienced lender's counsel on loans of this type. As such, the excessive portion is an undisclosed finance charge.

Victor Manougian, Esquire
April 21, 2005
Page 4

In summary, Ameriquest failed to disclose an aggregate of $727.00 in actual finance charges that were paid by Mr. Frechette and failed to disclose the excessive portion of the legal fees paid by Mr. Frechette to Ameriquest's closing attorney. These failures constitute a violation of Regulation Z, §226.18(d) and 209 CMR 32.18(d) in amounts exceeding TILA's error tolerance for material disclosures (i.e. $35.00 error tolerance applicable in foreclosure defense context). Further, this failure to make required material disclosures tolls Mr. Frechette's rescission rights until the earlier of Deutsche Bank's provision of rescission right notices with corrected material disclosures, or the passage of four years subsequent to consummation of the transaction. G.L. c.140D, §10, 209 CMR 32.23(a)(3). Cf., 15 USC 1635, Regulation Z, §226.23(a)(3). Deutsche Bank has not provided Mr. Frechette with rescission notices accompanied by the required corrected material disclosures. Further, it has only been approximately one year and eight months since the consummation of the Ameriquest mortgage loan transaction. Accordingly, Mr. Frechette is entitled at this time to rescind the Ameriquest mortgage loan transaction pursuant to the extended rescission rights provided for by TILA.

### Demand For Relief

As a result of this rescission notice, Deutsche Bank's security interest is void (209 CMR 32.23(d)(1); Regulation Z, §226.23(d)(1)) and Deutsche Bank is bound to immediately terminate such security interest. 209 CMR 32.23(d)(2); Regulation Z, §226.23(d)(2). In addition, Deutsche Bank has twenty (20) days from its receipt of this notice to return to Mr. Frechette all monies paid in connection with the terms of the Ameriquest mortgage loan. *Id.* Failure to cancel the security interest and return to Mr. Frechette all monies due may subject Deutsche Bank to actual and statutory damages, pursuant to G.L. c.140D, §32, as well as multiple damages for corresponding violations of c.93A. *See*, G.L. c.140D, §34. **Finally, demand is made to immediately suspend all collection proceedings being instituted against Mr. Frechette including but not limited to the foreclosure sale of the subject property scheduled for 2:00 p.m. on Monday, April 25, 2005.**

Very truly yours,

Michael J. Powers

Enclosures
cc: Brian L. Frechette (w/copies of encls. - by first class mail)
    Paul Irwin, Esquire (w/copies of encls. - by fax and first class mail)
    John T. Landry, III, Esquire (w/copies of encls. - by fax and first class mail)
    The Jumpp Company, Inc. (w/copies of encls. - by fax and first class mail)
    Deutsche Bank National Trust Company, as Trustee (w/copies of encls. - by Certified Mail,
    No. 7004 2890 0001, Return Receipt Requested at: 1761 Andrews Place, Santa Ana, CA 92705)
        4725 5589                    (East Street)

Oct-08-03  12:31pm  From-AMERIQUEST MORTGAGE/NATICK    +508-655-7588    T-508  P.004/005  F-6

and Urban Development

WLI STN .

Transactions without Sellers

| Name & Address of Borrower: | Name & Address of Lender: |
| --- | --- |
| Brian L. Frechette | Ameriquest Mortgage Company |
| | 1 Apple Hill DR., Box 8118 |
| 74 Washington Street    SHERBORN,MA 01770 | Natick, MA 01760 |

Property Location: (if different from above)

Settlement Agent: CROWLEY, ESQ., GEORGE T.

74 Washington Street, SHERBORN, MA  01770

Place of Settlement: 63 SHORE ROAD WINCHESTER, MA 01890

## L.  Settlement Charges

| | | Loan Number | Settlement Date: |
| --- | --- | --- | --- |
| 800. Items Payable in Connection with Loan | | 0059183126 - 5789 | 10/08/2003 |
| 801. Loan origination fee      % to | | | |
| 802. Loan Amount  2.000 % to Ameriquest Mortgage Company | $10,675.00 | **M.   Disbursement to Others** | |
| 803. Appral/Prop Val to Burke Appraisals      *L  $150.00 *  $0.00 | $300.00 | 1501. HHLD BANK      (W) | $299.00 |
| 804. Credit report to | | | |
| 805. Inspection fee to | | 1502. DISCOVER FINANCIAL S      (W) | $311.00 |
| 806. | | | |
| 807. | | 1503. PROVIDENTBNK      (W) | $466.632.08 |
| 808. Yield Spread Premium to | | | |
| 809. | | 1504. PROVIDIAN FINANCIAL      (W) | $814.00 |
| 810. Tax Related Service Fee to Ameriquest Mortgage | $70.00 | | |
| 811. Flood Search Fee to Ameriquest Mortgage Company | $16.00 | 1505. SOVEREIGN BANK      (W) | $1,917.00 |
| 812. Lenders Processing Fee to Ameriquest Mortgage | $626.00 | 1506. | |
| 813. Admin to Ameriquest Mortgage Company | $298.00 | | |
| 814. Doc. Prep. Fee to | | 1507. | |
| 815. Credit Report Fee to | | | |
| 816. Origination Fee      % to | | 1508. | |
| 817. Application Fee to Ameriquest Mortgage Company | $360.00 | | |
| 818. Underwriting Fee to | | 1509. | |
| 819. Service Provider Fee to | | | |
| 820. Processing Fee to | | 1510. | |
| 821. Underwriting Fee to | | | |
| 822. Appraisal Fee to | | 1511. | |
| 900. Items Required by Lender to be Paid in Advance | | | |
| 901. Interest from 10/08/2003 to 11/01/2003  @  $571.22 per day | $4,111.68 | 1512. | |
| 902. Mortgage Insurance premium for      months to | | | |
| 903. Hazard ins prem to | $0.00 | 1513. | |
| 904. Flood ins prem to | | | |
| 1000. Reserves Deposited with Lender | | 1514. | |
| 1001. Hazard insurance      months @ $      per month | | | |
| 1002. Mortgage insurance      months @ $      per month | | 1515. | |
| 1003. Earthquake ins      months @ $      per month | | | |
| 1004. County prop. taxes      months @ $      per month | | | |
| 1005. Annual assess.      months @ $      per month | | 1520. TOTAL DISBURSED (enter on line 1603) | $469,073.08 |
| 1006. Flood      months @ $      per month | | | |
| 1007. Windstorm Ins      months @ $      per month | | Total Wire:      $527,162.32 | |
| 1008. | | | |
| 1100. Title Charges | | Deposit at Escrow/Title:      $0.00 | |
| 1101. Settlement or closing fee to  The Law Offices of | $300.00 | Subordinate Financing:      $0.00 | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| 1108. Title Insurance to  The Law Offices of George Crowley | $1,450.00 | | |
| 1109. Lender's coverage      $ | | | |
| 1110. Owner's coverage      $ | | | |
| 1111. Settlement/Disbursement fee to  The Law Offices of | $750.00 | L = Lender Paid | |
| 1112. Escrow Fee to The Law Offices of George Crowley | $295.00 | | |
| 1200. Government Recording and Transfer Charges | | **N.   NET SETTLEMENT** | |
| 1201. Recording fees | $315.00 | | |
| 1202. City/county tax/stamps | $25.00 | | |
| 1203. State tax/ stamps | | 1500. Loan Amount | $543,750.00 |
| 1204. State specific fee | | | |
| 1205. State specific fee | | 1501. Plus Cash/Check from Borrower | |
| 1300. Additional Settlement Charges | | | |
| 1301. Demand to | | 1602. Minus Total Settlement Charges (line 1400) | $19,812.68 |
| 1302. Pest Inspection to | | | |
| 1303. Survey Fee | $50.00 | 1603. Minus Total Disbursements to Others (line 1520) | $469,873.08 |
| 1304. Staff Appraisal Fee | | | |
| 1305. Reconveyance Fee to | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | $54,064.24 |
| 1306. | | | |
| 1307. Property Val Fee to | | | |
| 1308. Courier Fee | $30.00 | | |
| 1400. Total Settlement Charges (enter on line 1602) | $19,812.68 | | |

Borrower(s) Signature(s):

✗

Approved for Funding By: Chris Jenkins      Approved:      Branch:  Natick, MA 01760

Mortgage Lenders License - License Number ML0702

SCHEDULE A

LOAN FORM                                    OFFICE FILE NO. 2006182

| WNERS | POLICY NUMBER | DATE OF POLICY @ | AMOUNT OF INSURANCE | PREMIUM |
|---|---|---|---|---|
| OAN | POLICY NUMBER 5412-3231241 | DATE OF POLICY 10/9/2003 @ 2:16 PM | AMOUNT OF INSURANCE $543,750.00 | PREMIUM $1,360.00 |

1.    Name of Insured:

Ameriquest Mortgage Company. its successor and/or assigns, ATIMA

2.    The estate or interest referred to herein is at Date of Policy vested in:

Brian L. Frechette

3.    The estate or interest in land described in this Schedule and which is encumbered by the insured mortgage is :

Fee Simple.

4.    The Mortgage, herein referred to as the insured mortgage, and the assignments thereof, if any, are described as follows:

Mortgage from Brian L. Frechette to Ameriquest Mortgage Company, dated 9/23/2003, securing the original principal amount of $543,750.00 and recorded with the Middlesex County Registry of Deeds on 10/9/2003 at 2:16 PM as Instrument No. 1279.

5.    The land referred to in this policy is located at 74 Washington Street, in the City/Town of Sherborn, County of Middlesex, State of Massachusetts, and is described as set forth in Exhibit A attached hereto and made a part hereof.

Countersigned

By: _George T. Crowley/dmb_____
      Authorized Signatory/
      George T. Crowley

FORM 26 - 031/041 - 90/92 A (4/93) (rev. 96)

# EXHIBIT E



**AMERIQUEST**®
MORTGAGE COMPANY

April 26, 2005                                                 *Via First Class U.S. Mail*

Michael Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090

Re:     *Borrower(s):*                  *Brian Frechette*
        *Ameriquest Loan Number:*       *0059193128*
        *Property Address:*             *74 Washington Street*
                                        *Sherborn, MA 01770*

Dear Mr. Powers:

This letter is to acknowledge receipt of your correspondence dated April 21, 2005, regarding the loan referenced above.

Ameriquest Mortgage Company strives to provide you with the utmost attention in resolving your concerns. We will research the matters contained in your correspondence and provide a response upon completion of our investigation.

Please note that the foreclosure sale that was originally scheduled for April 25, 2005 has been postponed until June 7, 2005, pending resolution of this matter.

On behalf of Ameriquest Mortgage Company, we would like to thank you for bringing this matter to our attention.

Sincerely,

Ameriquest Mortgage Company



# EXHIBIT F



May 18, 2005                                                                          *Via Federal Express*

Michael Powers
Powers Law Offices, P.C.
91 Gloucester Road
Westwood, MA 02090

*Re:*   *Borrower(s):*                        *Brian Frechette*
        *Ameriquest Loan Number:*             *0059193128*
        *Property Address:*                   *74 Washington Street*
                                              *Sherborn, MA 01770*

Dear Mr. Powers:

We are writing in response to your letter requesting rescission of the above referenced loan
pursuant to the Federal Truth In Lending Act (TILA). After careful review, we respectfully reject
your claim that in making the loan to your client Ameriquest violated TILA, and accordingly
deny your request for rescission. Below is our response to your inquiries regarding the charges on
your client's HUD Settlement Statement (HUD):

Title Insurance
We have confirmed with the Law Office of George Crowley, closing agent for this loan that
although the premium for your client's Fidelity National Title Insurance (Fidelity National)
policy was reflected as being $1,450.00 on the HUD, it was in fact $1,360.00. Please accept the
$90.00 difference which is included in the enclosed check issued by Crowley's office to your
client.

Title Insurance Reissuance Rate
You indicated that title insurance had been issued in connection with your client's prior mortgage
with New Century Mortgage Corporation. Fidelity National has confirmed that they would have
charged a refinance reissuance amount of $816.00 (at the rate of $1.50 per $1,000 of the loan
amount) had your client submitted a copy of their previous title insurance policy as proof of
eligibility for such rate. They do not have records indicating that any proof was submitted, and
your client is welcome to submit a copy of his prior policy to Fidelity National to determine his
eligibility for a refund.

Recording Fee
Although the HUD shows that the recording fees were $315.00, the actual amount paid to
Middlesex County was $325.00 and is broken down as follows: $175.00 mortgage recording;
$75.00 discharge of Provident Bank mortgage; $75.00 discharge of mortgage from Brian L.

1100 Town & Country Road, Suite 450, Orange, CA 92868 · Phone (714) 541-9960 · Fax (714) 564-9639



Frechette to Gregory Frechette and Gene Christopher Frechette (see enclosure). The overcharge of $10.00 in recording fees was absorbed by Crowley's office.

<u>City / County Tax / Stamps Fee</u>
The amount of $25.00 was paid to the county for a municipal lien certificate to verify whether any outstanding taxes were owed. George Crowley's office has refunded this fee as an accommodation, the amount of which has also been included in the enclosed check.

<u>Settlement or Closing / Disbursement Fee</u>
A settlement or closing fee is charged when a third party such as The Law Office of George Crowley performs the closing duties. A settlement disbursement fee was charged by them for their disbursement of the loan funds at settlement. Please note that Ameriquest does not dictate the amounts charged by third parties, and we are unable to respond to any allegations that such fees are unreasonable without further evidence that the charges are not in conformity with the standard market rate for such services.

Along with the check from the Law Office of George Crowley in the amount of $115.00 (including $90.00 title insurance refund plus the $25.00 municipal lien certificate fee), we are also enclosing the final disbursement ledger, HUD and settlement invoice as provided by Crowley's office.

We trust that the above responds to your concerns.


Sincerely,

Ann Tran
Counsel
Ameriquest Mortgage Company


Encls.

LAW OFFICE OF GEORGE T. CROWLEY
OPERATING ACCOUNT
304 CAMBRIDGE ROAD    SUITE 202
WOBURN, MA 01801

6367

CAMBRIDGE TRUST COMPANY
CAMBRIDGE, MA

53-59/113

5/17/2005

PAY TO THE
ORDER OF ____ Brian Frechette                                    $ **115.00

One Hundred Fifteen and 00/100*************************************************************** DOLLARS

Brian Frechette

MEMO

74 Washington Street, Sherborn

WL239423-03-05

FOR YOUR
PROTECTION

⑆ SECURITY FEATURES INCLUDED. DETAILS ON BACK. ⑆

⑆006367⑈ ⑉011300595⑈ 910406011⑈